# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | Criminal No. 21-110 |
| | ) | |
| KHALED MIAH | ) | |

## REPLY IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS ALL COUNTS OF THE INDICTMENT

### INTRODUCTION

There is little disagreement between the parties regarding the plain language of the obstruction statute. The agreement ends, however, where the government uses the statute to proscribe changing a public social media profile picture and compares that action to deleting private messages. Because the government cannot say with any certainty what Twitter activity the grand jury indicted under 18 U.S.C. § 1519, this Court should, at a minimum, dismiss Count 8 without prejudice and direct the government to seek an indictment based on specific and distinct conduct.

Next, lacking any authority to suggest that a statement containing no violent language or imagery on its face constitutes a threat, the government repeats the word "context" so often that one would believe it is the single element of the threat statutes. In reality, none of the cases the government cites affirmed convictions for the type of statements present in this case, possibly because the government typically refrains from charging individuals for such nebulous speech to avoid constitutional challenges. The government has—quite literally—made a federal case out of trolling speech online, which risks extending the threat statutes' reach to practically any statements that offend or harass federal agents or officials.

Finally, the government's opposition puts a spotlight on the codependence of Counts 1 through 7, with the meaning of each tweet depending on the existence and meaning of the others. This indicates that they comprise a single continuing course of conduct. As a result, it is apparent that the counts should be dismissed without prejudice and the government ordered to appropriately consolidate them into one violation of § 875(c) and one violation of § 115(a)(1)(B).

Defendant submits this reply to address several of the deficiencies in the government's opposition. For the sake of brevity, however, Defendant relies upon and incorporates all arguments made in his opening memorandum of law.

## ARGUMENT

**1. The Government Fails to Show How the Anti-Shredding Provision Applies to Mr. Miah's Twitter Activity.**

Neither the language nor purpose of 18 U.S.C. § 1519 applies to the public Twitter activity about which the government complains. *See* Def.'s Mem. of Law, Sections III-IV. In its opposition, the government asserts that Count 8 charges Mr. Miah with obstruction for four alleged actions:

> (1) Mr. Miah changed his public Twitter profile picture to show a photograph of an investigating agent's wife and changed the public Twitter display name from "Lügenpresse_" to "[agent's wife's name]presse." (Resp. in Opp'n 16, 21)

> (2) Mr. Miah changed his public Twitter bio to include the agent's wife's identifying information, "as well as crude and sexual comments" about the agent and his wife. (*Id*.)

> (3) After Mr. Miah posted "threatening comments directed at the FBI agents" on a public Twitter account, he deleted the posts the next day. (*Id*.)

> (4) Mr. Miah deleted accounts being investigated by the FBI. (*Id*. at 21)

As to the first three actions above, the government has charged Mr. Miah with obstruction for his Twitter activity on a public account.[1] This is akin to charging a person with obstruction for changing the image or words on a public billboard. Such conduct contains none of the indicia of "knowingly altering, destroying, mutilating, concealing, covering up, falsifying, or making a false entry in any record, document, or tangible object to impede, obstruct, or influence an agency investigation." 18 U.S.C. § 1519 (cleaned up). And contrary to the government's argument, prosecuting this conduct does not comport with the meaning and purpose of the statute. *Yates v. United States*, 574 U.S. 528, 535-36 (2015) ("Congress [] ranked §1519, not among the broad proscriptions, but together with specialized provisions expressly aimed at corporate fraud and financial audits."); *see also* Def.'s Mem. of Law 18-19. *Contra* Resp. in Opp'n 19-20.

In every case the government cites, the documents or information allegedly deleted or modified were not public facing, with the defendants in those cases attempting to keep private information hidden. *See United States v. Fumo*, 628 F. Supp. 2d 573, 600 (E.D. Pa. 2007) (defendant charged with destroying his emails); *United States v. McRae*, 702 F.3d 806, 833 (5th Cir. 2012) (defendant police officer falsified police reports and burned homicide victim's body to conceal evidence); *United States v. Moyer*, 674 F.3d 192, 198 (3d Cir. 2012) (defendant police officer falsified police reports); *United States v. Brown*, No. 14 CR 674, 2015 U.S. Dist. LEXIS 141470, at *1-2 (N.D. Ill. Oct. 19, 2015) (defendant police officer falsified police reports); *United States v. Hunt*, 526 F.3d 739, 741 (11th Cir. 2008) (defendant detective falsified police reports);

---

[1] The first two actions identified by the government relate to an investigating agent's wife, which was not the basis of the FBI's investigation at all and not the subject of the Twitter statements charged in Counts 1 through 7. Resp. in Opp'n 16; Indictment ¶ 5; Aff. in Supp. of Crim. Compl. ¶ 25. Thus, it is unclear how changing his Twitter account to reflect an agent's wife's information would violate § 1519.

*United States v. Yielding*, 657 F.3d 688, 697 (8th Cir. 2011) (defendant falsified documents to cover up kickbacks); *United States v. Kernell*, 667 F.3d 746, 756 (6th Cir. 2012) (defendant deleted information on personal computer relating to hacking governor's email account); *United States v. Cowden*, No. 5:16 CR 24, 2016 U.S. Dist. LEXIS 131222, at *3-4 (N.D. W. Va. Sept. 26, 2016) (defendant police officer made false statement); *United States v. Stevens*, 771 F. Supp. 2d 556, 559 (D. Md. 2011) (defendant vice president of pharmaceutical company concealed documents requested by FDA). These applications of § 1519 makes sense because the original purpose of § 1519 was to prohibit "corporate document-shredding to **hide evidence of financial wrongdoing**." *Yates*, 574 U.S. at 536 (emphasis added). By contrast here, in the first three actions identified above, the government acknowledges that it is charging Mr. Miah with making alterations to his public Twitter account. But the government cannot point to a single comparable case, where it sought or obtained a conviction under § 1519 for modifying a public social media account.

The government attempts to bolster its argument by citing the Middle District of Tennessee's ruling in *United States v. Giampietro*, 475 F. Supp. 3d 779 (M.D. Tenn. 2020).[2] Not only is *Giampietro* not binding on this Court, it is also readily distinguishable. In *Giampietro*, the government charged the defendant with violations of § 1519 (and § 1512) for allegedly deleting or concealing "chats" or communications she had on social media sites and messaging applications. *Id*. at 783, 790. Specifically, the government argued that the defendant sought to obstruct a federal investigation by using the "secret chat" feature on Telegram Messenger,[3] as well

---

[2] By way of disclosure, counsel in this case also represents the defendant in *Giampietro*.

[3] "Telegram is a cloud-based mobile and desktop messaging app with a focus on security and speed." TELEGRAM, https://telegram.org/ (last visited May 13, 2021). Like Defendant's references to the Twitter website in its memorandum of law, this Court may take judicial notice of the information contained on the Telegram website. *See Yusupov v. Att'y Gen. of the U.S.*, 650 F.3d 968, 985 n.23 (3d Cir. 2011) (taking judicial notice of website).

4

as a "self-destruct timer" and "cryptic abbreviations" on other applications. *Id*. at 790-91. As courts have applied § 1519 to emails and text messages, which are generally exchanged privately between two parties, it is at least conceivable that the statute could apply to the messaging applications and methods alleged in *Giampietro*. *See Fumo*, 628 F. Supp. 2d 573, 600 (E.D. Pa. 2007) (applying § 1519 to destroyed emails); *Syed v. United States*, No. CV 117-036, 2018 U.S. Dist. LEXIS 132890, *1 (S.D. Ga. July 6, 2018) (applying § 1519 to deleted text messages and emails). This Court should not extend § 1519 to alteration of a public social media account.

Even if the Court believed that some of the conduct included in Count 8 and identified by the government in its opposition could constitute obstruction under § 1519, Count 8 must still be dismissed because neither party can ascertain for *which* conduct the grand jury indicted Mr. Miah. For example, did the grand jury indict for Mr. Miah's alleged alteration of his *public* Twitter account or was it the alleged deletion of *private* content? Mr. Miah is entitled to know the nature of the charges brought against him so that he may adequately prepare his defense. *United States v. Addonizio*, 451 F.2d 49, 63 (3d Cir. 1971). As a result, this Court should dismiss Count 8 without prejudice as charged.

**2. On Their Face, the Tweets in Counts 2, 3, and 5 Do Not Contain Threats to Injure Another.**

Next, the government misconstrues the use of context in threat cases. *See* Resp. in Opp'n 10. Context is appropriate to determine if words that may appear threatening are actually threats to injure another; context is not appropriate to transform non-threatening words (or numbers) into threats. *See United States v. Bagdasarian*, 652 F.3d 1113, 1120 (9th Cir. 2011) ("[W]e must examine the surrounding circumstances to discern the significance of those words' utterance, but must not distort or embellish their plain meaning so that the law may reach them."). Indeed, while all of the cases the government cites look at context, none of them involved language comparable

to Mr. Miah's tweets in the first place. *See United States v. Elonis*, 841 F.3d 589, 596-97 (3d Cir. 2016) (affirming conviction where defendant's online posts expressed his desire to rape and kill his ex-wife, stating, "I'm not going to rest until your body is a mess, soaked in blood and dying from all the little cuts . . ."); *United States v. Stoner*, 781 F. App'x 81, 86 (3d Cir. 2019) (upholding conviction where defendant posted a video of himself wearing a large knife and gun and telling law enforcement officials that he would make the town look like the site of a known police massacre in Texas); *United States v. D'Amario*, 330 F. App'x 409, 412-13 (3d Cir. 2009) (finding a true threat where the defendant urged his sentencing judge to "heed his warning that unless the Judge revoked [his] supervised release . . . D'Amario -- who passionately hates NJ judges and is extremely dangerous and violent -- would get a gun and violate the same day"); *United States v. C.S.*, 968 F.3d 237, 244 (3d Cir. 2020) (affirming conviction where defendant described plans to shoot up a monument, a school, and a church); *United States v. Stock*, 728 F.3d 287, 292 (3d Cir. 2013) (affirming conviction where defendant stated, among other things, "i really wish he would die, just like the rest of these stupid fucking asshole cops. so J.K.P. if you read this i hope you burn in hell. i only wish i could have been the one to send you there" ); *United States v. Voneida*, 337 F. App'x 246, 248 (3d Cir. 2009) (affirming conviction of defendant who posted, among other things, "I'll make the Virginia Tech incident look like a trip to an amusement park"); *United States v. Hunt*, No. 1:21-cr-00086-PKC (Apr. 28, 2021) (E.D.N.Y. Apr. 28, 2021)[4] (convicting the

---

[4] In *Hunt*, the jury found the following statements ***did not*** constitute true threats:

    (1) "Trump, we want actual revenge on democrats. Meaning, we want you to hold a public execution of Pelosi aoc schumer etc. and if you dont do it, the citizenry will. We're not voting in another rigged election. Start up the firing squads, mow down these commies, and lets take america back!";

    (2) "Anyone enforcing this lockdown mask vaccine bullshit deserves nothing less than a bullet in their fucking head! . . .";

6

defendant under § 115(a)(1)(B) for statements such as "kill your senators" and "If anybody has a gun, give me it, I'll go there [the inauguration] myself and shoot them and kill them"). That is, in every case on which the government relies, the reader can find express language indicating a threat to injure another person. For example, in *United States v. C.S.*, which the government claims is "strikingly similar," the defendant expressly stated that he wanted to bomb the Washington Monument and target people by "snip[ing] from the top." 968 F.3d at 240. *C.S.* further claimed to have "brought a gun to [school]" and expressed that he wished to "wait for a riot in Harrisburg . . . Or if Christians trigger me then I go at the church" and "maybe I can sabotage [the Christians'] vans." *Id*. at 242; *see also* Resp. in Opp'n 12. Strikingly dissimilar to *C.S.*, in this case the reader can find no express language:

> (2) The zero hour is approaching
>
> (3) 38° 53' 42.7" N, 77° 1' 33" W"
>
> (5) Remember boys, the more eyes on me, the less on the others. Regardless, yellow tapes will flow

This Court should not permit the government to rely solely on context to make non-threatening words threatening. Such a malleable and expansive application of § 875(c) provides individuals with no notice that their words are at risk of being criminal threats. *See also* Def.'s Mem. of Law, Section II.A-B and accompanying notes.

In the end, the government's "context" argument begs the question: does 18 U.S.C. § 875(c) criminalize statements that contain no reference to violence or threatening language? If the answer is yes, then, at the indictment stage and based entirely on "context", the government could

---

> (3) "exactly, enough with the 'trust the plan' bullshit. Lets go, jan 20, bring your guns #millionmilitiamarch."

*See* Verdict Form, ECF No. 93, *United States v. Hunt*, 1:21-cr-00086-PKC (Apr. 28, 2021).

7

charge a person with three counts of violating § 875(c) for tweeting the following hypothetical statements: (1) "Democrats are going to pay for the rigged 2020 election"; (2) "Americans have the right to bear arms"; (3) "[coordinates of the U.S. Capitol building]". And if the answer is yes, it is unclear when the government could be restrained from indicting citizens for politically unpopular or trolling speech online. This is particularly true where, as here, the government argues that any constitutional challenge is premature; i.e., the indictment should be treated as untouchable. Resp. in Opp'n 6-7.

3. **The Tweet in Count 7 Does Not Conceivably Fall Under Section 18 U.S.C. § 115(a)(1)(B).**

Under Count 7, the government charged Mr. Miah with violating § 115(a)(1)(B) for the following language: "Remember boys, the more eyes on me, the less on the others. Regardless, yellow tapes will flow." Indictment 8. According to the government, in this tweet, "[Mr. Miah] threatened a crime scene" and "[Mr. Miah] is saying that whether it is by his hand or the hand of somebody else while the FBI is watching him, there will be a crime scene." Resp. in Opp'n 3, 10. But nowhere in the Indictment at Count 7, in the government's opposition, or in the language of the tweet, can one find a "threat[] to assault, kidnap, or murder . . . a Federal law enforcement officer." *See* 18 U.S.C. § 15(a)(1)(B). At most, the tweet could be read as threatening to commit a crime. While the government may like this Court to interpret § 115(a) to include threats to commit a crime, this is simply not what the statute says or means. As a result, Count 7 should be dismissed. *Stock*, 728 F.3d at 298 (noting that some "[threat] cases may be so clear that they can be resolved as a matter of law"). *See also* Def.'s Mem. of Law at Section I.C.2.

4. **The Indictment as Charged Could Result in Multiple Convictions for the Same Course of Conduct.**

In its opposition, the government discusses the alleged meaning of Mr. Miah's tweets largely by reference to the other tweets, each being a different count. Resp. in Opp'n 9-10. With

each count, the government argues that the surrounding circumstances and the language of the other tweets shows how each one is a threat. *Id*. In other words, Mr. Miah's tweets are allegedly threatening by viewing them in the aggregate. Setting aside the merits for a moment, what is clear from this argument is that to avoid multiplicity[5], Counts 1 through 7 should be dismissed and the government directed to bring them as a single violation of § 875(c) and a single violation of § 115(a)(1)(B).

In *United States v. Voneida*, cited in the government's opposition, the defendant was charged with one count of transmitting a threatening communication in violation of § 875(c). 337 F. App'x 246, 247 (3d Cir. 2009).[6] The single count arose out of the following statements posted on Voneida's MySpace page over the period of two days:

- "Someday: I'll make the Virginia Tech incident look like a trip to an amusement park";

- "the weary violent types who are sick of self-righteous, lecherous, arrogant, and debauched attitudes displayed by [A]merican youth would band together with me for a day, and allow everyone at schools and universities across the nation to reap the bitter fruit of the seeds that they have been sowing for so long";

- "shock[]" that after the Virginia Tech shootings his classmates "were actually surprised that there are people out there who would shoot them if given the opportunity"

- "lost my respect for[] the sanctity of human life";

---

[5] "A multiplicitous indictment charges the same offense in two or more counts and may lead to multiple sentences for a single violation, a result prohibited by the Double Jeopardy Clause." *United States v. Pollen*, 978 F.2d 78, 83 (3d Cir. 1992).

[6] The Court noted in *Voneida* that "the Government bore no burden of proving that [Voneida] intended his [statements] to be threatening or that he had an ability at the time to carry out the threats." 337 F. App'x at 249. But the Third Circuit decided *Voneida* before the Supreme Court's ruling in *Elonis*. In 2018, the Third Circuit permitted the defendant to challenge his conviction under 28 U.S.C. § 2241, concluding that "*Elonis* effected an intervening change in substantive law which may render Voneida's conduct no longer criminal." *Voneida v. Att'y Gen. of Pa.*, 738 F. App'x 735, 737-38 (3d Cir. 2018). Those proceedings are ongoing. *See Voneida v. Johnson*, No. 1:15-cv-01911-CCC (M.D. Pa. filed Oct. 2, 2015).

- captioned a posting "Virginia Tech Massacre -- They got what they deserved," where he noted his current mood was "extatically [sic] happy," and included a poem dedicated to the Virginia Tech shooter that concluded that the shooter's "undaunted and unquenched" wrath would "sweep across the land"; and

- a picture of the bloodied Virginia Tech shooter holding two guns superimposed on a cross with the words "martyr," "massacre," "enrage," and "recompense."

*Id*. at 248; *id*. at 248 nn. 3-6. Charging Voneida's multiple statements as one count was appropriate because the statements could not stand on their own; each statement's meaning depended on reading them in the aggregate. Likewise here. Mr. Miah tweeted each day for five days in a row, from December 27, 2020 to December 31, 2020. Indictment 8. This constitutes a single continuing course of conduct over that period. The government suggests that all of the tweets, which comprise Counts 1 through 7, relate to the same general topic and were directed at the same audience. Resp. in Opp'n 9. Like in *Voneida*, the tweets in each count cannot stand on their own. Rather, as the government acknowledges, to discern any allegedly threatening meaning in a particular count, one must look to the others:

> The threat in Count 2 is a tweet stating: "The zero hour is approaching." Sent the day after the previous tweet, it can only refer to the same "deed" defendant mentioned in Count 1. Count 3 is the coordinates of FBI Headquarters in Washington, D.C. It adds specificity to the threats in Counts 1 and 2 by suggesting a location for the "deed." . . . The following day, he posted the tweet in Counts 5 and 7: "Remember boys, the more eyes on me, the less eyes on the others. Regardless, yellow tapes will flow." The 'boys' in this message refer to the four FBI employees to whom he has been directing his [prior] tweets. "

Resp. in Opp'n 9-10. By separating out the tweets into seven distinct counts but relying on all tweets to demonstrate the veracity of each one individually, the government seeks to have its cake and eat it too. But permitting the government's strategy here could lead to an unjust outcome: multiple convictions based on the same single course of conduct, where none of the tweets can be a threat without reading each one in conjunction with the others (and the government's alleged

"context").⁷ The Court should reject this strategy and dismiss Counts 1 through 7 without prejudice.

## CONCLUSION

This Court should grant Defendant's motion and dismiss Counts 1 through 7 of the Indictment for failure to state an offense because Mr. Miah's tweets do not constitute threats and the threat statutes are unconstitutionally vague as applied to his speech. In the alternative, this Court should dismiss Counts 1 through 7 without prejudice so that they government may charge the tweets in Counts 1 through 5 as a single count and the tweets in Counts 6 and 7 as a single count.

Further, this Court should dismiss Count 8 of the Indictment for failure to state an offense because Mr. Miah's Twitter activity falls outside the scope of 18 U.S.C. § 1519 and the statute is unconstitutionally vague as applied to his conduct.

Respectfully submitted this 20th day of May,

By:    /s/ Charles Swift
Charles D. Swift
D.C. ID No. 987353
CONSTITUTIONAL LAW CENTER
FOR MUSLIMS IN AMERICA
100 N. Central Expy., Ste 1010
Richardson, TX 75080
(972) 914-2507

*Attorney for Defendant*

---

⁷ Here, by including multiple counts under each threat statute, Mr. Miah may be subject to a two-level sentencing enhancement for an "offense involv[ing] more than two threats." U.S.S.G. §2A6.1(b)(2).