IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 21-110<br>Judge W. Scott Hardy |
| KHALED MIAH | |

**UNITED STATES' SUR-REPLY IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**

AND NOW comes the United States of America, by its attorneys, Stephen R. Kaufman, Acting United States Attorney for the Western District of Pennsylvania, and Jessica Lieber Smolar and Nicole Ann Stockey, Assistant United States Attorney's for said District, and hereby submits this Sur-Reply in Opposition to defendant Khaled Miah's Motion to Dismiss (Doc.45-1)("Motion") for the purpose of addressing new arguments raised in the first instance by defendant in his Reply brief (Doc. 57).

First, Defendant asserts that, with regard to Count Eight brought pursuant to 18 U.S.C.§ 1519, the Government should be required to seek an indictment based on "specific and distinct conduct". Defendant also alleges, without legal support, that the obstruction set forth in Count Eight should not apply to a public-facing Twitter account that defendant controlled. Both arguments with regard to Count Eight must fail.

The Indictment here is sufficient to charge a violation of 18 U.S.C. § 1519 because it alleges the essential elements of that statute. Fed. R. Crim. P. 7(c) requires that an indictment contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged" and "the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." The Supreme Court has explained:

1

> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. * * * It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence [sic] intended to be punished."

*Hamling v. United States,* 418 U.S. 87, 117-18 (1974) (citations omitted). The Indictment here alleges the elements of a § 1519 violation, including that Miah did "knowingly alter and delete Twitter accounts and postings with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States." (Indictment ¶ 33). No more is necessary to allege a violation of the statute. Nor does Miah cite any case that requires more expansive pleading than this.

However, the Indictment here did more than merely state the required statutory language. The allegations set forth in the Indictment related to Miah's obstructive conduct in violation of 18 U.S.C. § 1519 demonstrate a course of conduct from on or about October 5, 2020 to and including January 1, 2021 in which Miah, subsequent to becoming aware of the federal investigation into his online threats, made material deletions and alterations to his known Twitter accounts under investigation with the intent to impede, obstruct and influence the federal investigation into those accounts. *See* Indictment ¶¶ 3- 4, 5, 13. The Indictment, thus, includes the very type of allegations of the violation of this statute that Miah claims are necessary -- even though such evidentiary detail is not required in an indictment. Even under Miah's own overly restrictive interpretation of § 1519, therefore, the allegations in the Indictment are more than sufficient to state an offense.

*United States v. Moyer* is instructive here. In that case, the Court of Appeals for the Third Circuit found the 18 USC § 1519 count sufficient as pled. The Third Circuit stated that while the "government did not identify every omission or inclusion that rendered false the documents

identified in the indictment and thus 'did not, at the pre-trial stage, weave the information at its command into the warp of a fully integrated trial theory for the benefit of the defendant[],' the government was not required to do so." *Moyer*, 674 F.3d 192, 203 (3d Cir. 2012). Like the case of *Moyer*, the specificity with which the government identifies the obstructive conduct with regard Miah's alteration and deletion of the known Twitter accounts makes it "highly unlikely that [Miah] would be unfairly surprised with an unfamiliar alteration or deletion at trial. " *Id*. Moreover, the Court held in *Moyer*, a case charging falsified police reports, that the government was not required to specifically charge each falsified document separately. Where, as in *Moyer*, separate actions of the defendant were in furtherance of the sole object of obstructing an investigation, the Court held that the indictment can be interpreted to set forth a "continuing course of conduct during a discrete period of time". *Moyer*, 674 F.3d at 205 *citing* Rule 7(c)(1) (allowing a single count to allege that the defendant committed the offense by one or more specified means). Likewise, the Indictment against Miah alleges his continuing course of conduct and scheme to obstruct the federal investigation during a discrete period of time, from October 5, 2020 to January 1, 2021, by altering and deleting his Twitter accounts. After being confronted by the FBI in September of 2020 about these accounts, Miah, a reasonable person of "ordinary intelligence", was on notice that his conduct with regard to his Twitter accounts risked prosecution. *United States v. Parish*, 942 F.3d 289, 295 (6th Cir. 2019).

*Moyer* also makes it abundantly clear that defendant's legally unsupported argument that the obstruction statute should not apply to defendant's public-facing Twitter accounts and posts is misguided. The Third Circuit stressed that the word "record" in § 1519 is defined as "anything preserving information and constituting a piece of evidence about past events." *Moyer*, 674 F.3d at 205, *citing* Oxford English Dictionary (3d ed 2009). Courts, like *Moyer*, have consistently

resisted attempts, like those of the defendant here, to limit the reach of § 1519. *See e.g. United States v. Fontenot,* 611 F.3d 734, 739 (11th Cir. 2010) (concurring opinion) (discussing the legislative history of § 1519 and quoting Chairman John Conyers' statement in introducing the legislation that § 1519 "created a new 'felony which could be effectively used in a wide array of cases where a person *destroys or creates evidence* with the specific intent to obstruct a federal agency or criminal investigation.' " (citation omitted; emphasis added)); *United States v. Lanham,* 617 F.3d 873, 887 (6th Cir. 2010) (affirming defendants' § 1519 convictions for creating false incident reports and holding that "[m]aterial omissions of fact can be interpreted as an attempt to 'cover up' or 'conceal' information"); *United States v. Russell,* 639 F. Supp. 2d 226, 237 (D. Conn. 2007) (holding that § 1519 "could be effectively used in a wide array of cases where a person destroys or creates evidence with the intent to obstruct an investigation or matter"). Finally, it is well established that Section 1519 "regulates conduct, not speech. The conduct it regulates—destruction of documents with the intent to obstruct a federal investigation—is not expressive." *United States v. Fumo*, 628 F. Supp. 2d 573, 601 (E.D. Pa. 2007); *accord United States v. Brown,* No. 14 CR 674, 2015 WL 6152224 at *3 (N.D. Ill. Oct. 19, 2015) ("Section 1519 criminalizes the destruction, alteration, or falsification of records related to federal investigations and has no bearing on First Amendment freedoms."). Thus, whether a specifically altered or destroyed social media account exclusively controlled by the defendant is private or public-facing is of no moment with regard to the obstruction statute.

Next, while defendant erroneously asserts that the government should be ordered to break out specific acts of obstruction in its Indictment, he also asserts, without any legal authority[1], that

---

[1] The one case cited by defendant, *United States v. Voneida*, 337 Fed. Appx. 246 (3d Cir. 2009), in support of his argument did not address any arguments of multiplicity. Instead, it was an appeal in a threats case concerning the sufficiency of the trial evidence.

4

the government should be required to consolidate both the 18 U.S.C. § 875(c) counts and the § 115(a)(1)(B) counts due to concerns about multiplicity.[2] This argument is also incorrect and should be rejected because the plain language of the statute makes clear that the allowable unit of prosecution in threats cases is the <u>transmission</u> of a qualifying communication. *See United States v. Frazer,* 391 F.3d 866, 870 (7th Cir.2004). The issue is what Congress intended to constitute separate "unit[s] of prosecution." *Bell v. United States*, 349 U.S. 81, 83 (1955). Under this plain language and Congressional intent of the statue, there is no risk of multiplicity in the Indictment.

Multiplicity is "the charging of a single offense in separate counts of an indictment." *United States v. Kennedy*, 682 F.3d 244, 254 (3d Cir. 2012). The risk of multiplicitous indictments is that defendants will be subject to multiple sentences for the same offense, an "obvious violation" of the Double Jeopardy Clause. *Id.* at 255. The Supreme Court has held that, "because the substantive power to prescribe crimes and determine punishments is vested with the legislature, whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).

To evaluate legislative intent, the Third Circuit usually applies the test from *Blockburger v. U.S.*, 284 U.S. 299, 304 (1932), a double jeopardy case. *United States v. Hodge*, 870 F.3d 184, 194 (3d Cir. 2017); *accord United States v. Bencivengo*, 749 F.3d 205, 215 (3d Cir. 2014). The test asks "whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately. If the latter, there can be but one penalty." *Blockburger*, 284 U.S. at 302. This test determines whether each offense contains an element of

---

[2] Defendant seeks dismissal of the Indictment on this ground but, even if proven which is not the case here, multiplicity is not fatal and does not require the dismissal of an indictment. 1A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 145 (4th ed.2015). Consolidation rather than dismissal is the proper remedy.

required proof that the other offense does not. *United States v. Dixon*, 509 U.S. 688, 696 (1993); *see also* Wright et al., *Federal Practice and Procedure* § 142 n.15 (4th ed. 2018).

Congress drafted § 875(c) to criminalize "transmit[ting] in interstate or foreign commerce *any* communication containing *any* threat" (emphasis added). In other words, the statute expressly requires proof that (1) the defendant transmitted "any" communication in interstate commerce; (2) the communication contained "any" threat. Thus, in this case, the transmission of each individual tweet is the crime. Accordingly, the United States will have to prove that each individual transmission, in its full context with both the other transmissions and defendant's other actions, contained a threat. That each transmission also provides context for the others does not change this fact.[3]

*United States v. Alaboud*, an Eleventh Circuit case, is a helpful here. 347 F.3d 1293, 1295 (2003) (abrogated in light of *Elonis* by *United States v. Martinez*, 800 F.3d 1293 1295 (11th Cir. 2015)). Alaboud made 89 phone calls to his former attorney. He was charged under § 875(c) for five of them, each in a separate count. Some of the calls involved warnings of harm to the attorney himself, others predicted destruction of his "company," and still others warned of future harm to Jews or the entire population of that area of Florida. *Id*. at 1295–96. Alaboud was convicted of three of the five counts. On appeal, he argued, like Defendant does in this case, that, while his statements may have been offensive, they were not threats. He specifically noted, again like Defendant does here, that his statements never asserted that he himself would harm anyone but

---

[3] For example, if a student who was known to frequent gun ranges posted a tweet that said "I will shoot professor X tomorrow" and then another that said "And also professor y," each would be a separate criminal transmission even though the latter is meaningless without the context of the former.

6

that "his statements are more akin to the fire and brimstone prophecies of some television evangelists." *Id*. at 1297.

The Court of Appeals for the Eleventh Circuit rejected these arguments. It noted that any of the individual "statements, taken in isolation, may not rise to the level of a threat within the meaning of Section 875(c)." But looking at the context of the messages, including their number, Alaboud's tone, and their overall message, it was reasonable for the attorney to construe them as a threat. *Id.* at 1297. That each phone call was charged as a separate threatening transmission did not change that even if the isolated message would not have been a threat.

Another statute that comes into play in similar cases is also illustrative. Under 18 U.S.C. § 2261A(2), it is illegal to "engage in a course of conduct" that places a person in fear or substantial emotional distress. The term "course of conduct" is then defined as "a pattern of conduct composed of two or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266(2). Because the crime requires a course of conduct that involves multiple distinct acts, those acts could not be charged in separate counts. But the language in § 875(c) is conspicuously different, criminalizing a transmission of "***any*** communication containing ***any*** threat." (emphasis added). These statutes are written differently intentionally and must be charged accordingly. *See Frazer*, 391 F.3d at 870 (stating, in dicta, that "Under [18 U.S.C. § 844(e), 18 U.S.C. § 875(c), and 18 U.S.C. § 876(c)] the unit of prosecution is the telephone call or letter; each call or letter is indictable separately as a different 'threat'").

Similarly, with regard to Counts Six and Seven brought pursuant to 18 U.S.C. § 115(a)(1)(B), that statute, like § 875(c), requires the government to prove each threat to assault, kidnap or murder an agent of the FBI and that each threat was made with the intent to impede or interfere with such agent. Thus, the allowable unit of prosecution pursuant to § 115(a)(1)(B) is a

threat just like it is for § 875(c). The § 115(a)(1)(B) counts also are brought as separate charges in the Indictment to avoid multiplicity because each crime, § 115(a)(1)(B) and § 875(c), requires different elements. Unlike § 875(c), § 115(a)(1)(B) requires that the target of the threat is a federal official and that the defendant has the intent to impede or influence the federal investigation and § 875(c) requires an interstate transmission, not required for § 115(a)(1)(B). Thus, because of the nature of Miah's conduct and the intent and language of the statutes, the Indictment accounts for these different violations and does not suffer from multiplicity.

Finally, Defendant's Reply fails to overcome the very fundamental problem with his Motion to Dismiss. His Motion is premature and the merits of defendant's Motion depend, among other things, on the full context of his actions, the reaction of those he targeted, and other factual considerations that the parties will dispute at trial. At the Rule 12 stage, the court is not tasked with "weighing proofs" or "judging credibility," as those are issues for the jury. *United States v. Mack*, Crim. Action No. 19-692, 2020 WL 4934366, at *4 (E.D. Pa. August 24, 2020). In the Third Circuit, "[i]t is well-established that an indictment returned by a legally constituted and unbiased grand jury,. . . *if valid on its face,* is enough to call for trial of the charge on the merits." *United States v. Huet*, 665 F.3d 588, 594 (3d Cir. 2012). The Indictment in this case satisfies these requirements as it informs the defendant of the statutes under which he is charged, lists the

elements of each of these offenses, and specifies the time period during which the violations occurred. *Huet*, 665 F.3d at 595. Defendant's Motion to Dismiss should, therefore, be dismissed as premature.

                              Respectfully submitted,

                              STEPHEN R. KAUFMAN
                              Acting United States Attorney

By:   *s/ Jessica Lieber Smolar*
        JESSICA LIEBER SMOLAR
        Assistant United States Attorney
        PA ID No. 65406

        NICOLE ANN STOCKEY
        Assistant United States Attorney
        PA ID No. 306955

        Dmitriy Slavin
        Trial Attorney
        National Security Division
        Counterterrorism Section