**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 21-110 |
| KHALED MIAH, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Defendant Khaled Miah is charged in an eight-count Indictment with five counts of making threatening interstate communications in violation of 18 U.S.C. § 875(c), two counts of threatening to assault FBI agents in violation of 18 U.S.C. § 115(a)(1)(B), and one count of obstruction of justice in violation of 18 U.S.C. § 1519. Presently before the Court is Defendant's Motion to Dismiss All Counts of the Indictment For Failure to State an Offense (Docket Nos. 45, 47, 57), which is opposed by the Government. (Docket Nos. 53, 62). After careful consideration of the parties' respective positions, the Court concludes that the Indictment is sufficiently pled and dismissal is not warranted on any basis advanced by Defendant. Accordingly, Defendant's Motion is denied.[1]

## II.    BACKGROUND

### A.  Procedural History

On January 6, 2021, Defendant was charged in a criminal complaint with violating 18 U.S.C. §§ 875(c), 115(a)(1)(B) and 1519. (Docket No. 4). Defendant made an initial appearance

---

[1] The parties have thoroughly briefed the issues raised by Defendant's Motion, thus the Court finds that a hearing and/or oral argument on the Motion is unnecessary. *See* Fed. R. Crim. P. 12(c)(1) (providing that the court "may" schedule a motion hearing).

1

on that same date, and a preliminary hearing and a detention hearing were held on January 8, 2021, at which time he was ordered to be detained. (Docket Nos. 14, 18, 19, 20).

As stated, on March 16, 2021, Defendant was charged in an eight-count Indictment with the following: five counts of making interstate threats, in violation of 18 U.S.C. § 875(c), for conduct occurring on or about December 27, 2020, December 28, 2020, December 29, 2020, December 30, 2020 and December 31, 2020 (Counts One through Five, respectively); two counts of influencing and/or retaliating against a federal officer by threat, in violation of 18 U.S.C. § 115(a)(1)(B), for conduct occurring on or about December 30, 2020 and December 31, 2020 (Counts Six and Seven, respectively); and one count of destruction, alteration or falsification of records in a federal investigation, in violation of 18 U.S.C. § 1519, for conduct occurring from on or about October 5, 2020 to and including January 1, 2021 (Count Eight). (Docket No. 33). Defendant was arraigned and pled not guilty to these charges on March 24, 2021. (Docket Nos. 39, 40).

Defendant now moves to dismiss all counts of the Indictment for failure to state an offense under Fed. R. Crim. P. 12(b)(3)(B)(v), arguing that his communications charged in Counts One through Seven of the Indictment, which were made on the Twitter Internet communication platform, do not constitute "threats to injure" within the meaning of 18 U.S.C. §§ 875(c) and 115(a)(1)(B). (Docket Nos. 45, ¶ 4; 47 at 7-8). Even if the tweets[2] in Counts One through Seven can be interpreted as threatening, Defendant maintains that they were not "true threats," thus they are protected by the First Amendment. (Docket Nos. 45, ¶ 4, 47 at 9-13). Moreover, Defendant contends that the Indictment should be dismissed because the threat and obstruction statutes he is charged with violating are void for vagueness as applied to his speech and activity on Twitter.

---

2     A "tweet" is a message posted on the Twitter platform containing text, photos, video, etc.

(Docket Nos. 45, ¶¶ 4-5; 47 at 14-18, 22-23). Finally, Defendant asserts that Count Eight should be dismissed because his Twitter activity is outside the scope or intent of 18 U.S.C. § 1519. (Docket Nos. 45, ¶ 5, 47 at 18-21).

The Government responds that the Indictment is valid on its face because it contains a plain, concise and definite statement of the essential facts constituting the offenses charged as required by Fed. R. Crim. P. 7. (Docket No. 53 at 7). The Government submits that Defendant's Motion should be denied as premature because the merits of the Motion depend, in part, on the full context of his actions, the reaction of those he allegedly targeted and other factual considerations that the parties will dispute at trial. (*Id.* at 5-7). Additionally, the Government advocates that dismissal of the Indictment is not warranted because Defendant's tweets were true threats that are not protected by the First Amendment, his void for vagueness as applied challenge mirrors his First Amendment challenge and should fail for the same reasons, and his challenge to Count Eight is both premature, because it seeks to address on a pretrial motion the sufficiency of the evidence against him, and legally unsupported. (*Id.* at 7-21).

In reply, Defendant reiterates his arguments that the tweets in Counts Two, Three and Five do not contain threats to injure another, and the tweet in Count Seven does not contain a threat to assault a federal law enforcement officer. (Docket No. 57 at 5-8). Next, Defendant repeats his argument that the language and purpose of 18 U.S.C. § 1519 do not apply to the Twitter activity which forms the basis of the charge against him in Count Eight, and he additionally argues for the first time that § 1519 is inapplicable because his Twitter account was public.[3] (*Id.* at 2-5).

---

3    As defense counsel is surely aware, it is "inappropriate to raise an argument for the first time in a Reply brief." *Oberwager v. McKechnie Ltd.*, 351 F. App'x 708, 711 n.5 (3d Cir. 2009); *see also* Practices and Procedures of Judge W. Scott Hardy, ¶ II.D(5) (available at https://www.pawd.uscourts.gov/sites/pawd/files/Hardy_Practices_Procedures%20_Effective_July_1_2021.pdf) ("A reply brief is defined as the second brief advocating a party's position on the same motion filed after the non-moving party's response."). In this instance, the Court ordered the Government to file a sur-reply brief to avoid any potential

Defendant also contends for the first time that Count Eight must be dismissed because it is unclear "for *which* conduct the grand jury indicted" him, thus the Government should be required to seek an Indictment based on "specific and distinct" conduct.[4]  (*Id.* at 1, 5) (emphasis in original). Further, Defendant raises a new multiplicity argument, asserting that the Indictment as charged could result in multiple convictions for the same course of conduct.  (*Id.* at 8-10).

The Government counters in its sur-reply that the allegations are more than sufficient to charge a violation of 18 U.S.C. § 1519 in Count Eight for Defendant's continuing course of conduct to obstruct the federal investigation during the period from October 5, 2020 to January 1, 2021, thus there is no need to break out specific acts of obstruction.  (Docket No. 62 at 2-3). Further, it is irrelevant whether an altered or destroyed Twitter account controlled by Defendant was private or public-facing for purposes of the obstruction statute.  (*Id.* at 3-4).  In addition, the Government argues that Defendant's multiplicity argument should be rejected because the allowable unit of prosecution in threat cases is the transmission of a qualifying communication.  (*Id.* at 5-8).  Finally, the Government reiterates that the Indictment is valid on its face, and submits that Defendant has failed to overcome the fundamental problem that his Motion is premature.  (*Id.* at 8-9).

### B.  **The Allegations in the Indictment**

The Indictment begins with a section entitled "General Allegations," which includes 18 paragraphs applicable "[a]t all times material to the Indictment."  (Docket No. 33 at 1).  The

---

prejudice as a result of new arguments raised by Defendant in his reply brief.  (Docket No. 58).  Accordingly, the Court will consider the arguments raised in Defendant's reply, but cautions defense counsel to refrain against undertaking this tactic in any future motion practice before this Court.

4       Defendant stated in a footnote in his opening brief that "[i]t is unclear to which Twitter accounts or postings the government is referring in the Indictment", but did not otherwise develop the argument at the time.  (*See* Docket No. 47 at 18, n. 11).

Indictment alleges that on or about September 28 and 29, 2020, FBI Special Agent A and other agents (the "Agents") attempted to interview Defendant about reports received by law enforcement concerning an online threat made by Defendant. (*Id.*, ¶ 3). Defendant allegedly was uncooperative, erratic, and provocative in his interactions with the Agents. (*Id.*).

On or about October 5, 2020, a review of several of Defendant's known Twitter accounts revealed material changes and deletions such as changes to profile pictures, display names, and the location of his account. (Docket No. 33, ¶ 4). Numerous tweets associated with Defendant's known Twitter accounts allegedly had been deleted and one known account had been deleted in full. (*Id.*).

On or about October 8, 2020, Defendant altered the outward facing profile photograph on one of his known Twitter accounts to depict a photograph of Special Agent A's wife ("Victim A") and changed the display name from "@Lugenpresse_" to "@[Victim A's first name]presse." (Docket No. 33, ¶ 5). The account was able to be viewed by the public. (*Id.*). The biographical information on Defendant's account also was altered to include Victim A's actual place of work, her educational background, and her age, hair color, religion, and original hometown in the United States, as well as crude and sexual comments related to Special Agent A and Victim A. (*Id.*).

On or about October 9, 2020, a federal search warrant authorized the search of Defendant's residence and seizure of his electronic devices. (Docket No. 33, ¶ 6). When interviewed by FBI Agents, Defendant admitted that he had researched Special Agent A and Victim A online, and that he had used Victim A's photograph and information to alter his Twitter account. (*Id.*). The Indictment alleges that the FBI's examination of Defendant's electronic devices and online accounts revealed his interest in weapons, fascination with violence and strong animosity toward law enforcement. (*Id.*). The Indictment further alleges that FBI surveillance revealed that

Defendant conducted reconnaissance of Special Agent A's residence and the FBI Pittsburgh Field Office on multiple occasions subsequent to the FBI's attempted interview of Defendant in September 2020. (*Id.* ¶ 8). Additionally, on or about September 30, 2020, Defendant sent four photographs of Special Agent A and Victim A to an associate via the Internet platform WhatsApp, with the following message: "That's him..his wife..and his closer friends. It's all public information now along with his credentials, shield number, listened [sic] plays [sic] numver [sic], make model and year of his personal car and his agency issued cruiser. Also his location of residence is also public." (*Id.*, ¶ 7).

Following the seizure of Defendant's electronic devices on or about October 9, 2020, he created and controlled two new Twitter accounts in or around November 2020. (Docket No. 33, ¶ 9). Defendant used both Twitter accounts to tweet messages over the Internet about an FBI Supervisory Special Agent and Special Agent A by name and indicated that he had researched their personal lives, prior professions, and current city and Special Agent A's wife, siblings, hometown, and education. (*Id.*).

On or about December 19, 2020, Defendant created and controlled a new Twitter account identified by the display name "Federal Intelligence Service" and the username @ServiceFederal. (Docket No. 33, ¶ 10). On or about December 27, 2020, Defendant posted the following statements through his @ServiceFederal Twitter account: "[c]urrently eating pasta and watching videos of the second plane hit the south tower"; and "Nick, Dave, Mike, the whole bureau, the deed will be done at a time which is the most opportunistic for me, chosen by myself." (*Id.*, ¶ 11). As alleged in the Indictment, Defendant subsequently deleted those posts by December 28, 2020, with the intent to impede, obstruct or influence the FBI's investigation into his conduct. (*Id.*, ¶ 13).

On December 28, 29 and 30, 2020, Defendant posted the following statements on Twitter:

"the zero hour is approaching."; "38° 53' 42.7" N, 77° 1' 30" W"[5]; and "Rasheed, Dave, Nick, Mike…..how's your investigation going? Things are looking 'bright' in 2021. Did you find the Saudi passports?" (Docket No. 33, ¶ 14). Further, on December 30, 2020, Defendant posted from his @ServiceFederal Twitter account: "2001-2021 is 20 years. An entire generation, yet men like me still exist and pop up into existence. Next time you come in cowboy with the crew, the hardwood will collapse beneath your feet." (*Id.*, ¶ 17). Finally, on December 31, 2020, Defendant posted the following on his @ServiceFederal Twitter account: "[r]emember boys, the more eyes on me, the less eyes on the others. Regardless, yellow tapes will flow." (*Id.*, ¶ 18).

The next section of the Indictment, entitled "Counts One Through Five," alleges as follows:

On or about the following dates, in the Western District of Pennsylvania and elsewhere, the defendant, KHALED MIAH, did knowingly and willfully transmit in interstate commerce a communication containing a threat to injure the person of another; that is, MIAH transmitted, through the following internet communication platforms, the following threats to injure FBI agents:

| Count | Date | Internet Communication Platform | Threat to Officer |
|---|---|---|---|
| 1 | December 27, 2020 | Twitter | "Currently eating pasta and watching the second plane hit the south tower.<br><br>Nick, Dave, Mike and the whole bureau, the deed will be done at a time which is most opportunistic for me, chosen by myself." |
| 2 | December 28, 2020 | Twitter | "The zero hour is approaching" |
| 3 | December 29, 2020 | Twitter | "38° 53' 42.7" N, 77° 1' 30" W" |
| 4 | December 30, 2020 | Twitter | "Rasheed, Dave, Nick, Mike…..how's your investigation going? Things are looking "bright" in 2021. Did you find the Saudi passports?"<br><br>"2001-2021 is 20 years. |

5    As set forth in the Indictment, the coordinates listed in Defendant's tweet on December 29, 2020 resolve to the FBI Headquarters Building in Washington, D.C. (Docket No. 33, ¶ 15).

| | | | An entire generation, yet men like me still exist and pop up into existence. Next time you come in cowboy with the crew, the hardwood will collapse beneath your feet." |
|---|---|---|---|
| 5 | December 31, 2020 | Twitter | "Remember boys, the more eyes on me, the less eyes on the others. Regardless, yellow tapes will flow" |

In violation of Title 18, United States Code, Section 875(c).

(Docket No. 33 at 8).

The Indictment next alleges in the section entitled "Counts Six and Seven" as follows:

On or about December 30, 2020, and on or about December 31, 2020, in the Western District of Pennsylvania, the defendant, KHALED MIAH, did threaten to assault FBI agents, with intent to impede, intimidate, interfere with and retaliate against the agents while they were engaged in or on account of the performance of their official duties as follows:

| Count | Date | Internet Communication Platform | Threat to Officer |
|---|---|---|---|
| 6 | December 30, 2020 | Twitter | "Rasheed, Dave, Nick, Mike…..how's your investigation going? Things are looking "bright" in 2021. Did you find the Saudi passports?"<br><br>"2001-2021 is 20 years. An entire generation, yet men like me still exist and pop up into existence. Next time you come in cowboy with the crew, the hardwood will collapse beneath your feet." |
| 7 | December 31, 2020 | Twitter | "Remember boys, the more eyes on me, the less eyes on the others. Regardless, yellow tapes will flow" |

In violation of Title 18, United States Code, Sections 115(a)(1)(B) and 115(b)(4).

(Docket No. 33 at 9).

Finally, the Indictment alleges in the section entitled "Count Eight" as follows:

> From on or about October 5, 2020 to and including January 1, 2021, in the Western District of Pennsylvania, the defendant, KHALED MIAH, did knowingly alter and delete Twitter accounts and postings with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States.

> In violation of Title 18, United States Code, Section 1519.

(Docket No. 33 at 10).

## III. <u>LEGAL STANDARD</u>

The Federal Rules of Criminal Procedure require that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007) (citation omitted). "Usually, a recitation of the statutory language satisfies the first requirement, 'so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy.' " *United States v. Stock*, 728 F.3d 287, 292 (3d Cir. 2013) (quoting *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012)). "And typically, a factual orientation that includes a specification of the time period of the alleged offense is sufficient for the second and third requirements." *Id.* (citing *Huet*, 665 F.3d at 595).

In analyzing Defendant's Motion to Dismiss the Indictment for failure to state an offense, this Court is limited in what it may consider. Crucially, "a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000) (citations omitted). Rather, the Court's

review is confined to the facts alleged in the indictment. *See United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011). To that end, "[i]n evaluating a Rule 12 motion to dismiss, a district court must accept as true the factual allegations set forth in the indictment" and "determin[e] whether, assuming all of those facts as true, a jury could find that the defendant committed the offense for which he was charged." *Huet*, 665 F.3d at 595-96. In sum, the Court generally engages in "a narrow, limited analysis geared only towards ensuring that legally deficient charges do not go to a jury." *Bergrin*, 650 F.3d at 268.

## IV.  DISCUSSION

As noted, Defendant is charged with five counts of violating 18 U.S.C. § 875(c), which makes it illegal to "transmit[] in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another," two counts of violating 18 U.S.C. § 115(a)(1)(B), which criminalizes "threaten[ing] to assault, kidnap, or murder . . . a Federal law enforcement officer," and one count of violating 18 U.S.C. § 1519,  which proscribes "knowingly alter[ing], destroy[ing], mutilat[ing], conceal[ing], cover[ing] up, falsif[ying], or mak[ing] a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." In this Court's estimation, each Count of the Indictment satisfies the requirements of Rule 7(c) and is sufficiently pled in accordance with controlling Third Circuit authority discussed above.  Each Count informs Defendant of the statutory section he is charged with violating, sufficiently sets forth the elements of each charged offense, and specifies the time frame of the alleged criminal conduct. Although "detailed allegations" are unnecessary, *see Huet*, 665 F.3d at 594, the "General Allegations"

section of the Indictment provides Defendant with additional background and factual orientation relative to the charges in Counts One through Eight of the Indictment.

Despite this, Defendant contends that the Indictment is insufficient to state an offense because "the specific facts alleged . . . fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." (Docket No. 45, ¶ 2 (citing *Stock*, 728 F.3d at 292)). To that end, Defendant argues that Counts One through Seven fail to state an offense because the charged tweets do not constitute a threat to injure under 18 U.S.C. §§ 875(c) and 115(a)(1)(B), nor are they "true threats" under Supreme Court precedent. (*Id.*, ¶ 4). Defendant further maintains that the threat counts of the Indictment are multiplicitous. (Docket No. 57 at 8-10). In addition, Defendant asserts that Count Eight fails to state an offense because his Twitter activity does not fall within the scope or intent of 18 U.S.C. § 1519. (Docket No. 45, ¶ 5). Moreover, Defendant argues that the Indictment should be dismissed because the statutes he is charged with violating are void for vagueness as applied to his conduct. (*Id.*, ¶¶ 4, 5). Defendant is incorrect on all counts.

A.  **Whether Defendant's Tweets Charged in the Indictment are Threats and/or True Threats Must Properly be Decided by the Trier of Fact.**

In *Watts v. United States*, 394 U.S. 705 (1969), the Supreme Court held that a threat statute may criminalize only "a true threat," *id.* at 708, which "must be distinguished from . . . constitutionally protected speech." *Id.* at 707. The Third Circuit Court of Appeals has clarified that there is a distinction between the constitutional meaning of a "true threat" under the First Amendment and the plain meaning of a "threat" under 18 U.S.C. § 875(c).[6] *Stock*, 728 F.3d at 294. The Third Court has held that the word "threat" in § 875(c) "encompasses only

---

6       As such, the Third Circuit Court of Appeals has commented that "there can be separate inquiries into whether a statement is a 'threat' under § 875(c) or a 'true threat' under the First Amendment." *United States v. C.S.*, 968 F.3d 237, 244 n.7 (3d Cir. 2020) (citing *Stock*, 728 F.3d at 294). Nonetheless, "[n]either [the Third Circuit] nor the Supreme Court has explained all the differences between the two phrases." *Id.*

communications expressing an intent to inflict injury in the present or future." *Id.* at 293. Under Supreme Court jurisprudence, " '[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003) (citing *Watts*, 394 U.S. at 708) ("political hyperbole" is not a true threat)).

Defendant argues that the Indictment should be dismissed because the tweets charged in Counts One through Seven do not constitute a "threat to injure" within the meaning of 18 U.S.C. §§ 875(c) and 115(a)(1)(B). (Docket Nos. 45, ¶ 4; 47 at 7-8). Even if the tweets in Counts One through Seven can be interpreted as threatening, Defendant maintains that they are not "true threats," thus they are protected by the First Amendment. (Docket Nos. 45, ¶ 4, 47 at 9-13). Consequently, Defendant submits that the Court should conclude, as a matter of law, that the tweets do not constitute threats or true threats and should dismiss the Indictment. For reasons that follow, the Court declines to do so because these matters should properly be decided by the trier of fact.

### 1.     <u>Threats</u>

Defendant takes issue with Counts Two, Three, Five and Seven, arguing that the charged tweets, on their face, do not contain a statement that could be construed as a threat to injure another person under 18 U.S.C. §§ 875(c) and 115(a)(1)(B). (Docket No. 47 at 7-8). "In the usual case, whether a communication constitutes a threat or a true threat 'is a matter to be decided by the trier of fact.' " *Stock*, 728 F.3d at 298 (quoting *United States v. Kosma*, 951 F.2d 549, 555 (3d Cir. 1991)). Nonetheless, "[a] few cases may be so clear . . . that they can be resolved as a matter of law." *Id.* (quoting *Kosma*, 951 F.2d at 555). Accordingly, the Third Circuit reaffirmed in *Stock* that a court "may properly dismiss an indictment as a matter of law if it concludes that no reasonable jury could find that the alleged communication constitutes a threat or a true threat." *Id.*

12

(citing *Huet*, 665 F.3d at 596). Here, the Court is well aware of its authority to do so if it concludes that the tweets charged in the Indictment are not threats and thus fall beyond the scope of 18 U.S.C. §§ 875(c) and 115(a)(1)(B). *See Stock*, 728 F.3d at 292 (recognizing that a defendant may claim that an indictment fails to state an offense because "the specific facts alleged . . . fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation"). However, the Court declines to dismiss the indictment because it finds that reasonable jurors could conclude that Defendant's tweets charged in Counts Two, Three, Five and Seven, considered in the context and totality of the circumstances alleged in the Indictment, constitute an expression of intent to injure FBI agents in the present or future. *See Stock*, 728 F.3d at 301 ("... the court's determination of whether a statement constitutes a threat under § 875(c) is based on the context and totality of the circumstances.").

In this case, the Government included sufficient context in the Indictment for this Court to determine that a reasonable jury could find that Defendant's tweets in Counts Two, Three, Five[7] and Seven[8] expressed an intent to injure FBI agents. That context includes the following:

- Special Agent A and other Agents attempted to interview Defendant in late September 2020 concerning an online threat made by Defendant.

- When a federal search warrant was executed at Defendant's residence on October 9, 2020, Defendant was interviewed and admitted that he had

---

[7] Counts Two, Three and Five each charge a violation of 18 U.S.C. § 875(c). To prove a threat under § 875(c), the Government must prove beyond a reasonable doubt that: (1) "the defendant transmitted a communication for the purpose of issuing a threat or with knowledge that the communication would be viewed as a threat," and (2) "the defendant transmitted a communication that a reasonable person would view as a threat." *United States v. Elonis*, 841 F.3d 589, 596 (3d Cir. 2016) ("*Elonis II*"). The first element is subjective and requires proof of the defendant's purpose or knowledge. *Id.* at 596. The second element is objective and "requires the jury to consider the context and circumstances in which a communication was made to determine whether a reasonable person would consider the communication to be a serious expression of an intent to inflict bodily injury on an individual." *Id.* at 597.

[8] Count Seven charges a violation of 18 U.S.C. § 115(a)(1)(B). To prove a threat under § 115(a)(1)(B), the Government must prove that an objectively reasonable person would have viewed the communication as a threat. *See United States v. Cruz*, 713 F. App'x 82, 87-88 (3d Cir. 2017) (holding that trial court's jury instruction defining the "threat" element of offense of threatening to assault and kill a federal agent to include an objective reasonable person standard, and failing to require subjective intent, did not constitute plain error).

researched Special Agent A and his wife, Victim A, online, and that he had used Victim A's photograph to alter his Twitter account. The FBI's examination of Defendant's online accounts and electronic devices which were seized pursuant to the warrant revealed his interest in weapons, fascination with violence, and strong animosity toward law enforcement.

- Defendant sent four photographs of Special Agent A and Victim A to an associate via WhatsApp, with the following message: "That's him..his wife..and his closer friends. It's all public information now along with his credentials, shield number, listened [sic] plays [sic] numver [sic], make model and year of his personal car and his agency issued cruiser. Also his location of residence is also public."

- Defendant conducted reconnaissance of Special Agent A's residence and the FBI Pittsburgh Field Office on multiple occasions subsequent to the FBI's attempted interview of him in September 2020.

- Defendant tweeted messages about an FBI Supervisory Special Agent and Special Agent A by name and indicated that he had researched their personal lives, prior professions and current city, as well as information about Special Agent A's wife.

- On or about December 27, 2020, Defendant posted the following statements through his @ServiceFederal Twitter account: "[c]urrently eating pasta and watching videos of the second plane hit the south tower"; and "Nick, Dave, Mike, the whole bureau, the deed will be done at a time which is the most opportunistic for me, chosen by myself."

(Docket No. 33, ¶¶ 3, 6, 7, 8, 9, 11).

Accepting as true the allegations contained in the Indictment, a reasonable jury could conclude that the tweet in Count Two stating that "[t]he zero hour is approaching" constitutes a threat. As alleged in the Indictment, Defendant's electronic devices and online accounts revealed that he had a fascination with violence and a strong animosity toward law enforcement. Following the FBI's attempt to interview Defendant, he researched details about Special Agent A's life and conducted reconnaissance of his residence and the FBI Pittsburgh Field Office. Defendant later tweeted messages about an FBI Supervisory Special Agent and Special Agent A by name and indicated that he had researched their personal lives. He also tweeted about watching videos of

the second plane hitting the south tower, which is an obvious reference to the horrific terrorist attacks on September 11, 2001. *See United States v. Stoner*, 781 F. App'x 81, 86 (3d Cir. 2019) ("Referencing a highly sensitive subject matter in a threat, such as a mass shooting of police officers, 'make[s] it impossible to believe [the defendant] was unaware it would be interpreted as a threat.' " (quoting *Elonis II*, 841 F.3d at 600)). Considering this context and the fact that reference to "the zero hour" denotes the occurrence of a significant event, *see Merriam-Webster Dictionary* (available at https://www.merriam-webster.com/dictionary/zero%20hour) (defining "zero hour" as "the time at which a usually significant or notable event is scheduled to take place"), it would be reasonable for a jury to conclude that "the zero hour is approaching" was a threat to injure FBI agents in the present or future.

Likewise, a reasonable jury could conclude that the tweet in Count Three containing the coordinates of the FBI Headquarters Building in Washington, DC constitutes a threat to injure agents at that location, given the background context just discussed. Finally, in view of that same background context, a reasonable jury could consider the tweet in Counts Five and Seven stating "[r]emember boys, the more eyes on me, the less eyes on others. Regardless, yellow tapes will flow" as a threat to injure. A jury could reasonably conclude that the "boys" refer to the FBI agents referenced by name in Defendant's prior tweets, particularly given that he had researched information about Special Agent A and an FBI Supervisory Special Agent, and that "yellow tapes will flow" refers to the placement of yellow tape around a crime scene, indicating that the FBI agents will be injured or killed and there will be a crime scene while the FBI is watching him.

In sum, considering the facts alleged, the Government included sufficient context in the Indictment for this Court to conclude that a reasonable jury could find that Defendant's tweets contained in Counts Two, Three, Five and Seven expressed an intent to injure FBI agents in the

present or future.  *See Stock*, 728 F.3d  at 301 (holding that the Government included sufficient context in the indictment for the district court to determine that a reasonable jury could find that the defendant's statement expressed an intent to injure in the present or future).

## 2.  **True Threats**

Defendant next argues that his tweets in Counts One through Seven of the Indictment do not constitute true threats as a matter of law because they are not "serious expression[s] of an intent to commit an act of unlawful violence" against the FBI agents or any other particular individual or group.  (Docket No. 47 at 10).  Defendant claims that his tweets, which he repeatedly characterizes in his briefing as "hyperbolic and politically charged," were not true threats, but rather protected speech under the First Amendment.  (*Id.* at 1, 10).  For reasons that follow, the issue of whether Defendant's tweets were true threats or hyperbole is one for a jury, not this Court, to decide.

As noted, true threats are "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359.  The Supreme Court has held that political hyperbole is not a true threat because there is a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Watts*, 394 U.S. at 708 (citation omitted).

To be a true threat within the context of 18 U.S.C. § 875(c), the defendant must subjectively intend his communication to be threatening.  *Elonis v. United States*, 575 U.S. 723, 740 (2015); *Elonis II*, 841 F.3d at 596 (observing that § 875(c) contains both a subjective and objective component).  The defendant must also transmit a communication for the purpose of issuing a threat or with knowledge that the communication would be viewed as a threat.  *Elonis II*, 841 F.3d at

596.  The Third Circuit Court of Appeals has explained that this objective component "shields individuals from culpability for communications that are not threatening to a reasonable person, distinguishing true threats from hyperbole, satire, or humor." *Id.* at 596-97.  Accordingly, "[i]t requires the jury to consider the context and circumstances in which a communication was made to determine whether a reasonable person would consider the communication to be a serious expression of an intent to inflict bodily injury on an individual." *Id.* at 597 (citing *Black*, 538 U.S. at 360).  In analyzing whether a communication constitutes a true threat under 18 U.S.C. § 115(a)(1)(B), courts have similarly considered whether a jury could have reasonably considered the communication as such.  *See e.g., United States v. Ivers*, 967 F.3d 709, 718-19 (8th Cir. 2020) (in § 115(a)(1)(B) case, jury reasonably could have inferred true threat of present or future harm to federal judge that was not protected by First Amendment from, among other statements, defendant's comment that "you don't know the 50 different ways I planned to kill her").

   As discussed above, the Indictment provides sufficient context such that a reasonable jury could conclude that Defendant's tweets were true threats.  *See CS*, 968 F.3d at 245 (determining that "the context and circumstances" in which the defendant made statements about violence and terrorist attacks could allow a reasonable person to view them as serious).  For reasons already explained above, a reasonable jury could construe the tweets in Counts Two, Three, Five and Seven to be a serious expression of an intent to commit an act of unlawful violence to the FBI agents. The same is true for the tweets in Count One ("[currently eating pasta and watching the second plane hit the south tower.  Nick, Dave, Mike and the whole bureau, the deed will be done at a time which most opportunistic for me, chosen by myself."), and Counts Four and Six (as to both counts, "Rasheed, Dave, Nick, Mike…how's your investigation going? Things are looking 'bright' in 2021.  Did you find the Saudi passports?" "2001-2021 is 20 years.  An entire generation, yet men

like me still exist and pop up into existence. Next time you come in cowboy with the crew, the hardwood will collapse beneath your feet."). Defendant's reference to the south tower and 20 years passing since 2001 is an obvious reference to the September 11th terrorist attacks. As noted, referencing such a highly sensitive subject matter in a threat makes it impossible to believe Defendant was unaware it would be interpreted as such. *See Stoner*, 781 F. App'x at 86. On top of that, Defendant names specific FBI agents, states that a "deed" will be done at a time he chooses, appears to compare himself to the perpetrators involved in the September 11th attacks by pointing out that 20 years have passed, "yet men like me still exist and pop up into existence," and threatens physical harm by stating that next time "the hardwood will collapse beneath your feet."

Although a reasonable jury could conclude that Defendant's tweets in Counts One through Seven were true threats, he disputes this and claims that they were hyperbolic and politically charged and thus protected under the First Amendment. According to Defendant, the tweets were posted "on one of multiple satirical Twitter accounts," "express disapproval through satire and mockery of both the FBI's treatment of [him] and its broader treatment of Muslim men in a post-9/11 America," and were "intended to mock and troll the agents [but] not threaten them." (Docket No. 47 at 10, 12). As support for Defendant's assertion that his tweets were intended to mock and troll the agents, but not threaten them, he cites to the Affidavit in Support of the Criminal Complaint. *See id.* at 12 (citing Aff. in Supp. of Crim. Compl. ¶ 51 (quoting Defendant's November 12 tweet, "I don't believe in violence. But I do believe in offending people . . . )). At this juncture, the Court is not permitted to ascertain the purpose and intent of Defendant's tweets by reference to consideration of any materials outside of the Indictment. *See Bergrin*, 650 F.3d at 268 (on a motion to dismiss the indictment, the court's review is confined to the facts alleged in the indictment). This only underscores that whether Defendant's tweets are true threats, as the

Government contends, or hyperbole, as he submits, is a factual dispute for the jury to determine, not one for the Court to decide as a matter of law on the present record.

**B. The Indictment is not Multiplicitous.**

Defendant argues that the Indictment, as charged, could result in multiple convictions for the same course of conduct. (Docket No. 57 at 8-10). According to Defendant, his tweets each day for five days in a row constitute a single, continuing course of conduct over that period, and the tweets in each count cannot stand on their own. (*Id.* at 10). As such, Defendant urges that Counts One through Seven should be dismissed without prejudice, and the Government should be required to bring the charges as a single violation of § 875(c) and a single violation of § 115(a)(1)(B). (*Id.* at 9, 11). The Government counters that the Indictment does not suffer from multiplicity. (Docket No. 62 at 5-8).

Initially, the Court notes that Defendant moved to dismiss the Indictment for failure to state an offense under Fed. R. Crim. P. 12(b)(3)(B)(v). *See* Docket No. 45 at 1 ("Defendant Khaled Miah moves this Court to dismiss Counts 1 through 8 of the Indictment for failure to state an offense under Federal Rule of Criminal Procedure 12(b)(3)(B)(v)."). Defendant's Motion was not made pursuant to Rule 12(b)(3)(B)(ii) for "charging the same offense in more than one count (multiplicity)." Fed. R. Crim. P. 12(b)(3)(B)(ii). As noted, Defendant did not make a multiplicity argument in his opening brief, but rather raised the issue for the first time in reply. *See supra* at 4. Putting aside any improper procedure, the Court concludes that the Indictment is not multiplicitous.

"Multiplicity is the charging of a single offense in separate counts of the indictment. A multiplicitous indictment risks subjecting a defendant to multiple sentences for the same offense,

an obvious violation of the Double Jeopardy Clause's protection against cumulative punishment."[9] *United States v. Kennedy*, 682 F.3d 244, 254-55 (3d Cir. 2012) (citations omitted). The test for multiplicity examines "whether the legislature intended to make separately punishable the different types of conduct referred to in the various counts." *Id.* at 255 (quoting *United States v. Stanfa*, 685 F.2d 85, 87 (3d Cir. 1982)). This assessment requires the Court to look to each statute's "unit of prosecution." *Id.* (quoting *United States v. Tann*, 577 F.3d 533, 536 (3d Cir. 2009)).

Contrary to Defendant's position, the five counts of making threatening interstate communications and the two counts of threatening to assault FBI agents are not multiplicitous simply because they involve multiple counts under the same two statutes. Courts have recognized that the allowable unit of prosecution in threat cases is the threatening communication. See *United States v. Keystone*, Case No. 2:18CR00013, 2019 WL 289820, at *2 (W.D. Va. Jan. 22, 2019) (finding in § 875(c) case that "each alleged communication transmitted in interstate commerce is a single offense"); *United States v. Bradbury*, No. 2:14–CR–71 PS, 2015 WL 3737595, at *7 (N.D. Ind. June 15, 2015) (citing *United States v. Frazer*, 391 F.3d 866, 870 (7th Cir. 2004)). Here, each of Counts One through Five, which charge violations of 18 U.S.C. § 875(c), allege distinct threats on different dates. The same is true for each of Counts Six and Seven, which allege violations of 18 U.S.C. § 115(a)(1)(B). Thus, each of Counts One through Five and Counts Six and Seven charge for discrete alleged wrongful acts. *See Keystone*, 2019 WL 289820, at *2 (rejecting multiplicity challenge premised on contention that sending two threatening letters should be considered as a single threat because their language was functionally identical and the defendant used different addresses to ensure delivery). They are not multiple counts for a single offense and

---

9      The Double Jeopardy Clause of the Fifth Amendment protects criminal defendants against both successive punishments and prosecutions for the same criminal offense. *See United States v. Dixon*, 509 U.S. 688, 696 (1993) (citation omitted).

will not result in multiple penalties for one crime.

Likewise, there is no multiplicity concern with the two separate statutory provisions charged in Counts One through Seven of the Indictment,  As the Supreme Court instructed in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), where the "same act or transaction constitutes a violation of two distinct statutory provisions," courts must examine "whether each provision requires proof of an additional fact which the other does not" to determine if a defendant has been charged with multiplicitous counts.  "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States*, 420 U.S. 770, 785 n. 17 (1975).

Here, the Court finds that Counts One through Seven of the Indictment are not multiplicitous, even though the tweets underlying the charges in Counts Four (§ 875(c)) and Six (§ 115(a)(1)(B)) are the same, as are those in Counts Five (§ 875(c)) and Seven (§ 115(a)(1)(B)). The offense of making threatening interstate communications, in violation of 18 U.S.C. § 875(c), as charged in Counts One through Five, and the offense of threatening to assault FBI agents, in violation of 18 U.S.C. § 115(a)(1)(B), as charged in Counts Six and Seven, require proof of a unique element that the other offense does not.  *See Iannelli*, 420 U.S. at 785, n.17.  By example, to convict under § 115(a)(1)(B), the Government must prove that a defendant made a threat against a federal law enforcement officer, United States official or judge, which is not an element of making threatening interstate communications under § 875(c), thereby satisfying the *Blockburger* test.  Accordingly, the Indictment does not present any multiplicity concerns.

### C.  Defendant's Vague as Applied Argument Fails.

Defendant next contends that the Indictment should be dismissed because the threat and obstruction statutes he is charged with violating are void for vagueness as applied to his speech

and activity on Twitter. (Docket Nos. 45, ¶¶ 4-5; 47 at 14-18, 22-23). Defendant's vague as applied argument is specifically directed to Counts Two, Three, Five, Seven and Eight of the Indictment. *See* Docket No. 47 at 14, 22 ("Counts 2, 3, 5 and 7 should be dismissed for yet another reason: § 875(c) and § 115(a)(1)(B) are void for vagueness as applied to Mr. Miah's speech in those tweets."); ("This Court should dismiss Count 8 because § 1519 is also void for vagueness as applied to Mr. Miah."). The argument fails as to each challenged count, as Defendant has not sustained his burden to demonstrate that the charged criminal statutes are void for vagueness as applied to his conduct alleged in the Indictment. *See United States v. Taylor*, 232 F. Supp. 3d 741, 754 (W.D. Pa. 2017) ("The party bringing the vagueness challenge bears the burden of demonstrating that the statute is vague as applied to him or her.") (citation omitted).

"[A] criminal statute must give fair warning of the conduct that it makes a crime." *Rogers v. Tennessee*, 532 U.S. 451, 457 (2001) (citation omitted). A criminal statute may be deemed void for vagueness if the challenged statute:

> (1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits; or (2) authorizes or even encourages arbitrary and discriminatory enforcement. The inquiry is undertaken on a case-by-case basis, and a reviewing court must determine whether the statute is vague as-applied to the affected party.

*United States v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009) (internal citations and quotation marks omitted). "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *United States v. Boffa*, 513 F. Supp. 444, 461 (D. Del. 1980) (citing *United States v. Harriss*, 347 U.S. 612, 617 (1954)). "In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." *Id.* (citation omitted).

According to Defendant, the threat statutes are unconstitutionally vague as applied to him

because they fail to given him fair notice that his speech is prohibited, and the Government has applied them to his speech in an arbitrary and novel way. (Docket No. 47 at 15). The Court's review of the Indictment in this case leads it to conclude otherwise.

Section 875(c) criminalizes "transmit[ting] in interstate or foreign commerce any communication containing . . . any threat to injure the person of another," and § 115(a)(1)(B) proscribes "threaten[ing] to assault, kidnap, or murder . . . a Federal law enforcement officer." 18 U.S.C. §§ 875(c), 115(a)(1)(B). In this Court's estimation, the language of the threat statutes "give[s] fair warning of the conduct that it makes a crime", *Rogers*, 532 U.S. at 457, such that Defendant has a reasonable opportunity to understand that the conduct, as charged in the Indictment, would be prohibited by the statutes. *Fullmer*, 584 F.3d at 152. For the reasons already discussed, the Court rejects Defendant's argument, repeated again in this context, that his tweets do not communicate a threat to injure another, but rather are "politically-charged and meaningless statements" "made on a satirical social media page." (Docket No. 47 at 15-16).

Further, Defendant's reliance on materials external to the Indictment, such as a tweet referenced in the Affidavit in Support of the Criminal Complaint stating, "I don't believe in violence. But I do believe in offending people", or Twitter's rules and its alleged failure to notify him of any issues with his tweets, (*see* Docket No. 47 at 17 and n.10), does not advance his vague as applied argument. Although Defendant can contest at trial whether the Government can meet its burden to prove that his tweets constituted threats or true threats, the Court's review is confined to the Indictment at this stage of the proceedings. Having carefully considered same, the Court finds that the prohibitions contained in 18 U.S.C. §§ 875(c) and 115(a)(1)(B) are not vague as applied to Defendant's conduct as charged in the Indictment, and Defendant's motion to dismiss Counts Two, Three, Five and Seven on that ground is denied. *See United States v. Ziobrowski*,

Crim. No. 18-10250-DJC, 2019 WL 3306802, at *3 (D. Mass. July 23, 2019) (rejecting as-applied challenge to § 875(c) in denying motion to dismiss indictment).

Defendant's vague as applied argument similarly fails as to Count Eight, which charges a violation of 18 U.S.C. § 1519. Section 1519 makes it illegal to "knowingly alter[ ], destroy[ ], mutilate[ ], conceal[ ], cover[ ] up, falsif[y], or mak[e] a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C. § 1519. In this case, Defendant is charged with violating § 1519 by "knowingly alter[ing] and delet[ing] Twitter accounts and postings with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation." (Docket No. 33 at 10). As background, the Indictment alleges that on or about on or about October 5, 2020, a review of several of Defendant's known Twitter accounts revealed changes and deletions such as changes to profile pictures, display names, and the location of his account, as well as that numerous tweets had been deleted and one account had been deleted in full. (*Id.*, ¶ 4). Additionally, on or about October 8, 2020, Defendant altered the outward facing profile photograph on one of his Twitter accounts to depict a photograph of the wife of FBI Special Agent A who was investigating him, and the biographical information on the account was altered to include details about the wife's background. (*Id.*, ¶ 5). Further, after posting alleged threatening statements on December 27, 2020 as referenced in ¶ 11 of the Indictment, Defendant deleted the posts a day later. (*Id.*, ¶ 13).

Initially, "the Supreme Court has held that scienter requirements in criminal statutes 'alleviate vagueness concerns,' because a mens rea element makes it less likely that a defendant will be convicted for an action that he or she committed by mistake." *Fullmer*, 584 F.3d at 152

(citing *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007). Accordingly, courts have held that § 1519's scienter requirement prevents it from being vague. *See United States v Moyer*, 674 F.3d 192, 211 (3d Cir. 2012) ("Section 1519's scienter requirement, moreover, eliminates any concerns regarding statutory vagueness."); *United States v. Norman*, 87 F. Supp. 3d 737, 746 (E.D. Pa. Feb. 23, 2015) (citing *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 & n. 14 (1982) (noting that "the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed," and collecting cases)). For this reason alone, Defendant's vague as applied challenge to § 1519 fails.

Moving on, however, Defendant contends that as a person of ordinary intelligence, he did not understand that deleting or modifying his Twitter accounts during the FBI's investigation was illegal. (Docket No. 47 at 22-23). In support, Defendant points out that by creating a Twitter account, users consent to Twitter copying and using their information, including public and protected posts. (*Id.* at 22). According to Defendant, an individual who alters his account or deletes tweets therefore knows that his data is never truly gone. (*Id.*). As such, an ordinary person would not know that the law prohibits deleting a tweet after posting it in a public space, even during an ongoing investigation. (*Id.* at 23). Additionally, Defendant submits that a person of ordinary intelligence would not know that altering or deleting his Twitter content could impede the investigation because the FBI already had seen the content and, altering or deleting it might appease the agents' complaints about its offensive content. (*Id.*).

Putting aside Defendant's reliance on unsupported Twitter policy and his failure to cite any legal authority in support of these contentions, it is illogical to conclude that a person of ordinary intelligence would not know that altering or deleting information that was the focus of an FBI

investigation, even if agents already had seen it, is prohibited. *See United States v. Giampietro*, 475 F. Supp. 3d 779, 791-92 (M.D. Tenn. 2020) (rejecting argument that § 1519 is void for vagueness as applied because a person of ordinary intelligence would not understand that manner in which the defendant used a secret chat feature in online application could lead to criminal liability, and finding that a reasonable person would know that their conduct was at risk when they activated a feature with the intent to hide or destroy material relating to their alleged effort to provide material support or resources to a foreign terrorist group). This is particularly true where, as here, the FBI had attempted to interview the individual about an alleged online threat, advised of its knowledge of his social media accounts, subsequently executed a federal search warrant at his residence, seized his electronic devices, and interviewed him at that time, during which he admitted that he altered his Twitter account with information pertaining to an investigating agent's wife. (Docket No. 33, ¶¶ 3, 6). In that scenario, it strains credulity that a person of ordinary intelligence would not understand that altering or deleting information associated with his social media accounts could lead to criminal liability. In sum, the Court concludes that § 1519 is not vague as applied to Defendant's conduct as charged in the Indictment, and Defendant's motion to dismiss Count Eight on that ground is denied.

**D. Dismissal of Count Eight is Not Otherwise Warranted.**

Defendant advances several additional arguments for dismissal of Count Eight, none of which warrant the relief he seeks. To repeat, Count Eight charges that Defendant knowingly altered and deleted Twitter accounts and postings with the intent to impede, obstruct, and influence the FBI's investigation, in violation of 18 U.S.C. § 1519. (Docket No. 33 at 10). And, to reiterate, the Court concludes that Count Eight sufficiently alleges a violation of § 1519. *See supra* at 10-11.

Nonetheless, Defendant argues that Count Eight fails to state an offense because his Twitter activity is outside the scope or intent of 18 U.S.C. § 1519. (Docket Nos. 45, ¶ 5, 47 at 19-21). Initially, Defendant argues that the purpose of § 1519 was to prosecute corporate agents for destroying financial documents to conceal their fraud, not to police social media users. (Docket Nos. 47 at 18-19; 57 at 3). In arguing that § 1519 does not apply to his Twitter alterations and deletions, Defendant again relies on Twitter policies, which he says reflect the "common knowledge" that what goes on the Internet is at risk of staying there, and therefore he would have expected that his tweets were stored on Twitter's server and could be made available to law enforcement upon request. (Docket No. 47 at 19-21). As a result, Defendant could not ensure the type of permanent deletion contemplated by § 1519, and that provision should not apply to his Twitter activity here. (*Id.* at 21).

Defendant's scope or intent argument fails for several reasons. Defendant cites *Yates v. United States*, 574 U.S. 528 (2015), as support for his contention that the Government's prosecution of his Twitter activity does not comport with the meaning and purpose of § 1519, which he contends is to prosecute corporate agents for destroying financial documents or to conceal their fraud. (Docket Nos. 47 at 18-19; 57 at 3). In *Yates*, the Supreme Court observed that Congress enacted § 1519 as part of the Sarbanes-Oxley Act of 2002, which "was intended to prohibit, in particular, corporate document-shredding to hide evidence of financial wrongdoing." 574 U.S. at 536. The *Yates* Court determined that "tangible object" in § 1519 "cover[s] only objects one can use to record or preserve information, not all objects in the physical world," and thus held that disposal of an undersized fish, after a law enforcement officer had ordered the fisherman to keep the fish segregated until the vessel returned to port, did not involve a tangible object for purposes of the statute. *Id.* at 531, 536. To be clear, *Yates* did not hold that § 1519 is

inapplicable outside of the corporate / financial context. *See e.g., United States v. Gonzalez*, 906 F.3d 784, 794 (9th Cir. 2018) ("[T]he text of § 1519 covers '*any* record, document, or tangible object,' and the statute's intent clause encompasses the intent to impede, obstruct, or influence the investigation of '*any* matter within the jurisdiction of *any* department or agency of the United States.' If Congress had intended to limit the statute's scope to records or documents of a financial nature, it could not have chosen language more ill-suited to convey that narrow focus. Nor is there anything in the legislative history of § 1519 that supports the defendants' restrictive reading of the statute. Indeed, the relevant Senate report indicates that the drafters intended the statute to have a decidedly more expansive reach." (citing S. Rep. No. 107-146, at 14 (2002) ("Section 1519 is meant to apply broadly to any acts to destroy or fabricate physical evidence so long as they are done with the intent to obstruct, impede or influence the investigation or proper administration of any matter, and such matter is within the jurisdiction of an agency of the United States ....") (emphasis in original)). Accordingly, the Court rejects Defendant's narrow interpretation of the scope of § 1519.

Additionally, and as already discussed, the Court's review here is confined to the Indictment, thus the Court cannot consider Twitter's policies referenced by Defendant in ruling on his Motion to Dismiss. *See Bergin*, 650 F.3d at 268 (on a motion to dismiss the indictment, the court's review is confined to the facts alleged in the indictment). Moreover, § 1519 has been applied in cases involving the alteration or deletion of material that is available on the Internet through social media accounts. *See e.g., Giampietro*, 475 F. Supp. 3d at 783, 794 (denying motion to dismiss indictment in case charging violation of § 1519 for allegedly altering and destroying "social media accounts, text messages, chat conversations, and other electronic communications"). In this Court's estimation, such application is consistent with the Third Circuit Court of Appeals'

interpretation of "record" in § 1519 as "anything preserving information and constituting a piece of evidence about past events." *Moyer*, 674 F.3d at 205 (quoting *Oxford English Dictionary* (3d ed. 2009) (online version Dec. 2011)). Postings that are available on the Internet through an individual's Twitter and other social media accounts certainly are something which can preserve information and serve as evidence about past events.

Next, Defendant contends that application of § 1519 should not be extended to alteration of his *public* Twitter account and tweets. (Docket No. 57 at 2-5). As alleged in the Indictment, the Twitter accounts and posting are the "records" for purposes of § 1519 that Defendant allegedly knowingly altered and deleted with the intent to impede or obstruct the FBI's investigation. (Docket No. 33 at 10). Section 1519 does not criminalize the alteration or destruction of ***a particular type*** of record; rather, the statute specifically proscribes the conduct as to "***any record***." 18 U.S.C. § 1519 (emphasis added). This reading of the statute comports with the Third Circuit's interpretation of record as "anything preserving information and constituting a piece of evidence about past events." *Moyer*, 674 F.3d at 205. For these reasons, the Court does not find Defendant's public argument to be persuasive.

Finally, Defendant maintains that Count Eight must be dismissed because it is unclear "for *which* conduct the grand jury indicted" him – the alleged alteration of his public Twitter account or the alleged deletion of private content – thus, the Government should be required to seek an Indictment based on "specific and distinct" conduct. (Docket No. 57 at 1, 5) (emphasis in original). As discussed, the Court finds that Count Eight is sufficient as pled. Contrary to Defendant's position, in addition to the allegations contained in Count Eight concerning his alleged violation of 18 U.S.C. § 1519 from on or about October 5, 2020 to and including January 1, 2021 for knowingly altering and deleting Twitter accounts and postings with the intent to impede and

obstruct the FBI's investigation, the Indictment provides additional information in the General Allegations section pertaining to Defendant's alleged alterations and deletions of his tweets and Twitter accounts. (*See* Docket No. 33, ¶¶ 4, 5, 13). In *Moyer*, the Third Circuit Court of Appeals found a § 1519 count sufficiently pled, observing as follows:

> Although the government did not identify every omission or inclusion that rendered false the documents identified in the indictment, and thus did not, at the pre-trial stage, weave the information at its command into the warp of a fully integrated trial theory for the benefit of the defendant[ ], the government was not required to do so.

*Moyer*, 674 F.3d at 203 (internal quotation marks and citation omitted). In this Court's estimation, the allegations contained in Count Eight coupled with those in the General Allegations section make it "highly unlikely that [Defendant will] be unfairly surprised with an unfamiliar [alteration or deletion] at trial." *Id.* For this reason, and the others discussed, Defendant's motion to dismiss Count Eight is denied.

## V.    <u>CONCLUSION</u>

For all the reasons stated herein, Defendant's Motion to Dismiss All Counts of the Indictment For Failure to State an Offense (Docket No. 45) is DENIED.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date:  <u>July 1, 2021</u>

cc/ecf:  All counsel of record