IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 21-CR-00110 |
| | ) | Judge W. Scott Hardy |
| | ) | |
| KHALED MIAH | ) | |

## GOVERNMENT'S OMNIBUS MOTION IN LIMINE

AND NOW, comes the United States of America, by its attorneys, Stephen R. Kaufman, Acting United States Attorney for the Western District of Pennsylvania, and Jessica Lieber Smolar and Nicole Ann Stockey, Assistant United States Attorneys for said District, and Dmitry Slavin, Trial Attorney, National Security Division, and hereby set forth the following in support of the Government's *Omnibus Motion in Limine*.

A jury trial is scheduled to begin in the above-captioned case on December 7, 2021. The Government has prepared this *Omnibus Motion in Limine* to address the following procedural and/or evidentiary issues that may arise during trial. A proposed order is attached.

## I.   AUTHORIZATION TO RECALL WITNESSES TO PRESENT CHRONOLOGICAL TESTIMONY

The prosecution hereby seeks authorization pursuant to Federal Rule of Evidence 611(a) to recall certain law enforcement officers during the prosecution's case-in-chief to allow for the chronological presentation of evidence. The chronological presentation of evidence will make it easier for the jurors to understand the evidence and will facilitate the logical questioning of witnesses by the parties. Presenting the evidence in this manner also will be the most efficient and expeditious way to conduct the government's case-in-chief.

Federal Rule of Evidence 611(a) provides, "[t]he court should exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make those

procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."

The trial in the case will involve the presentation of evidence that occurred in 2019 through 2021, with certain significant events taking place on different days. The trial will also involve the presentation of evidence derived from multiple different sources and in various forms, such as physical and digital evidence obtained during the execution of search warrants, evidence extracted through forensic examination of electronic devices, business records obtained through subpoenas and search warrants, and evidence presented through expert witnesses. At this time, the Government has not cemented its trial order of proof. However, based on past experiences, the Government would like to raise the possibility that certain witnesses may need to be recalled during the trial to allow for the chronological presentation of evidence to allow for a clearer presentation of the facts to the jury. In the absence of authorization to recall certain witnesses, the testimony may be disjointed and much more difficult for the jurors to understand and for the parties to probe, thereby resulting in an inefficient and unwieldy presentation of the Government's evidence.

In the Western District of Pennsylvania, the recalling of witnesses during the prosecution's case-in-chief to allow for the chronological presentation of evidence was approved by United States District Judge Cathy Bissoon in *United States v. Thomas Hopes, et al.*, Crim. Nos. 13-57, 13-58, Doc. No. 465  (W.D. Pa. Sept. 11, 2015); United States District Judge Terrence F. McVerry in *United States v. Curran*, No. 09-CR-325, 2011 WL 3421409 (W.D. Pa. Aug. 4, 2011); and by Senior United States District Judge Donetta W. Ambrose in *United States v. Gary Moorefield, et al.*, No. 10-CR-187, Doc. No. 587 (W.D. Pa. Aug. 30, 2012).

II.     **AUTHORIZATION FOR THE JURY TO USE A NON-NETWORKED COMPUTER DURING DELIBERATIONS TO REVIEW AUDIO COMMUNICATIONS**

The prosecution hereby seeks authorization for the jury to utilize a non-networked, laptop computer to review audio and video recordings that are admitted as substantive evidence during the trial. The laptop would not have internet access and the jury would only be able to use it to review the audio and video recordings. A CD/DVD containing the audio communications and video recordings admitted as substantive evidence during the prosecution's case-in-chief will be offered into evidence by the prosecution or potentially as rebuttal evidence.[1] The files on the CD/DVD will be labeled according to session numbers and will be compatible with the software on the laptop. The files of the audio communications are not compatible with a CD player and though the video evidence could potentially be reviewed on a DVD player with television connection, these also can be reviewed on the same clean, non-networked laptop for efficiency. If the jury is not provided with a laptop to review the recorded audio communications and video recordings, the jury will not be able to fully review the evidence in the absence of repeatedly returning to the courtroom for such a review. Such a process would be unnecessarily cumbersome for all involved and would risk obstructing the jury's full review and understanding of the evidence in light of the natural disinclination to repeatedly ask for all to return to the courtroom. The jury

---

[1] Although the government will offer the CD/DVD into evidence for the jury's use, during the trial, the government will actually play the recorded communications and footage from a hard drive on a laptop computer. The government will use specialized software to play the calls and videos and display related transcripts during trial. Playing the calls and videos as well as displaying the transcripts from the hard drive of the laptop, rather than from a removable CD/DVD, will take less time and will enable the Government's presentation of evidence to move more quickly. The Government, of course, will provide defense counsel with an opportunity to review all the audio and video recordings on the CD/DVD and on the laptop computer prior to trial.

can easily be instructed on the use of the laptop. If necessary, United States District Court personnel can assist in booting the laptop and software for the jury.

In the Western District of Pennsylvania, the jury's use of a laptop computer to listen to audio communications during its deliberations was approved by United States District Judge Cathy Bissoon in *United States v. Thomas Hopes, et al*., Crim. Nos. 13-57, 13-58, Doc. No. 465 (W.D. Pa. Sept. 11, 2015); United States District Judge Terrence F. McVerry in *United States v. Curran*, No. 09-CR-325, 2011 WL 3421409 (W.D. Pa. Aug. 4, 2011); and by Senior United States District Judge Donetta W. Ambrose in *United States v. Gary Moorefield, et al*., No. 10-CR-187, Doc. No. 587 (W.D. Pa. Aug. 30, 2012).

### III.   AUTHORIZATION FOR THE GOVERNMENT TO USE TRANSCRIPTS DURING TRIAL AND FOR THE JURY TO USE TRANSCRIPTS DURING DELIBERATIONS

At trial, the United States intends to introduce audio clips capturing conversations between a confidential human source (CHS) and the defendant into evidence. The Government has prepared written transcripts of these entire recorded conversations and intends to provide transcript excerpts for each of the audio files it intends to introduce as evidence.  The Government has provided copies of these transcripts in their entirety to the defendant and will also provide the excerpts intended for use at trial.  The Government hereby seeks authorization to use the transcripts of the audio communications during the presentation of its case in chief, and if necessary, during cross examination, and for the jury to utilize the transcripts of the recorded audio communications as an aid during its deliberations.

The transcripts of the recorded audio communications will be particularly helpful when the jury reviews the actual corresponding audio recordings. The transcripts will be used as an aid to assist the jurors in listening to the content of the calls. The jury will be properly instructed that the

transcripts of the audio communications should serve merely as listening aids and that the audio of the calls is the actual evidence. The transcripts will be as helpful during deliberations as they will be during trial when presented as evidence, and the members of the jury will benefit from having these aids during deliberations. Accordingly, the United States respectfully requests that the properly instructed jury be allowed to use the transcripts during all phases of the trial, including deliberations, to facilitate an accurate, timely, and effective understanding of the speakers and content of the audio communications.

The Third Circuit in *United States v. Pecora*, 798 F.2d 614, 631 (3d Cir. 1986), rejected the defendants' claim that the district court's decision to allow the jurors to use the transcript of a recorded conversation during their deliberations prejudiced them. *Pecora* was relied upon by two panels of the Third Circuit to affirm district court decisions authorizing juries to utilize transcripts of audio recordings as listening aids during deliberations. In *United States v. Houser*, 413 F. App'x 476, 478-79 (3d Cir. 2011) (unpublished), the court held that there is no abuse of discretion when a district court allows a properly instructed jury to utilize a transcript of an audio recording during its deliberations. In *United States v. O'Grady*, 280 F. App'x 124, 131 (3d Cir. 2008) (unpublished), the court similarly held that the district court properly exercised its discretion to allow the jury to use transcripts of audio recordings during its deliberations.  Significantly, in *O'Grady*, the district court had provided the jury with the transcripts but had not provided it with the capacity to review the actual audio recordings during deliberations in the jury room. *Id.* The circuit court explained that no error occurred because the jury had been properly instructed to use the transcripts as a listening aid. *Id.*

Several other circuit courts have held that allowing juries to use transcripts of audio recordings during deliberations is not an abuse of discretion. For example, the First Circuit in

*United States v. Morales-Madera*, 352 F.3d 1, 7 (1st Cir. 2003), noted that "[w]hen an audio recording is in English, the common practice is to play the recording, make a transcript available, mark the transcript as an exhibit, and use it as an aid. Our court, and many others, have approved such use of transcripts as aids to the jury, provided the court makes clear to the jury that the tape rather than the transcript constitutes the best evidence." The First Circuit then held that "[i]n ordinary circumstances, the district court does not abuse its discretion in allowing the jury to use the transcripts during deliberations." *Id.* The First Circuit had previously explained that "[w]e recognize that double exposure to transcripts of crucial evidence, i.e., during the trial and in the jury room, can be prejudicial to a defendant. Relevant evidence, however, always prejudices the party against whom it is offered. It can hardly be argued that accurate transcripts of properly authenticated and relevant wiretap recordings are not relevant evidence." *United States v. Rengifo*, 789 F.2d 975, 982 (1st Cir. 1986). *See also United States v. Neighbors*, 590 F.3d 485, 495 (7th Cir. 2009) (holding that "the district court did not abuse its discretion when it allowed the jury to take the transcript books back to the deliberation room"); *United States v. Gay*, 85 F. App'x 794, 796 (2d Cir. 2004) (holding that "the district court's admission of the transcript for a limited, non-evidentiary purpose was not an abuse of discretion.").

In the Western District of Pennsylvania, the jury's use of transcripts of recorded audio communications, at trial and during its deliberations, was approved by United States District Judge Cathy Bissoon in *United States v. Thomas Hopes, et al.*, Crim. Nos. 13-57, 13-58, Doc. No. 465 (W.D. Pa. Sept. 11, 2015); United States District Judge Terrence F. McVerry in *United States v. Curran*, No. 09-CR-325, 2011 WL 3421409 (W.D. Pa. Aug. 4, 2011); and by Senior United States District Judge Donetta W. Ambrose in *United States v. Gary Moorefield, et al.*, No. 10-CR-187, Doc. No. 587 (W.D. Pa. Aug. 30, 2012).

6

As noted above, the United States Court of Appeals for the Third Circuit has approved the use of transcripts at trial, and the Third Circuit Criminal Model Jury Instructions provide further guidance and support for this practice.  The United States hereby requests that the Court utilize the following Third Circuit Model Criminal Jury Instructions:

2.07 Audio/Video Recordings - Transcripts

You are about to hear audio recordings that were received in evidence, and you will be given written transcripts of the recordings.

Keep in mind that the transcripts are not evidence. They are being given to you only as a guide to help you follow what was being said. The recordings themselves are the evidence. If you notice any differences between what you hear in the recordings and what you read in the transcripts, you must rely on what you hear, not what you read. And if you cannot hear or understand certain parts of the recordings, you must ignore the transcripts as far as those parts are concerned. Third Circuit Model Criminal Jury Instruction 2.07.

4.06 Audio/Video Recordings – Transcripts

You have heard audio recordings that were received in evidence, and you were given written transcripts of the recordings.

Keep in mind that the transcripts are not evidence. They were given to you only as a guide to help you follow what was being said. The recordings themselves are the evidence. If you noticed any differences between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read. And if you could not hear or understand certain parts of the recordings you must ignore the transcripts as far as those parts are concerned. Third Circuit Model Criminal Jury Instruction 4.06.

7

IV.     **MOTION REGARDING THE USE OF FBI 302s BY THE DEFENSE**

The Government asks the Court to find that interview summaries prepared by FBI agents (known as "FBI 302s") are not statements of the person interviewed under the Jencks Act, and to preclude the defense from introducing the contents of the FBI 302s to impeach witnesses during cross examination, publishing the contents of the 302s to the jury, or otherwise suggesting to the jury that the 302s are statements of the witnesses who did not write them or adopt them.

A.      **FBI 302s Are Not Statements of the Witness under the Jencks Act**

In order to provide for full and fair cross-examination, the Jencks Act requires that after a witness for the United States testifies on direct examination, the government must provide the defense with any statements made by the witness that relates to the subject of his or her testimony. 18 U.S.C. § 3500. A statement within the meaning of the Jencks Act is defined as "a written statement made by said witness and signed or otherwise adopted or approved by him;" a recording or transcription that "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously;" or a statement made by a witness to the grand jury.  18 U.S.C. § 3500(e).

In *Palermo v. United States*, the Supreme Court held that because the Jencks Act is meant to restrict the defendant's use of discoverable statements to impeachment, 360 U.S. 343, 349 (1959), "only those statements which could properly be called the witness' own words should be made available to the defense." *Id*. at 352. The Court went on to elaborate that "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions" are "not to be produced." *Id*. at 352-53.

Consistent with *Palermo*, FBI 302s are not discoverable under the Jencks Act because they are not statements of the witness within the meaning of the statute. Unless the witnesses have

reviewed and adopted the FBI 302s -- which was not the practice in this case -- the 302s are not statements of the witness under subsection (e)(1) of the Jencks Act. Moreover, because the 302s are written after interviews are completed and reflect the thought processes and interpretations of the agent, they do not constitute a contemporary and substantially verbatim recital of the witness's statement under subsection (e)(2).

Every circuit court to address the question has held that FBI 302s generally are not discoverable under the Jencks Act. *See e.g., United States v. Price*, 542 F.3d 617, 621 (8th Cir. 2008) (holding that absent evidence that the witnesses "approved or adopted" the FBI 302s, "these documents are not discoverable under . . . the Jencks Act"); *United States v. Jordan*, 316 F.3d 1215, 1252 (11th Cir. 2003) (holding that FBI 302s "are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness"); *United States v. Donato*, 99 F.3d 426, 433 (D.C. Cir. 1996) ("[T]he agent's notes and 302 report . . . are not covered by the Jencks Act."); *United States v. Roseboro*, 87 F.3d 642, 646 (4th Cir. 1996) ("[T]he district court's finding that the FBI 302 Report was not a Jencks Act statement is not clearly erroneous."); *United States v. Farley*, 2 F.3d 645, 654-55 (6th Cir. 1993) (holding that because there was "no proof that the statement was adopted or approved . . . it was not clearly erroneous . . . to deny defendants access to the FBI 302"); *United States v. Williams*, 998 F.2d 258, 269 (5th Cir. 1993) ("We hold that the FBI Forms 302 were not discoverable statements under the Jencks Act."); *United States v. Morris*, 957 F.2d 1391, 1402 (7th Cir. 1992) ("[T]he documents are not statements producible under the Jencks Act because they were neither signed nor adopted . . . and further because they are not a verbatim recital . . . but rather only an agent's summary."); *United States v. Foley*, 871 F.2d 235, 239 (1st Cir. 1989) ("It is plain that the 302s are not substantially verbatim recitals . . . and recorded

contemporaneously."); *United States v. Claiborne*, 765 F.2d 784, 801 (9th Cir. 1985) (because "the summaries represent . . . the agents' selection of certain information . . . the district court properly characterized the summaries as non-Jencks Act material), abrogated on other grounds by *Ross v. Oklahoma*, 487 U.S. 81 (1988).

## B.      <u>Proper Use of FBI 302s at Trial</u>

Although production of the FBI 302s is not required, in this case the Government has provided broad discovery, and will produce the FBI 302s for the Government's trial witnesses.  In this circumstance, the defense should be limited to using those FBI 302s consistent with the law and rules of evidence. In particular, the defense must be precluded from introducing the contents of the 302s to impeach witnesses on the basis of inconsistent statements because the 302s are not the statements of the witnesses themselves. Moreover, defense counsel must be precluded from publishing the content of the 302s to the jury, or otherwise suggesting to the jury that the 302 is a statement of the witness. To allow otherwise would subvert the meaning of the Jencks Act and the Supreme Court's decision in *Palermo* holding that it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." 360 U.S. at 350.

The defense is, of course, free to ask a witness whether he or she made a statement that is reflected in an FBI 302. However, if the defense is not satisfied with the witness's answer, the defense may not publish or introduce the contents of the 302 as a prior inconsistent statement.  *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (holding that "such documents [FBI 302s] have been deemed inadmissible for impeaching witnesses on cross-examination"), abrogated on other grounds by *United States v. Booker*, 543 U.S. 222 (2005); *United States v.*

10

*Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]" it was "properly rejected as a prior inconsistent statement"); *United States v. Hill*, 526 F.2d 1019, 1026 (10th Cir. 1975) (upholding the trial court's decision to "not allow counsel to use the 302 statement to impeach a witness because the witness did not prepare or sign the document and probably never adopted it"). Moreover, the defense may not use the 302 in a way that suggests to the jury that the 302 is a statement of the witness. *See United States v. Marks*, 816 F.2d 1207, 1210-11 (7th Cir. 1987) (holding that where defense counsel read from a 302 during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, the judge was entitled to require the witness be shown the 302 and given the opportunity to adopt or reject it as a statement, although such a practice was no longer required by the federal rules of evidence).

The Government is committed to providing broad and early discovery in this matter, and will produce FBI 302s for its witnesses at trial, although such production is not required under the Jencks Act. In turn, the defense must use those FBI 302s in accordance with the law and rules of evidence, and they should not be permitted to introduce the 302s, publish them to the jury, or otherwise suggest to the jury that the 302s are statements of the witnesses.

## V.     CONCLUSION

For all of the foregoing reasons, the government respectfully requests that the Court grant: (1) the Government's request to recall witnesses to present chronological testimony at trial; (2) the Government's request for the jury to use a non-networked computer during deliberations to review audio communications and video recordings; (3) the Government's request to use transcripts

11

during trial, and for the jury to use transcripts during deliberations; and (4) the Government's request to restrict the Defendant's use of FBI 302s during witnesses' testimony.

Respectfully submitted,

STEPHEN R. KAUFMAN
Acting United States Attorney


*s/ Jessica Lieber Smolar*
JESSICA LIEBER SMOLAR
Assistant United States Attorney
PA ID No. 65406

*s/ Nicole Ann Stockey*
NICOLE ANN STOCKEY
Assistant United States Attorney
PA ID No. 306955

*s/ Dmitriy Slavin*
DMITRY SLAVIN
Trial Attorney
National Security Division
Counterterrorism Section
DC 1017559