IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

KHALED MIAH

Criminal No. 21-110
Judge W. Scott Hardy

### DEFENDANT'S MOTION IN LIMINE REQUESTING SANCTIONS FOR SPOLIATED EVIDENCE

Comes now the defendant and respectfully seeks this Court find that the government's failure to seek preservation of his Twitter account @ServiceFederal/@IslamisEvil amounts to spoliation and impose sanctions in the form of prohibiting the government from entering testimony concerning Mr. Miah's alleged deletions from the account, unsupported by record, and instruct the jury that they may draw a permissive inference that the government failed to preserve exculpatory evidence.

### RELEVANT BACKGROUND

Mr. Miah is charged with five counts of threats to injure FBI agents in violation of 18 U.S.C. § 875(c), and two counts of threats to injure FBI agents with the intent of impeding their investigation in violation of 18 U.S.C. § 115(a)(1)(B), arising from statements allegedly made by Mr. Miah on his @ServiceFederal account between December 27, 2020, and December 31, 2020. He is also charged with one count of obstruction of justice in violation of 18 U.S.C. § 1519 for deleting tweets from his Twitter accounts between October 5, 2020 and January 1, 2021. Relevant deletions allegedly include material from Mr. Miah's @ServiceFederal account.

Prior to the alleged criminal conduct, the FBI had been investigating Mr. Miah for his online activity since approximately 2017. In August 2020, the FBI sent a preservation letter to

Twitter for three of Mr. Miah's accounts. In response, Twitter agreed to preserve the information for 90 days. (Exhibit A).

In September 2020, agents attempted to interview Mr. Miah concerning their investigation. Mr. Miah refused to consent to an interview and thereafter used publicly available online information to taunt and insult the FBI agents and one of the agent's wives on Twitter. In response, the FBI obtained search warrants for Mr. Miah's electronic devices and social media accounts for potential violations of 18 U.S.C. § 2261 (stalking). In conjunction with the warrants, the FBI sent preservation letters to Twitter on but the government issued a series of litigation hold/preservation request letters to Twitter at that time because Twitter does not maintain records beyond 30 days for deactivated accounts. The preservation letters sent to Twitter only acted retroactively to activity that had occurred in the past, they did not extend to any new Twitter activity. (Exhibit A)

On November 24, 2020, a grand jury subpoena was issued to Twitter directing that Twitter produce all material on the @BruhKhaled account by no later than December 29, 2020. (Exhibit B). The government also sent a preservation request on November 23, 2020, for @54marienstrasse and @BruhKhaled. On or about, December 23, 2020, Twitter produced electronic records for all of his Twitter accounts including the newly created @ServiceFederal account.

Between December 29, 2020, through December 31, 2020, Mr. Miah made the alleged threats. These were allegedly preserved by FBI agents using the screenshot feature on their personal electronic devices.[1] Mr. Miah was arrested on January 6, 2021. On January 20, 2021, Mr. Miah's prior counsel, Adrian Roe, emailed the government to enquire about the preservation of Mr. Miah's Twitter accounts. (Exhibit C).  Government counsel responded and asked Mr. Roe which accounts he wanted to ensure were preserved.  Presumably Mr. Roe had not yet received

---

[1] The defense has not been given an opportunity to authenticate these screenshots.

discovery and consulted with Mr. Miah to come up with a list of accounts. The government already knew all of Mr. Miah's accounts but waited for Mr. Roe's response on January 31, 2021, to then respond to him on February 2, 2021, stating that the @ServiceFederal account was last preserved on December 23, 2020. The defense cannot find evidence of this, but even so, a preservation on December 23, 2020, would not have contained any of the tweets or surrounding posts for the charged period of the alleged threats. The next day, on February 3, 2021, the government issued a search warrant to Twitter for @ServiceFederal, @54marienstrasse, @BruhKhaled, @ServiceFederal/@IslamisEvil. (Exhibit D). That was thirty-five days after Mr. Miah posted the tweets online and at least 30 days after Mr. Miah had deactivated his account. Because Twitter does not keep records for deactivated accounts beyond 30 days, Mr. Miah's tweets were not preserved, and an unknown number are completely lost.

*Mr. Miah's December tweets.* Between December 24, 2020, and December 31, 2020, Mr. Miah posted several messages on his public @ServiceFederal Twitter account acknowledging the agents who had been investigating him. He taunted them and their political views; he criticized the Nashville FBI Division and suggested that the FBI swamp be drained; and he said "wish me a goddamn merry Christmas you goddam Jeep driving communists." He posted pro-Trump messages. And in between his many sarcastic, critical, and satiric tweets, he also made the statements charged in the Indictment. The FBI agents took screenshots of the tweets containing the statements charged in the Indictment. But given the volume of tweets and Mr. Miah's near-constant social media activity, there are almost certainly many other posts, comments, post-reactions, and messages that were not captured in the screenshots. Some of the messages were liked by other users. Some messages were cut off. It is impossible to know how many tweets Mr.

Miah posted then deleted or what they said. At some point Mr. Miah changed the name of the account to @IslamisEvil2021, but we also do not know when that change occurred.

## ARGUMENT

### I.   THE GOVERNMENT SPOLIATED CRITICAL EVIDENCE IN THIS CASE

To establish a due process violation based on law enforcement's failure to preserve potentially exculpatory evidence, a defendant must show: (1) that the potentially exculpatory nature of the evidence was apparent at the time of destruction or loss; (2) the lack of "comparable evidence by other reasonably available means," *California v. Trombetta*, 467 U.S. 479, 489 (1984); and (3) that the government acted in bad faith. *See, e.g., United States v. Jackman,* 72 F. App'x 862, 866 (3d Cir. 2003) (citing *United States v. Femia,* 9 F.3d 990, 993-94 (1st Cir. 1993)).

In the context of electronic records preservation, criminal courts have looked to civil cases involving spoliation to determine whether the government had the duty to preserve the electronic evidence. *See United States v. Suarez*, No. 09-932 (JLL), 2010 U.S. Dist. LEXIS 112097, at *25 (D.N.J. Oct. 19, 2010). Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001)). Under Third Circuit law, a party spoliates evidence when "[1] the evidence was in the party's control; [2] the evidence is relevant to the claims or defenses in the case; [3] there has been actual suppression or withholding of evidence; and [4], the duty to preserve the evidence was reasonably foreseeable to the party."[2] *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (*citing Brewer v.*

---

[2] Recognizing the increasing importance of electronic evidence and the gravity of its loss, the Supreme Court approved Federal Rule of Civil Procedure 37 in 2015 to provide a uniform standard for spoliation sanctions for the loss of electronically stored information (ESI). Rule 37(e) sets out the standard for determining whether spoliation of ESI has occurred and provides that spoliation occurs where ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." The

*Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)). These requirements are similar to those set out by the Supreme Court in *Youngblood* and *Trombetta*.

When a court determines that a party spoliated evidence, it has the authority to create an appropriate sanction to remedy the damage to the prejudiced party. *MOSAID Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004). Potential sanctions for spoliation include: dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; or an adverse inference, also known as the spoliation inference, which serves to remedy destruction of evidence based on "the common sense observation that when a party destroys evidence that is relevant to a claim or defense in a case, the party did so out of the well-founded fear that the contents would harm him." *Id.* at 336; *see also Schmid v. Milwaukee Elec. Tool Corp*, 13 F.3d 76, 78 (3d Cir. 1994) (citing *Nation-wide Check Corp. v. Forest Hills Distribs., Inc*., 692 F.2d 214, 218 (1st Cir. 1982) (Breyer, J.)). "The admissibility of spoliation evidence and the propriety of the spoliation inference is well established in most jurisdictions." *Bistrian v. Levi*, 448 F. Supp. 3d 454, 464 (E.D. Pa. 2020).

### A. The government had a duty to preserve Mr. Miah's Twitter posts and account information because its potential exculpatory value was apparent.

The government had a duty to preserve Mr. Miah's @ServiceFederal Twitter activity because it was the only party with knowledge that his Twitter activity would be the subject of an indictment, it had previously issued preservation letters to Twitter for several of Mr. Miah's other

---

Advisory Committee's notes describe the elements of spoliation of ESI as: (1) the spoliating party was under a duty to preserve when the loss occurred, (2) the lost ESI was within the scope of the duty to preserve, (3) "the information was lost because the party failed to take reasonable steps to preserve" it, and (4) because ESI "often exists in multiple locations," spoliation occurs only where the information is truly lost and not recoverable elsewhere. Fed. R. Civ. P. 37(e) Advisory Committee's note to 2015 amendment. *See also Bistrian v. Levi*, 448 F. Supp. 3d 454, 465 (E.D. Pa. 2020).

Twitter and social media accounts, and it knew that Mr. Miah's surrounding Twitter activity provided context to the alleged tweets. To assess whether a duty to preserve evidence exists, courts may consider: the conduct, event or information that may trigger a preservation obligation, to whom the preservation duty may extend, and the scope of the preservation obligation.

In the course of the FBI's investigation of Mr. Miah, the government secured several letters notifying Twitter and other social media platforms that Mr. Miah's online activity should be preserved for potential future litigation. Those letters also expressly directed Twitter, and other platforms, *not* to notify Mr. Miah of their preservation request. Once a litigation hold is placed on social media data it is the responsibility of the person(s) with legal or practical control over that information to preserve it appropriately. *See Golden Trade, S.r.L. v. Lee Apparel Co*., 143 F.R.D. 514, 525 (S.D.N.Y. 1992) (observing that courts have "interpreted Rule 34 [of the Federal Rules of Civil Procedure] to require production if the party has the practical ability to obtain the documents from another, irrespective of his legal entitlement to the documents.").

The government had control of Mr. Miah's Twitter activity because it alone had the knowledge it was seeking an indictment on the basis of the @ServiceFederal account, it had previously issued secret preservation letters and subpoenas to Twitter for Mr. Miah's other accounts, and it had the power to compel Twitter to preserve Mr. Miah's activity. Mr. Miah, on the other hand, did not know that his Twitter account was the subject of a federal criminal indictment when he deleted his tweets or deactivated his account (as social media users are entitled to do). After Mr. Miah's arrest on January 6, 2021, the government represented that it would produce discovery, including Twitter subpoena returns. At that time, neither Mr. Miah nor his counsel had reason to believe he should not trust the government's representations or that he should independently request Twitter preserve his accounts and posts. The government made late

discovery productions of the evidence in this case; their first production came in April 2021. Thereafter, counsel made further discovery requests seeking the Twitter returns for Mr. Miah's activity between December 24, 2020, and January 6, 2021. In this process, the defense learned that the government had failed to issue a preservation letter for the central Twitter account in this case and that every tweet, every "like", every retweet, every comment, every timestamp, was gone. By the time the government produced discovery to the defense, it was well past the 30 days Twitter keeps records for deactivated accounts. Mr. Miah had no other avenues to obtain comparable evidence. *Youngblood*, 488 U.S. at 58; *see also United States v. Elliott*, 83 F. Supp. 2d 637, 643-44 (E.D. Va. 1999) ("[T]here is no reasonably available alternative means of ascertaining the chemical contents of the residue which was observed in some of the [destroyed] glassware.")

### B. Mr. Miah's Twitter posts and account from late 2020 are within the scope of the government's duty to preserve.

The Twitter account the government failed to preserve is the account on which all eight Counts of the Indictment were posted—it is more than relevant evidence, it is critical evidence to Mr. Miah's defense that in context, his statements were not true threats but were instead hyperbolic, political, and satirical. "[A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217–18 (S.D.N.Y 2003).

Seven of Mr. Miah's eight counts charge him with making true threats. To determine whether speech is a true threat, the fact finder asks whether an ordinary, reasonable recipient familiar with the context of the communication would interpret the speech as a threat of injury. This includes considering the surrounding conversation and the reactions of those who heard or read the statement. *United States v. Turner*, 720 F.3d 411, 42, n.4 (2d Cir. 2013); *United States v. Hunt*, Crim. Action No. 21-CR-86 (PKC) (E.D.N.Y. Apr. 28, 2021). Mr. Miah's other statements

and activity on this @ServiceFederal account, as well as the reactions and comments of other users, provide the most relevant and contemporaneous context evidence for his alleged threats.

The government was well aware of its duty to preserve Mr. Miah's Twitter activity because it issued preservation requests for many of his other social media accounts. But for the account on which the government's entire Indictment is based, the government failed to issue a preservation order or search warrant until after 30 days had passed and Twitter no longer maintained records.

## II.   The appropriate sanctions are for the Court to give an adverse inference instruction and to prevent the FBI agents from testifying about the lost Twitter account information.

In *United States v. Suarez,* the court consulted the more thoroughly developed civil case law on the application of adverse inference instructions for the spoliation of evidence because of the relatively little criminal case law in the Third Circuit on the subject. 2010 U.S. Dist. LEXIS 112097, at *25 (citing *United States v. Bunty*, 617 F. Supp. 2d 359 (E.D. Pa. 2008) (using the civil standard to select a spoliation sanction in a criminal case)). As discussed above, once the Court finds that the government failed to preserve evidence crucial to their charges and to Mr. Miah's defense, it must decide the appropriate sanctions. *See Bull*, 665 F.3d at 74 n.5. In determining the appropriate sanctions for spoliation, courts consider the following factors: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *Bull*, 665 F.3d at 74 (*quoting Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)). Potential sanctions include: "dismissal of a claim or the entry of judgment in favor of a prejudiced party; the suppression of evidence; and an adverse evidentiary inference, such as the 'spoliation inference' . . ." *AMG Nat'l Trust Bank v. Ries*, 2011

8

U.S. Dist. LEXIS 79361, 2011 WL 3099629, at *4 (E.D. Pa. Jul. 21, 2011) (*citing Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 110-11 (E.D. Pa. 2005)). The ultimate sanction decision is left to the trial court's discretion. *Id*.

**A.   The high degree of government fault, likely bad faith, and significant prejudice to Mr. Miah's defense warrant appropriate sanctions.**

As of January 20, 2021, prior defense counsel, Adrian Roe, had not yet received discovery from the government and requested that the government confirm Mr. Miah's Twitter accounts had been preserved. Government counsel responded asking Mr. Roe which accounts he was referring to and that if he provided a list they would confirm that the accounts were preserved. But on February 2, 2021, government counsel emailed Mr. Roe stating, "At your request, below is a list of the accounts that you listed in your email and their dates of preservation by the FBI: 12/23/2020: @ServiceFederal (later altered to @IsalmIsEvil2021)." The next day the government was forced to serve a search warrant on Twitter for the account, but it was too late.

Destruction of evidence in violation of established rules and policy does not, alone, warrant a finding of bad faith. *United States v. Ramos*, 27 F.3d 65, 72 (3d Cir. 1994). Bad faith instead turns on "the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Griffin v. Spratt*, 969 F.2d 16, 20 (3d Cir. 1992) (quoting *Arizona v. Youngblood*, 488 U.S. 51, n.* (1988)); *United States v. Henry*, 842 F. App'x 809, 814-15 (3d Cir. 2021). Here, the government knew that the circumstances surrounding the alleged threats tended to lessen their seriousness. As the government has stated numerous times in this case, the threat counts are all about context. At a minimum, the government was grossly negligent or reckless in failing to preserve the Twitter account on which the charges in this case are based. The prejudicial effect of this failure cannot be ignored. Mr. Miah is now without essential evidence of the context of his alleged threats—the context that could show his many satirical posts, that others liked his posts,

and what other users' reactions were to the posts. All of this information is what creates the context to find whether Mr. Miah did or did not make true threats against the agents. Thus, while the culpability of the government at worst falls within the realm of recklessness, the prejudice to Mr. Miah is clear.

Further, this Court should find there was "actual suppression or withholding" of Mr. Miah's @ServiceFederal Twitter account by the government under the flexible approach set forth in *MOSAID Technologies Inc. v. Samsung Electronics Co*., 348 F. Supp. 2d 332 (D.N.J. 2004); *see also Suarez*, 2010 U.S. Dist. LEXIS 112097, at *25 (finding that level of gross negligence and prejudice to the defendant warranted sanctions, without a showing of bad faith). Given the high degree of government fault and resulting prejudice to Mr. Miah, these factors weigh heavily in favor of sanctions.

**B. The Court should prohibit the agents from testifying about Mr. Miah's unpreserved Twitter account activity and issue an adverse inference.**

In view of the above failures to preserve Mr. Miah's Twitter account, despite counsel's request, the defense respectfully submits that the Court should take the following actions. First, Court should prohibit the government from offering testifying concerning any alleged deletion by Mr. Miah, of material on his Twitter account, that is not supported by a preserved record. about any of Mr. Miah's alleged deletions for any account which they did not properly preserve. Permitting conviction in this case solely on the basis of the agent's testimony rather than supporting records rewards the government rather than sanctioning them for their failure to preserve the account. Indeed, without the preserved account, Mr. Miah is not in a position to challenge the testimony of when and under what circumstances tweets were deleted. Instead, all we will have is the government's word. This situation exists because of the government's failure to seek preservation of the accounts when it was clearly in their power to do so.

Second, the Court should give an adverse inference instruction to the jury regarding the missing tweets and Twitter account activity. The Court has discretion to apply alternative sanctions. *See United States v. Jackson*, 649 F.2d 967, 972 n.6 (3d Cir. 1981). The defense requests the Court give an adverse inference instruction regarding the failure to preserve the Twitter account as a whole, permitting the jury to presume that the lost evidence is both relevant and favorable to Mr. Miah. This instruction is the least severe sanction for a failure to preserve relevant evidence and should be awarded when the culpable parties actions do not rise to the level of bad faith. *See Suarez* citing *Pension Comm. v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 470-71 (S.D.N.Y. 2010). In this case, like Suarez, the government had a clear duty to preserve the Twitter accounts and failed to do so. The government is able to maintain its version of the case because it had preserved the statements in question. Mr. Miah, however is extremely prejudiced because he has lost the ability to show the context of his statements to show that they were not true threats. In such a situation an adverse inference is appropriate.

### Conclusion

For the reasons set forth above, the defense respectfully requests that this Court find the government suppressed and spoliated evidence and requests that this Court limit the testimony of any FBI agents on the contents of the @ServiceFederal Twitter account and give a mandatory adverse inference instruction to the jury.

Respectfully submitted this 25th day of October, 2021.

By: /s/ *Charles Swift*
Charles D. Swift,
Catherine McDonald
Allie Hallmark
Pro Hac Attorneys for Khaled Miah
100 N. Central Expy, Ste 1010
Richardson, TX 75080