IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:21-CR-00110 |
| | ) | Hon. W. Scott Hardy |
| KHALED MIAH | ) | |

**DEFENDANT'S REPLY TO GOVERNMENT RESPONSE TO MOTION IN LIMINE
REQUESTING SPOLIATION SANCTION**

In its Response to Mr. Miah's Motion in Limine (Doc. 151), the government underplays its selective preservation of Mr. Miah's online activity while claiming that it "preserved as much of the accounts as it could via screenshot" to preserve the tweets for which it eventually charged him. Doc. 164 at 5. This claim is false and significant context for the tweets is now irretrievable. The government also misunderstands the law of spoliation and is mistaken in claiming that it had no duty to preserve evidence in a prosecution only it knew it intended to bring. Lastly, while the government focuses on the obstruction charge in count 8, Mr. Miah seeks relief for the government's spoliation only as it relates to the threat counts (Counts 1-7).

**A. The government failed to preserve potentially exculpatory evidence for crucial dates.**

The government both denies that it has any duty to preserve evidence of Mr. Miah's Twitter activity and then details its efforts to preserve all of his Twitter activity, for six accounts. But it convolutes the timeline and ignores that it never issued a preservation request for the week of the charged tweets. To explain this critical gap, the government makes the disingenuous argument that issuing repeated preservation requests would be an end-run against wiretap laws. The government spent hundreds of thousands of dollars surveilling Mr. Miah; it was investigating him for two years for a public YouTube comment he made in 2019; it issued three preservation requests for six Twitter accounts; agents raided his home months prior to arresting him and seized all of his electronic devices; and the government had multiple informants embedded into his personal life.

1

The government was monitoring Mr. Miah as closely as it could, but it is now asking the Court to believe that it became wiretap-shy when it came to preserving the Twitter activity for the only week that it alleges he made criminal statements. The government had a duty to preserve those tweets; it was preserving his tweets up until the week of the alleged threats, and then it inexplicably stopped. Only the government knew it would charge Mr. Miah's public statements as federal crimes.

> **B. The government incorrectly states it did not have "control" of the Twitter content and excuses its failures as discipline.**

After the government's claim that it had no duty to preserve, it argues that it did not have "control" of Mr. Miah's Twitter activity for the purposes of spoliation, without citing any cases to support this claim. The test for "control" is "not limited to whether the party has a legal right to those documents but rather that there is 'access to the documents' and 'ability to obtain the documents.'" *New York v. Amtrak*, 233 F.R.D. 259, 268 (N.D.N.Y. 2006). "If the party from whom production is sought does not actually have the document in hand, courts look to whether the party has control of it, construing the word 'control' broadly." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-04394, 2016 U.S. Dist. LEXIS 133564, at *17 (S.D.N.Y. Sept. 27, 2016). "If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control' even if the documents are actually in the possession of a non-party." *Id.* at *18. *See also Power Integrations, Inc, v. Fairchild Semiconductor Int'l, Inc.,* 233 F.R.D. 143, 146 (D. Del. 2005) (stating that control is defined as the legal right to obtain the documents required on demand) (quoting *Gerling Int'l Ins. Co. v. Comm'r,* 839 F.2d 131 (3d Cir. 1988)).

Here, the government not only had the practical ability to obtain Mr. Miah's Twitter records, it was the only party who anticipated legal proceedings, and thus the only party who could have preserved them. Meanwhile, it is a routine and common practice for individual Twitter users to

delete their tweets.[1] Twitter has hundreds of millions of followers who regularly delete billions of tweets, there are dozens of applications for deleting tweets, and in 2020 there was a significant rise in people deleting their tweets. Users delete tweets for a variety of reasons including: cleaning up their public timelines for potential employers, getting rid of embarrassing tweets, and recognizing that their tweets may have been offensive. Andrew Hutchinson, *People Were More Actively Deleting Their Past Tweets in 2020, According to New Report*, Social Media Today (Feb. 24, 2021), https://www.social mediatoday.com/news/people-were-more-actively-deleting-their-past-tweets-in-2020-according-to/595696/. As a general rule, it is not illegal to delete one's tweets. There are exceptions when it may be illegal, but in this case, Mr. Miah had no way of knowing that his tweets would be the subject of a threats charge. He was not told to preserve his tweets. The government on the other hand knew that Mr. Miah regularly deleted tweets and accounts and it failed to preserve them or give him notice of the need to preserve them.

### C. Exculpatory evidence of the full context of the alleged threats, and the FBI's reaction to them, would have been critical to Mr. Miah's defense.

The government's failure to preserve is important because the screenshots the FBI agents took of the tweets are select portions of the whole picture of what was happening on Mr. Miah's account. As discussed in the motion, in determining whether a statement is a true threat, the context of the statement is critical. In this case, Mr. Miah's account as a whole, the other tweets he was posting around the time, the reactions others had to the posts, who was following his account, and who was liking his tweets is all critical information that the FBI agents who took the select screenshots *did not* preserve. This is especially problematic because the alleged threats were

---

[1] *See* Lance Whitney, *How to Delete Twitter (and Your Terrible Tweets),* PCMag (July 16, 2020) https://www.pcmag.com/how-to/how-to-delete-twitter-and-your-terrible-tweets; *see also How to delete a Tweet,* Twitter (November 8, 2021), https://help.twitter.com/en/using-twitter/delete-tweets.

against these same FBI agents, the agents that Mr. Miah had insulted and ridiculed for months. In their multi-year investigation, costing hundreds of thousands of dollars, the government had not been able to indict Mr. Miah for anything. Then Mr. Miah posted five statements aimed at the agents and they only manage to screenshot the parts of his account they found relevant.

What is missing? Mr. Miah had only one follower on his account. We do not know who that follower was but considering that the FBI was monitoring Mr. Miah's account to screenshot it regularly, it is a fair assumption that the FBI was following his account. Many of Mr. Miah's tweets were "favorited" with a heart icon by one person, including tweets that were critical of the FBI. We do not know who favorited those tweets. With only one follower and the FBI the only known viewer of Miah's account, it is possible and even likely that FBI agents favorited these tweets. If the agents favorited some of Mr. Miah's tweets, that would provide critical context to Mr. Miah's statements, and also tends to undermine the government's claim that the agents feared bodily injury or death based on Mr. Miah's tweets.

Further, although the government states that Mr. Miah deleted his tweets very quickly, there is no evidence of this and none of it has been preserved. It also suggests Mr. Miah posted other tweets that would have provided critical context for the alleged threats. From the screenshots the FBI did take it is clear Mr. Miah posted several comical and sarcastic tweets that would suggest he was "trolling", or intentionally angering, the agents—not threatening them. These tweets would also be lost. If anyone else favorited or commented on Mr. Miah's tweets, the defense does not have that evidence either. Such evidence would have been critical to show how other viewers responded to Mr. Miah's tweets. Were they afraid? Or did they think the tweets were funny, or rude? The FBI screenshots capture only what agents wanted to capture, a moment in time that loses all potentially exculpatory evidence.

### D. The Court should issue an adverse inference instruction and prohibit the FBI agents from testifying about unpreserved Twitter activity.

As discussed in the motion, if this Court admits the FBI screenshots of the @ServiceFederal account, the appropriate sanction to offset the significant prejudice to Mr. Miah that would result from their incompleteness is an adverse inference instruction, and to prevent the FBI agents from testifying about the lost Twitter account information. The government's argument regarding a lack of showing of bad faith is unpersuasive and the defense relies on the arguments in its motion on the issue.

To clarify the relief sought, the government's Response refers entirely to Count 8, an obstruction of justice charge based on Mr. Miah's deletion of tweets. The government argues that no spoliation relief is appropriate as it would reward Mr. Miah for deleting his tweets. But the numerous government failures to preserve the Twitter account—even after the request of prior defense counsel, and the fact that the lost Twitter content is critical context for the seven threat counts—require relief. To be clear, Mr. Miah requests that the Court give an adverse instruction that would apply only to the seven threat counts (Counts 1 through 7), not the obstruction of justice charge (Count 8). An instruction permitting the jury to presume that the lost evidence would have been favorable to Mr. Miah's case as to Counts 1-7 is the least severe. The defense has reasonably requested a qualified adverse inference instruction and not a dismissal of the case or an absolute instruction. Such an instruction would not "reward" Mr. Miah for deleting his tweets; rather it would avoid punishing him for the government's failure to preserve relevant evidence when it alone knew the tweets would be the subject of Mr. Miah's indictment.

Respectfully submitted this 8th day of November,

By: /s/ Charles D. Swift
Charles D. Swift
Allie J. Hallmark
Catherine McDonald

                                                Pro Hac Vice Attorneys for Defendant
                                                100 N. Central Expy, Ste 1010
                                                Richardson, TX 75080
                                                (972)914-2507