IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 21-110 |
| KHALED MIAH, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Defendant Khaled Miah is charged in an eight-count Indictment with the following: five counts of making interstate threats to injure FBI agents, in violation of 18 U.S.C. § 875(c); two counts of influencing and/or retaliating against FBI agents by threat, in violation of 18 U.S.C. § 115(a)(1)(B); and one count of altering and deleting records in a federal investigation, in violation of 18 U.S.C. § 1519.  (Docket No. 33).  Jury selection and trial are scheduled to commence on December 7, 2021.  (Docket No. 109).  Presently before the Court is the Government's Motion in Limine Regarding Protections for Covert Witnesses and Investigative Tactics Covered by Law Enforcement Privilege, which is opposed by Defendant.  (Docket Nos. 148, 172, 205).  For reasons that follow, the Government's Motion will be granted in part and denied in part without prejudice as premature.

I.   **BACKGROUND**

As set forth in its Motion, the Government intends to produce several witnesses at trial from the Federal Bureau of Investigation's Special Surveillance Group ("SSG").  (Docket No. 148 at 1).  The SSG witnesses are "part of a highly-confidential FBI unit of investigative specialists who conduct covert surveillance as part of investigations." (*Id.*).  The Government submits that disclosure of these witnesses' identities and related information could jeopardize current and future

1

investigations, law enforcement tactics, and their safety. (*Id.*). Accordingly, the Government initially moved to implement the following protective measures for these witnesses: (1) the use of pseudonyms when testifying at trial and permitting the Government to delete information concerning their true identifies from discovery; (2) prohibiting the defense from referring to them by their true names at trial; (3) prohibiting the defense from asking questions concerning their identity, family, ongoing investigations, or investigative history or background[1] and permitting the Government to delete this information from discovery; (4) allowing them to use a non-public entrance and exit to the courthouse and courtroom; and (5) permitting them to testify behind a screen that shields them from the public view, but allows the Court, essential personnel, the jury, Defendant and his counsel and the Government's trial team to view them. (*Id.* at 2-3).

Defendant opposes the Government's Motion and asks the Court to deny it in its entirety. (*See* Docket No. 172). Defendant argues that the Government's requested measures restrict his right to confront the witnesses against him, and he should not be restricted from eliciting the witnesses' true identities. (*Id.* at 8-10). Defendant further contends that using pseudonyms and a screen to block the public's view of the witnesses will prejudice him by making him appear dangerous. (*Id.* at 12). Additionally, Defendant advocates that he should not be restricted in cross-examination concerning the CHS program, FBI techniques and/or training, other investigations and communications and recording methods. (*Id.* at 10-12). However, to the extent the Court finds that any protective measures are necessary, Defendant does not oppose the SSG witnesses using a non-public entrance or exit, provided that the jury is not alerted to same, and suggests that

---

[1] More specifically, the Government requests that the defense be precluded from asking questions or seeking information at trial concerning the following: (1) the FBI's Confidential Human Source ("CHS") program, the SSG program or their specific surveillance tactics and/or methods and means; (2) communications platforms used by the SSG; and (3) the characteristics or mechanics of recording devices used by the CHS. (Docket No. 148 at 4). According to the Government, these law enforcement techniques are protected by the law enforcement privilege. (*Id.*).

they only be permitted to use a light disguise, which appears natural and does not alert the jury to their altered appearance. (*Id.* at 13).

On November 12, 2021, the Court held a telephone conference of counsel concerning logistical matters related to the Government's Motion. (Docket Nos. 198, 208). The Court observed that the Government's request to permit SSG witnesses to testify behind a screen would involve a partial courtroom closure that could implicate First and Sixth Amendment concerns, *see Waller v. Georgia*, 467 U.S. 39, 44 (1984) (the First and Sixth Amendments generally require that criminal proceedings be open to the public and press), but indicated that it would consider the necessity of permitting the SSG witnesses to testify using pseudonyms and in light disguise and to utilize non-public entrances and exits. (*See generally* Docket No. 208). To that end, the Court ordered the Government to file a sealed declaration as a supplement to its Motion. (Docket No. 199). Prior to filing the declaration, counsel for the Government advised the Court's staff via email that the Government is amenable to the SSG witnesses using disguises (in addition to pseudonyms), instead of a screen, when testifying at trial.

On November 17, 2021, the Government filed a sealed declaration by a Supervisory Investigative Specialist/Squad Supervisor for the Pittsburgh FBI SSG (hereinafter, the "Declaration"). (Docket No. 205). The Declaration is premised on the Squad Supervisor's understanding that the Government seeks permission for the SSG witnesses to testify using pseudonyms and in light disguise, and thus confirms that the Government abandoned its request to use a screen during their testimony at trial. (*Id.*, ¶ 4).

After reviewing the sealed Declaration, the Court finds that it provides sufficient evidentiary support for the protections the Government seeks for the SSG witnesses, and the Court relies on the Declaration's contents in arriving at its conclusions herein as to the appropriate

protections for these witnesses. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

On November 24, 2021, the Court held a telephone conference to advise counsel that it will permit the SSG witnesses to testify at trial using pseudonyms and in light disguise and that those witnesses will be permitted to use non-public entrances and exits to the courthouse. (Docket No. 215). This Memorandum Opinion further explains the Court's ruling on the matter.

## II.    DISCUSSION

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). Consequently, confrontation "means more than being allowed to confront the witness

---

2 ████████████████████████████████████████████████████████

physically" and instead "secure[s] for [the defendant] the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (internal quotation marks and citation omitted).

Although the Confrontation Clause guarantees criminal defendants the right to cross-examine adverse witnesses, *see Smith v. Illinois*, 390 U.S. 129, 133 (1968), this right is not absolute, and a trial court "retain[s] wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). However, any such "[r]estrictions on a criminal defendant's rights to confront adverse witnesses . . . 'may not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Michigan v. Lucas*, 500 U.S. 145, 151 (1991) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). As the Supreme Court explained, "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Craig*, 497 U.S. at 850.

Here, the Court considers two possible limitations on Defendant's right of confrontation: the use of pseudonyms and light disguises by the SSG witnesses who will testify at trial. The Court also addresses two other measures requested by the Government concerning access to the courthouse and courtroom and the scope of the SSG witnesses' testimony on cross-examination.

### A. Use of Pseudonym

The Confrontation Clause generally guarantees a defendant the right to question an adverse witness about identifying information, including his name and address. *See Smith*, 390 U.S. at 131 ("[T]he very starting point in exposing falsehood and bringing out the truth through cross-

examination must necessarily be to ask the witness who he is and where he lives."). "While the Court in *Smith* emphasized the importance of a right to question a witness about his identifying information, 'it d[id] not establish a rigid rule of disclosure, but rather discusse[d] disclosure against a background of factors weighing conversely, such as personal safety of the witness.' " *United States v. Naseer*, 10 CR 19 (S-4), 2015 WL 13843166, at *2 (E.D.N.Y. Jan. 26, 2015) (quoting *United States v. Rangel*, 534 F.2d 147, 148 (9th Cir. 1976) (further citations omitted)). Accordingly, given that a defendant's right to know a witness' name is not absolute, the Court turns to consider whether the Government's request that the SSG witnesses be permitted to testify at trial using pseudonyms is appropriate here.

Based on the information contained in the Declaration as summarized above, the Court concludes that the need to protect the true identities of the SSG witnesses to avoid jeopardizing their safety and compromising the integrity of ongoing investigations furthers an important public interest. *See Craig*, 497 U.S. at 850; *United States v. Alimehmeti*, 284 F. Supp. 3d 477, 490-91 (S.D.N.Y. 2018) (collecting decisions permitting undercover officers to testify using pseudonyms as means of protecting their safety and ability to continue their work); *United States v. Urena*, 8 F. Supp. 3d 568, 573 (S.D.N.Y. 2014) ("The Government's interest in protecting [the undercover detective's] safety and his viability as an undercover asset overwhelmingly outweighs the defendants' interest in public disclosure of his true name."); *Naseer*, 2015 WL 13843166, at *3 (in view of concerns for undercover agents' safety and integrity of ongoing investigations, the government "has an understandably strong interest in protecting the identities of undercover agents") (citing *Ayala v. Speckard*, 131 F.3d 62, 72 (2d Cir. 1997) (noting the "state interest in maintaining the continued effectiveness of an undercover officer is an extremely substantial interest")); *see also United States v. Salemme*, Crim. No. 16-cr-10258, 2018 WL 2465359, at *2

(D. Mass. June 1, 2018) (collecting decisions holding that protecting the identity of undercover agents and officers in the field presents an overriding or substantial interest).

This Court agrees with another which has observed that when these safety and security concerns "are balanced against the defendant's ability to conduct meaningful cross-examination, the scale tips in the favor of maintaining secrecy of the witnesses' names." *Naseer*, 2015 WL 13843166, at *3 (internal quotation marks and citations omitted). In balancing these relevant concerns, the Court finds that Defendant will not be deprived of the right to confront and cross-examine the SSG witnesses in this case. Notably, there is nothing in the record indicating that those witnesses' true names "goes to their credibility or knowledge regarding the subject of their testimony." *Id*. (an officer's "true name is immaterial to defendants' guilt or innocence") (quoting *Urena*, 8 F. Supp. 3d at 573). Moreover, the Government indicated at the November 24th telephone conference that it will supply defense counsel with the SSG witnesses' real names, so long as Defendant himself is not provided that information. Given that defense counsel will have the SSG witnesses' real names, Defendant's ability to effectively cross-examine them will not be prejudiced. *See United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1142 (10th Cir. 2014) ("The Government may provide an opportunity for effective cross-examination by disclosing a witness's real name to defense counsel while the court still allows the witness to testify under an alias. . . ."); *United States v. Hernandez*, No. S1 12 Cr. 809, 2013 WL 3936185, at *3 (S.D.N.Y. July 29, 2013) (finding that the defendant's right to cross-examination not prejudiced where agent testified under an alias because the Government offered to provide agent's real name privately to defense counsel) (citing *United States v. Marti*, 421 F.2d 1263, 1266 (2d Cir. 1970) (noting lack of prejudice to criminal defendant's right to cross-examination where prosecution offered to privately communicate witness' address to defense counsel)). Accordingly, the SSG witnesses will be

permitted to testify at trial using pseudonyms, the defense will not be permitted to allude to their true names during cross-examination or at any other point during the trial, and in no event will this protective measure be brought to the jury's attention.

### B. Use of Light Disguise

The Court next considers the propriety of the SSG witnesses utilizing a light disguise when testifying at trial. A criminal defendant's right to cross-examination includes the right to physically face those who testify against him and to ensure that the witness gives his statement before the jury so the jury may observe the witness' demeanor. *Craig*, 497 U.S. at 851; *Coy v. Iowa*, 487 U.S. 1012, 1017 (1988). However, as stated, the right to face-to-face confrontation is not absolute and "must occasionally give way to considerations of public policy and the necessities of the case." *Craig*, 497 U.S. at 848. To reiterate, the Confrontation Clause "may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850. Determining whether the reliability of the testimony is otherwise assured turns upon the extent to which the proceedings respect the four elements of confrontation: "physical presence, oath, cross-examination, and observation of demeanor by the trier of fact." *Id.* at 846.

Applying these principles here, light disguises are important to further an important public interest, that is, protecting the SSG witnesses' true identity to avoid jeopardizing their safety and compromising the integrity of ongoing investigations as already discussed. Moreover, permitting the SSG witnesses to testify in light disguises is not broader than necessary to protect those interests.[3] Additionally, the reliability of the SSG witnesses' testimony will be assured because,

---

[3] As stated, the Court considered the Government's request to use a screen when the SSG witnesses testify at trial, but declined to approve same given the First and Sixth Amendment concerns attendant to such a measure. In

consistent with *Craig*: (1) they will be physically present in the courtroom; (2) they will testify under oath, which will impress upon the witnesses the seriousness of the matter and the possibility of penalty for perjury; (3) they will be subject to cross-examination in Defendant's presence; and (4) despite the light disguises, the jury will be able to hear their voices, see their reactions to questions and observe their body language. *See e.g., United States v. DeJesus-Casteneda*, 705 F.3d 1117, 1121 (9th Cir. 2013) (despite witness' disguise involving wig and mustache, his reliability was assured because the four elements of confrontation were satisfied); *Naseer*, 2015 WL 13843166, at *4 (determining that disguises of wigs and light makeup would not interfere with the defendant's or the jury's ability to assess witnesses' credibility and demeanor). All of these are key elements of a witness' demeanor which shed light on one's credibility.

For these reasons, the Court concludes that Defendant's right to confrontation will not be impaired by this precaution sought by the Government, and the SSG witnesses will be permitted to testify at trial using light disguises subject to the following clarification. At the November 24th telephone conference, the Government proposed light disguises consisting of a face mask, glasses and/or a hat. Given the current COVID-19 protocols applicable to trial participants in this District, defense counsel did not object to the SSG witnesses wearing a mask[4] and glasses when testifying

---

addition to those concerns, the Court notes Defendant's observation that using a screen could have prejudiced him by making him appear dangerous to the jury. (*See* Docket No. 172 at 12). Unlike a screen, the protective measures of pseudonyms and light disguises adopted here will not prejudice Defendant because those measures will not be noticeable to the jury, and they will not be brought to the jury's attention by the Court or by either party at any time during trial.

[4] Pursuant to this District's operative Administrative Order on the subject, "[a]ppropriate masks or face coverings shall be worn in Courtrooms and jury selection areas by all persons during jury trials (including juror reporting, selection and service), subject to the authority of the presiding judicial officer to permit those persons making an oral presentation or otherwise speaking during a jury trial to temporarily remove their mask or face covering while speaking or making an oral presentation." (*See In Re: Administrative Order Concerning the Use of Face Masks/Coverings in Public Areas of the District's Courthouses*, Misc. No. 2:20-mc-593-MRH, available at https://www.pawd.uscourts.gov/sites/pawd/files/NEW_Updated_Admin_Order_re_Masks_8-9-21_FILED.pdf, last visited Nov. 28, 2021). Numerous courts have held that such masking requirements do not infringe upon a defendant's Confrontation Clause rights. *See e.g., United States v. Maynard*, Crim. No. 2:21-cr-00065, 2021 WL 5139514, at *2 (S.D. W.Va. Nov. 3, 2021) (collecting decisions finding that requiring trial participants to wear face masks due to the

at trial. However, defense counsel expressed concern about the SSG witnesses wearing a hat, noting that witnesses typically do not wear hats in court proceedings. The Court agrees that hat wearing by testifying witnesses is not the norm, thus the SSG witnesses' light disguises should not include hats. However, to the extent necessary, the light disguises could include natural looking wigs, which other courts have permitted. *See DeJesus-Casteneda,* 705 F.3d at 1120; *Naseer*, 2015 WL 13843166, at *4. In any event, to repeat, the protective measure of light disguises will not be brought to the jury's attention.

### C. Entering and Exiting

The SSG witnesses will be permitted to use the non-public entrances and exits in the courthouse. Additionally, the witnesses' testimony at trial will be arranged to occur at times when they will be able to enter and exit the courtroom without having to utilize public access points. As with the other protective measures, the jury will not be alerted to these procedures.

### D. Scope of Testimony

As noted, the Government also seeks to prohibit the defense from inquiring about the SSG witnesses' ongoing investigations, investigative history or background, and certain law enforcement techniques described in footnote 1, *supra*. (Docket No. 148 at 2, 4). On this point, the Court indicated at the November 24th telephone conference that it is unable to rule on this aspect of the Government's Motion based on the present record. This remains true, despite the Government's proffer made during the telephone conference indicating that it intends to inquire on direct examination concerning the SSG witnesses' observations while conducting surveillance

---

COVID-19 pandemic does not violate a criminal defendant's constitutional rights); *United States v. James*, No. CR-19-08019-001, 2020 WL 6081501, at *2 (D. Ariz. Oct. 15, 2020) (finding that mask wearing by trial witnesses does not violate Confrontation Clause guarantee because mask protocol furthers an important public policy and reliability of mask-wearing witnesses is otherwise assured); *United States v. Crittenden*, Case. No. 4:20-CR-7, 2020 WL 4917733, at *6 (M.D. Ga. Aug. 21, 2020) (concluding that court's mask procedure permitted defendant and jury to observe witnesses' demeanor; although witnesses' noses and mouths were not visible due to masks, such restriction did not diminish face-to-face nature of confrontation contemplated by Confrontation Clause).

in this case, and not about the means or methods of their training or law enforcement surveillance techniques. Until the Government elicits the SSG witnesses' testimony on direct examination at trial, it is premature for the Court to make a ruling concerning permissible areas of cross-examination by the defense. Accordingly, this aspect of the Government's Motion will be denied without prejudice as premature.

### III.   CONCLUSION

For reasons specified herein, the Government's Motion in Limine Regarding Protections for Covert Witnesses and Investigative Tactics Covered by Law Enforcement Privilege (Docket No. 148) is granted in part and denied in part without prejudice as premature.

An appropriate Order follows.

<em>s/ W. Scott Hardy</em><br>
W. Scott Hardy<br>
United States District Judge

Date: November 29, 2021

cc/ecf:  All counsel of record