IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 21-110 |
| KHALED MIAH, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Defendant Khaled Miah is charged in an eight-count Indictment with five counts of making interstate threats to injure FBI agents, in violation of 18 U.S.C. § 875(c); two counts of influencing and/or retaliating against FBI agents by threat, in violation of 18 U.S.C. § 115(a)(1)(B); and one count of altering and deleting records in a federal investigation, in violation of 18 U.S.C. § 1519. (Docket No. 33). Jury selection and trial are scheduled to commence on December 7, 2021. (Docket No. 109). Presently before the Court is Defendant's Motion in Limine Requesting Sanctions for Spoliated Evidence. (Docket No. 151). The Government has filed its Opposition to Defendant's Motion, and Defendant has filed his Reply thereto. (Docket Nos. 164, 191). For the reasons that follow, Defendant's Motion will be denied without prejudice.

**I.   Background**

As outlined in Defendant's Motion, in September 2020, agents with the Federal Bureau of Investigation ("FBI") attempted to interview Defendant as part of their investigation into his online activity, at which point Defendant refused to consent to an interview with them. (Docket No. 151 at 1-2). During its investigation, the FBI also issued letters to Twitter requesting that the company preserve information regarding various accounts belonging to Defendant, pending the issuance of a search warrant or other legal process in furtherance of the investigation. (*Id.*; Docket No. 151-1

1

at 5-6, 13-14). Twitter is obligated to comply with such preservation letters under 18 U.S.C. § 2703(f)(1), which provides: "A provider of wire or electronic communication services or a remote computing service, upon the request of a governmental entity, shall take all necessary steps to preserve records and other evidence in its possession pending the issuance of a court order or other process." Under the statute, providers must preserve such records for 90 days, at which point the Government can request a 90-day extension of such preservation. *See* 18 U.S.C. § 2703(f)(2). Notably, the statute only permits the preservation of records that have already been created; a provider cannot be ordered to preserve records not yet made. *See* 18 U.S.C. § 2703(f); FBI Domestic Investigations and Operations Guide (DIOG) § 18.6.8.4.3(D)(3)(c) (available at https://vault.fbi.gov/FBI%20Domestic%20Investigations%20and%20Operations%20Guide%20%28DIOG%29 (last visited November 29, 2021)).

The FBI issued a number of these preservation requests and extension requests to Twitter for several accounts belonging to Defendant, including a preservation request on December 23, 2020 for his @ServiceFederal account. (Docket Nos. 151-1 at 5-6, 13-14; 151-3 at 2; 164-1 at 1). After the @ServiceFederal account preservation request was made, Defendant supposedly posted a series of allegedly threatening tweets on that account between December 27, 2020 and December 31, 2020. (Docket No. 33). The alleged threats concerned the FBI agents who were investigating Defendant and also referenced the wife of one of the agents, and it is these tweets that form the basis for the Indictment against Defendant. (*Id.*).

On February 3, 2021, the Government served Twitter with a warrant for several of Defendant's accounts, including his @ServiceFederal account. (Docket No. 151-4). By that time, Defendant had allegedly deleted many of his tweets and had deactivated his @ServiceFederal

account.[1]  (Docket No. 151 at 3, 6).  It appears that Defendant deactivated his @ServiceFederal account at least 30 days prior to February 3, 2021[2] because Twitter does not keep data for deactivated accounts beyond 30 days, and Twitter did not have data available regarding that account's activity for the time period during which Defendant posted the allegedly threatening tweets.[3]  (*Id.* at 3, 8).  However, Defendant's tweets containing the alleged threats charged in the Indictment were preserved prior to their deletion by FBI agents using the screenshot feature on their personal electronic devices.  (*Id.* at 2).

Now, after having deleted various Twitter posts, and after having deactivated his @ServiceFederal account (and after the account's data has become unrecoverable), Defendant argues in his Motion that the Government should be sanctioned for spoliation of critical evidence in this case, namely, data for his @ServiceFederal account from the time period during which the alleged threats were made.  (Docket No. 151 at 1, 11).  Defendant asserts that such data might have contained information about that account's content, including posts, comments, post reactions, and messages from the account that could have been helpful to his case but which were not captured in the screenshots taken by the FBI agents, and which have not been otherwise preserved.  (*Id.* at 3).  Defendant contends that the Government had a duty to preserve all of his @ServiceFederal

---

[1]  According to the Government, Defendant frequently deleted his Twitter posts soon after posting them and changed account names and made other alterations to his accounts, which made preservation of his Twitter records difficult.  (Docket No. 164 at 1, 4).  Defendant asserts that there is no evidence to support this allegation.  (Docket No. 191 at 4).

[2]  It is unknown exactly when Defendant deactivated his @ServiceFederal account.  (Docket No. 151 at 3). At some point, Defendant also changed the name of that account to @IslamisEvil2021, but it is unknown when that change occurred as well.  (*Id.* at 4).

[3]  For example, Defendant attached to his motion an email from Twitter to the Government regarding Defendant's @QassamSol account, in which Twitter notified the Government that the account "has been deactivated and the requested account data is not available from our production tools."  (Docket No. 151-1 at 12).  The letter further explained that "Once an account has been deactivated, data for the requested account may be available from our production tools for up to 30 days after deactivation.  For more information about deactivated accounts, please see: https://help.twitter.com/en/managing-your-account/how-to-deactivate-twitter-account."  (*Id.*).

account data from the time period at issue because the Government alone knew that it would be seeking an indictment based on that account, it had previously issued preservation letters and subpoenas to Twitter for his other accounts, and it had the power to compel Twitter to preserve his account data. (*Id.* at 5-6). Defendant argues that he, in comparison, did not know that his @ServiceFederal account was the subject of an indictment when he deleted his tweets or deactivated his account, and that after his arrest on January 6, 2021, he relied on the Government's representations that it would produce the Twitter subpoena returns in discovery. (*Id.* at 6). Defendant submits that, if the Court admits the FBI screenshots of his @ServiceFederal account posts containing the alleged threats, then the Court should sanction the Government for its spoliation of his lost account data by prohibiting the agents from testifying about the lost account information and by giving the jury an instruction permitting them to presume that the lost information from that account would have been favorable to Defendant as to Counts 1-7. (*Id.* at 1, 11; Docket No. 191 at 5).

In response, the Government argues that Defendant's Motion is without factual or legal support, in that he cites to no cases that are remotely analogous to the situation presented here, and he points to no specific evidence indicating that missing information from his @ServiceFederal account would have been helpful to him. (Docket No. 164 at 2). The Government contends that Defendant blames it for not finding a way to preserve evidence that he successfully destroyed, and for not preserving evidence that it did not have in its possession and could not legally preserve as Defendant argues. (*Id.*). The Government emphasizes that Defendant ignores the obvious fact that he was the one person who was in possession of the evidence at issue and the only person who could have preserved such evidence simply by not deleting it, and that he should not be rewarded with his requested spoliation sanctions for having done so. (*Id.*).

## II.     Legal Argument

"Spoliation" is defined as "'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *United States v. Bunty*, 617 F. Supp. 2d 359, 370 (E.D. Pa. 2008) (quoting *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 110 (E.D. Pa. 2005) (citation omitted)). In making a determination that spoliation of evidence occurred, a court must find that: "[1] the evidence was in the party's control; [2] the evidence is relevant to the claims or defenses in the case; [3] there has been actual suppression or withholding of evidence; and, [4] the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Service, Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (citing *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 334 (3d Cir.1995)). If a court determines that spoliation occurred, "there are a variety of sanctions that the Court in its discretion may impose, such as the dismissal of a claim or claims, the suppression of evidence, an adverse inference, fines, or attorney's fees and costs."[4] *Bunty*, 617 F. Supp. 2d at 370.

Thus, to determine that spoliation of evidence occurred here, the Court first has to find that the evidence at issue – information about all content from Defendant's @ServiceFederal account from the time period during which he posted the alleged threats – was in the Government's *control*. Defendant argues that the Government effectively had control over such information because it had the power to compel Twitter to preserve the data for Defendant's @ServiceFederal account, and it had the power to issue a warrant for the preserved data from Twitter. (Docket Nos. 151 at

---

[4]     If a court makes a determination that spoliation has occurred, the court must then undertake an analysis as to appropriate spoliation sanctions. *Bull*, 665 F.3d at 73 n.5. "Though there is some overlap between the two, there are distinctive elements of each." *Id.* A sanctions analysis includes the following factors: "'(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.'" *Id.* (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir.1994)).

5

6; 191 at 2). However, the Government's power in that regard was far more limited than Defendant claims it to have been. For example, as explained, *supra*, although the Government was permitted by a federal statute to order Twitter to preserve data for past activity on Defendant's account, the Government was not permitted to order Twitter to continue to preserve data for new information that might appear on the account after the date of the Government's request. Accordingly, when the Government issued its December 23, 2020 letter to Twitter requesting that it preserve information about past activity on Defendant's @ServiceFederal account, that letter did not – and could not legally – operate prospectively to preserve information about activity on the account after that date.[5]

Additionally, the Government could not prevent Defendant from deleting his individual posts or entire accounts on Twitter.[6] According to Twitter's correspondence to the Government, with regard to preservation requests, "Twitter cannot automatically preserve already-deleted content (e.g., deleted tweets)," and with regard to responding to a subpoena, "Twitter cannot obtain deleted content (e.g., deleted tweets) through its production tools." (Docket Nos. 151-1 at 7, 11; No. 164-1 at 1). Therefore, according to the facts presented by the parties in their briefing, the only way that the Government could have definitely preserved evidence of all ongoing activity on Defendant's @ServiceFederal account after the date of the December 23, 2020 preservation letter

---

[5] The Government explains in its brief that ongoing interception of electronic transmissions as they occurred could only have been authorized through action under the Foreign Intelligence Surveillance Act, 18 U.S.C. 2511(2)(a)(ii). (Docket No. 164 at 4). Although Defendant states that the Court should not believe the Government's contention "that it became wiretap-shy" about preserving Defendant's Twitter activity at issue here, his motion does not further develop that argument for the Court's consideration in this regard. (Docket No. 191 at 2).

[6] According to Twitter, "[o]nce an account has been deactivated, data for the deactivated account may be available from our production tools for up to 30 days after deactivation." (Docket No. 151-1 at 12). Deactivation begins the process of permanently deleting a Twitter account, and it initiates a 30-day window during which the account may be reactivated. *See* https://help.twitter.com/en/managing-your-account/how-to-deactivate-twitter-account (last visited Nov. 29, 2021). If a user does not access his account within the 30-day deactivation period, the account is permanently deleted. *See id.*

6

would have been by continually issuing preservation requests to Twitter – instantly after activity occurred and before activity could have been deleted – which would be, in practice, simply unfeasible due to the "volume of tweets and Mr. Miah's near-constant social media activity."[7] (Docket Nos. 151 at 3; 164 at 4).

The Court also notes that, while the Government did not have control over Defendant's Twitter account information, Defendant (in conjunction with Twitter) did have control over such information, including information regarding activity on his @ServiceFederal account. Also, although Defendant claims that only the Government knew that his @ServiceFederal account activity would be the subject of an indictment, and that he did not know that his @ServiceFederal account was the subject of a federal criminal indictment when he deleted his tweets or deactivated his account, the Government could not have known that such activity would be the subject of an indictment when it issued the @ServiceFederal preservation letter on December 23, 2020 since Defendant had not yet made the allegedly threatening tweets. Furthermore, it is somewhat disingenuous for Defendant to portray himself as being entirely unaware of the FBI's interest in his online activities since he had been contacted by agents regarding their investigation, thus putting him on notice that his online activity was the subject of their investigation.

Therefore, the Court concludes that the Government did not have control over the evidence at issue since immediate preservation of information about all content from Defendant's @ServiceFederal account on an ongoing basis was simply not feasible under the circumstances presented here. Although a finding that one of the spoliation requirements is not met precludes

---

[7] Additionally, even if continual or repeated preservation requests would have been possible, the processing of such requests may have been problematic. Notably, in Twitter's automated responses confirming receipt of the Government's preservation requests, Twitter requested that the Government "[p]lease refrain from submitting duplicate requests as this may slow down the assessment of your original request." (Docket No. 151-1 at 1, 2).

the Court from deciding that spoliation of evidence occurred here, the Court will nevertheless consider the remaining factors as well.

Thus, if the evidence at issue had been in the Government's control, in order to find that spoliation occurred, the Court would also have to find that such evidence was relevant to the claims or defenses in this case. *See Bull*, 665 F.3d at 73. Defendant surmises that his @ServiceFederal account may have contained tweets other than those already captured in screenshots, as well as comments on or reactions to his tweets, that might have helped him to provide context for his allegedly threatening tweets. Notably, however, Defendant provides no specific examples of such content that he deleted or that was not preserved after he deactivated his account. Rather, Defendant states that "there are *almost certainly* many other posts, comments, post-reactions, and messages that were not captured in the screenshots," and that "[i]t is *impossible to know* how many tweets Mr. Miah posted then deleted or *what they said*." (Docket No. 151 at 3-4 (emphasis added)). However, since the @ServiceFederal account was Defendant's own account, he should know if such tweets or other content ever appeared on his account, and he should be able, at a minimum, to identify some such activity with particularity or to broadly summarize the gist of some such evidence relevant to claims or defenses in this case. Because Defendant has made no effort to provide any example of relevant evidence that existed on his @ServiceFederal account but was deleted or not preserved, and only points out the likelihood of such evidence having existed, the Court cannot find that the evidence at issue in his Motion was relevant to the claims or defenses in the case.

Third, to determine that spoliation occurred, the Court would also have to find that there was an actual suppression or withholding of the evidence at issue here. *See Bull*, 665 F.3d at 73. "'Spoliation is usually referenced in instances where evidence has been altered or destroyed,'" and

"a finding of bad faith is pivotal to a spoliation determination.'" *United States v. Porter*, No. 18-68, 2019 WL 3972822, at *6 (W.D. Pa. Aug. 22, 2019) (quoting *Bull*, 665 F.3d at 73, 79, and citing *Brewer*, 72 F.3d at 334 ("'No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.'")).

In his Motion, however, Defendant does not argue that the Government acted in bad faith. Instead, Defendant asks the Court to find that sanctionable spoliation occurred here based on the Government's gross negligence or recklessness, and to issue an adverse inference jury instruction (and prohibit agents from testifying about missing Twitter content) on that basis. Specifically, Defendant asks the Court to find that "there was 'actual suppression or withholding' of Mr. Miah's @ServiceFederal Twitter account by the government under the flexible approach set forth in *MOSAID Technologies Inc. v. Samsung Electronics Co.*, 348 F. Supp. 2d 332 (D.N.J. 2004)" (in which the district court found that negligent destruction of relevant evidence can be sufficient to give rise to a spoliation inference jury instruction) and like cases. (Docket No. 151 at 9, 10).

Accordingly, Defendant argues that, "[a]t a minimum, the government was grossly negligent or reckless in failing to preserve the Twitter account," while conceding that "the culpability of the government at worst falls within the realm of recklessness." (Docket No. 151 at 9, 10). However, even if the Court were to consider gross negligence or recklessness to be sufficient to show suppression of the evidence at issue, Defendant has not shown how the Government – with its limited ability to preserve information from Defendant's Twitter account, and the steps that it did take to preserve such information, as discussed, *supra* – was grossly negligent or reckless in failing to preserve information concerning all content from Defendant's

@ServiceFederal account during the time period at issue.  Therefore, the Court cannot find that the evidence at issue was suppressed or withheld by the Government.

Lastly, to find that spoliation occurred here, the Court would have to find that a duty to preserve information about all content on Defendant's @ServiceFederal account during the time period at issue was reasonably foreseeable to the Government.  *See Bull*, 665 F.3d at 73.  Defendant argues that the Government "was well aware of its duty to preserve [his] Twitter activity because it issued preservation requests for many of his other social media accounts," but that for the @ServiceFederal account, the Government "failed to issue a preservation order or search warrant until after 30 days had passed and Twitter no longer maintained records."  (Docket No. 151 at 8).

As the Government points out, however, Defendant has provided no relevant cases in support of its argument that the Government had a duty to preserve all such information.  Also, as explained, *supra*, the Government did issue a preservation letter for Defendant's @ServiceFederal account on December 23, 2020, but the Government could not feasibly have preserved all content from that account by issuing additional preservation requests every time account activity occurred and before it could have been deleted, nor could the Government stop Defendant from deleting his tweets or accounts altogether.  Rather, the Government issued preservation requests to Twitter for Defendant's various accounts, which required Twitter to preserve information pertaining to those accounts for a period of 90 days, at which point the Government issued extension requests.  In the case of the @ServiceFederal account, the Government issued a preservation request on December 23, 2020 and then a warrant on February 3, 2021, before the initial 90-day period had expired.  Thus, the Court finds that, while the Government took certain steps within its power to preserve information regarding Defendant's Twitter accounts including the @ServiceFederal account, a duty to preserve all information regarding the @ServiceFederal account for the time period at issue

10

– which the Court has explained was unfeasible – was not reasonably foreseeable by the Government.

Therefore, the Court finds that the requirements of spoliation of evidence have not been met in this case. Because the Court has made the determination that spoliation did not occur, the Court need not proceed to a sanctions analysis. *See Bull*, 665 F.3d at 73 n.5.

### III. Conclusion

Accordingly, for the reasons set forth, the Court finds that sanctionable spoliation of evidence of information regarding Defendant's @ServiceFederal Twitter account did not occur. Defendant's Motion will therefore be denied without prejudice.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated: November 29, 2021

cc/ecf: All counsel of record