## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 21-110 |
| KHALED MIAH, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Defendant Khaled Miah is charged in an eight-count Indictment with the following: five counts of making interstate threats to injure FBI agents, in violation of 18 U.S.C. § 875(c); two counts of influencing and/or retaliating against FBI agents by threat, in violation of 18 U.S.C. § 115(a)(1)(B); and one count of altering and deleting records in a federal investigation, in violation of 18 U.S.C. § 1519.  (Docket No. 33).  Jury selection and trial are scheduled to commence on December 7, 2021.  (Docket No. 109).  Presently before the Court is the Government's Motion in Limine Regarding Admissibility of Intrinsic Evidence, or in the Alternative, 404(b) Evidence and Supplement thereto (Docket Nos. 113, 134, 187), which is opposed by Defendant.  (Docket Nos. 129, 201).  For reasons that follow, the Government's Motion will be granted in part and denied in part.

### I.   BACKGROUND

As alleged in the Indictment, on or about September 28 and 29, 2020, FBI Special Agent A and other agents (the "Agents") attempted to interview Defendant about reports received by law enforcement concerning an online threat made by Defendant.  (Docket No. 33, ¶ 3).  Defendant allegedly was uncooperative, erratic, and provocative in his interactions with the Agents.  (*Id.*).

On or about October 5, 2020, a review of several of Defendant's known Twitter accounts revealed material changes and deletions such as changes to profile pictures, display names, and

1

the location of his account.  (Docket No. 33, ¶ 4).  Numerous tweets associated with Defendant's known Twitter accounts allegedly had been deleted and one known account had been deleted in full.  (*Id.*).

On or about October 8, 2020, Defendant altered the outward facing profile photograph on one of his known Twitter accounts to depict a photograph of Special Agent A's wife ("Victim A")[1] and changed the display name from "@Lugenpresse_" to "@[Victim A's first name]presse." (Docket No. 33, ¶ 5).  The account was able to be viewed by the public.  (*Id.*).  The biographical information on Defendant's account also was altered to include Victim A's actual place of work, her educational background, and her age, hair color, religion, and original hometown in the United States, as well as crude and sexual comments related to Special Agent A and Victim A.  (*Id.*).

On or about October 9, 2020, a federal search warrant authorized the search of Defendant's residence and seizure of his electronic devices.  (Docket No. 33, ¶ 6).  When interviewed by FBI Agents, Defendant admitted that he had researched Special Agent A and Victim A online, and that he had used Victim A's photograph and information to alter his Twitter account.  (*Id.*).  The Indictment alleges that the FBI's examination of Defendant's electronic devices and online accounts revealed his interest in weapons, fascination with violence and strong animosity toward law enforcement.  (*Id.*).  The Indictment further alleges that FBI surveillance revealed that Defendant conducted reconnaissance of Special Agent A's residence and the FBI Pittsburgh Field Office on multiple occasions after the FBI's attempted interview of Defendant in September 2020. (*Id.* ¶ 8).  Additionally, on or about September 30, 2020, Defendant sent four photographs of Special Agent A and Victim A to an associate via the Internet platform WhatsApp, with the

---

[1]       The Government explained that Special Agent A's wife is referred to as Victim A in the Indictment to protect her identity, (*see* Docket No. 165 at 1), thus the Court refers to her in that same manner herein.  However, as set forth in the Court's Order dated November 7, 2021, the Government will not refer to Special Agent A's wife as "victim" or "Victim A" during trial.  (*See* Docket No. 189).

following message: "That's him..his wife..and his closer friends.  It's all public information now along with his credentials, shield number, listened [sic] plays [sic] numver [sic], make model and year of his personal car and his agency issued cruiser.  Also his location of residence is also public." (*Id.*, ¶ 7).

Following the seizure of Defendant's electronic devices on or about October 9, 2020, he created and controlled two new Twitter accounts in or around November 2020.  (Docket No. 33, ¶ 9).  Defendant used both Twitter accounts to tweet messages over the Internet about an FBI Supervisory Special Agent and Special Agent A by name and indicated that he had researched their personal lives, prior professions, and current city and Special Agent A's wife, siblings, hometown, and education.  (*Id.*).

On or about December 19, 2020, Defendant created and controlled a new Twitter account identified by the display name "Federal Intelligence Service" and the username @ServiceFederal. (Docket No. 33, ¶ 10).  On or about December 27, 2020, Defendant posted the following statements through his @ServiceFederal Twitter account: "[c]urrently eating pasta and watching videos of the second plane hit the south tower"; and "Nick, Dave, Mike, the whole bureau, the deed will be done at a time which is the most opportunistic for me, chosen by myself."  (*Id.*, ¶ 11).  As alleged in the Indictment, Defendant subsequently deleted those posts by December 28, 2020, with the intent to impede, obstruct or influence the FBI's investigation into his conduct.  (*Id.*, ¶ 13).

On December 28, 29 and 30, 2020, Defendant posted the following statements on Twitter: "the zero hour is approaching."; "38° 53' 42.7" N, 77° 1' 30" W"[2]; and "Rasheed, Dave, Nick, Mike…..how's your investigation going? Things are looking 'bright' in 2021.  Did you find the Saudi passports?"  (Docket No. 33, ¶ 14).  Further, on December 30, 2020, Defendant posted from

---

[2]     As set forth in the Indictment, the coordinates listed in Defendant's tweet on December 29, 2020 resolve to the FBI Headquarters Building in Washington, D.C.  (Docket No. 33, ¶ 15).

his @ServiceFederal Twitter account: "2001-2021 is 20 years.  An entire generation, yet men like me still exist and pop up into existence.  Next time you come in cowboy with the crew, the hardwood will collapse beneath your feet."  (*Id.*, ¶ 17).  Finally, on December 31, 2020, Defendant posted the following on his @ServiceFederal Twitter account: "[r]emember boys, the more eyes on me, the less eyes on the others.  Regardless, yellow tapes will flow."  (*Id.*, ¶ 18).

Counts One through Five of the Indictment allege that Defendant knowingly and willfully transmitted in interstate commerce the following communications containing a threat to injure FBI agents, each in violation of 18 U.S.C. § 875(c):

| Count | Date | Internet Communication Platform | Threat to Officer |
|---|---|---|---|
| 1 | December 27, 2020 | Twitter | "Currently eating pasta and watching the second plane hit the south tower.<br><br>Nick, Dave, Mike and the whole bureau, the deed will be done at a time which is most opportunistic for me, chosen by myself." |
| 2 | December 28, 2020 | Twitter | "The zero hour is approaching" |
| 3 | December 29, 2020 | Twitter | "38° 53' 42.7" N, 77° 1' 30" W" |
| 4 | December 30, 2020 | Twitter | "Rasheed, Dave, Nick, Mike . . . how's your investigation going? Things are looking "bright" in 2021.  Did you find the Saudi passports?"<br><br>"2001-2021 is 20 years. An entire generation, yet men like me still exist and pop up into existence. Next time you come in cowboy with the crew, the hardwood will collapse beneath your feet." |
| 5 | December 31, 2020 | Twitter | "Remember boys, the more eyes on me, the less eyes on the others. Regardless, yellow tapes will flow" |

(Docket No. 33 at 8).

Counts Six and Seven of the Indictment allege that Defendant threatened to assault FBI agents, with intent to impede, intimidate, interfere with and retaliate against the agents while they were engaged in or on account of the performance of their official duties, both in violation of 18 U.S.C. §§ 115(a)(1)(B) and 115(b)(4), as follows:

| Count | Date | Internet Communication Platform | Threat to Officer |
|---|---|---|---|
| 6 | December 30, 2020 | Twitter | "Rasheed, Dave, Nick, Mike . . . how's your investigation going? Things are looking "bright" in 2021. Did you find the Saudi passports?"<br><br>"2001-2021 is 20 years. An entire generation, yet men like me still exist and pop up into existence. Next time you come in cowboy with the crew, the hardwood will collapse beneath your feet." |
| 7 | December 31, 2020 | Twitter | "Remember boys, the more eyes on me, the less eyes on the others. Regardless, yellow tapes will flow" |

(Docket No. 33 at 9).

Count Eight of the Indictment alleges that, from on or about October 5, 2020 to and including January 1, 2021, Defendant knowingly altered and deleted Twitter accounts and postings with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States, in violation of Title 18, United States Code, Section 1519. (Docket No. 33 at 10).

In advance of jury selection and trial, the Government filed its Motion in Limine Regarding Admissibility of Intrinsic Evidence, or in the Alternative, 404(b) Evidence. (Docket No. 113).

The Government contends that two categories of proffered other-acts evidence is intrinsic to the charged offenses because they provide context for Defendant's alleged threats and "go directly to elements of the charged crimes, namely, [his] subjective intent in making 'true threats' and the objective component that [he] transmitted a communication that a reasonable person would view as a threat." (*Id.* at 4). This evidence includes photographic images, videos, and social media posts of the following: Defendant's "interest in and support for ISIS, terrorist attacks, and violence"[3] and his "interest in firearms and other weapons."[4] (*Id.* at 5). The Government maintains that the ISIS/terrorist-related evidence is intrinsic to Defendant's alleged threats charged in the Indictment because it shows that the alleged threats concerning the September 11, 2001 terrorist attacks are "true threats" and not mere hyperbole or jokes. (*Id.* at 6). The Government further contends that materials related to Defendant's interest in firearms and weapons are intrinsic to the alleged threats charged in the Indictment because they provide context for the jury to determine whether his statements are "true threats" or mere hyperbole. (*Id.* at 9-10).

Alternatively, the Government argues that the proffered other-acts evidence is admissible under Rule 404(b) to provide background and context, and to "prove [Defendant's] motive, intent, plan, preparation and knowledge." (Docket No. 113 at 12-14). In reply, the Government clarified that it also plans to use evidence of Defendant's internet searches, downloads and conversations relating to his admiration of terrorists "for only one purpose: to prove [his] knowledge and intent." (Docket No. 134 at 1). At the Court's direction, the Government subsequently supplemented its

---

[3]     The Government submits that it anticipates introducing evidence that Defendant espoused and pledged support for ISIS and terrorist attacks against the United States, consumed videos and images of violent beheadings and other acts of terrorism, and made statements on social media and to a confidential human source supporting violence, terrorism and jihad and searched the internet for these topics. (Docket No. 113 at 5-6).

[4]     The Government submits that it intends to introduce materials such as videos and images, "selfies," and internet searches that Defendant maintained on his electronic devices depicting him with firearms, at shooting ranges and gun stores and making homemade explosives, as well as other images and videos of explosives, firearms, weapons of mass destruction, and vehicle-borne improvised explosive devices. (Docket No. 113 at 9).

Motion to identify each exhibit it intends to offer in furtherance of the Motion, the non-propensity purpose for each such exhibit, and the date and time of each exhibit.  (Docket Nos. 144, 187).

Defendant responds that the proffered other-acts evidence is not intrinsic to the threat charges because it was not contemporaneous with, nor did it facilitate, the charged conduct. (Docket No. 129 at 3-4).  Further, Defendant contends that the proffered other-acts evidence is not intrinsic because it does not directly prove an element of the threat charges, nor does it prove that the charged tweets were "true threats."  (*Id.* at 4-6).  Defendant additionally argues that the other-acts evidence fails to satisfy the requirements of Rule 404(b) because: it is not offered for a proper Rule 404(b) purpose, but instead to portray him as a terrorist in the making; and, even if there were a proper purpose, the other-acts evidence is not relevant; the prejudice and risk of confusion to the jury substantially outweigh the probative value of the other-acts evidence; and a limiting instruction would not overcome the prejudice and confusion.  (*Id.* at 7-15).  Finally, in response to the Government's Supplement, Defendant opposes the admission of evidence of a video from YouTube, which he allegedly posted in 2019, a Facebook statement from 2017 and 2018, a video of an ROTC cadet made in 2019, and video of a motorcyclist made on September 5, 2017, as impermissible character evidence under Rule 404(b) and 403.  (*See* Docket No. 201).

## II.    LEGAL STANDARD

Evidence of a criminal defendant's conduct which is not charged in the indictment, including crimes, wrongs or other acts, may be admissible if: (1) the evidence is intrinsic to the charged offense; or (2) the evidence is extrinsic to the charged offense but is offered for a proper purpose under Rule 404(b).  *See United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010).  In the Third Circuit, evidence of uncharged acts is considered intrinsic if it "directly proves" the charged

offense, or if it is "performed contemporaneously with the charged crime . . . [and] facilitate[s] the commission of the charged crime." *Id.* at 248, 249.

Uncharged acts which do not come within the definition of intrinsic evidence constitute extrinsic evidence and must meet the requirements of Rule 404(b) prior to being admitted at trial. Rule 404(b) bars "the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character." *Huddleston v. United States*, 485 U.S. 681, 685 (1988).  Rule 404(b) provides, in relevant part:

> (b) Other Crimes, Wrongs, or Acts.
>
> (1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b).

As articulated by the Third Circuit Court of Appeals, "Rule 404(b) is a rule of exclusion, meaning that it excludes evidence unless the proponent can demonstrate its admissibility, but it is also 'inclusive' in that it does not limit the non-propensity purposes for which evidence can be admitted." *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017).  Given that "Rule 404(b) is a rule of general exclusion, the party seeking to admit other-acts evidence has the burden of demonstrating [the evidence's] applicability." *Id.* (internal quotation marks and citation omitted). Accordingly, "[a]dmissibility under Rule 404(b) requires the satisfaction of four distinct steps: (1) the other-acts evidence must be proffered for a non-propensity purpose; (2) that evidence must be relevant to the identified non-propensity purpose; (3) its probative value must not be substantially

outweighed by its potential for causing unfair prejudice to the defendant; and (4) if requested, the other-acts evidence must be accompanied by a limiting instruction." *Id.* (citations omitted).

As to the first step of the Rule 404(b) analysis, a proper purpose is one that is "probative of a material issue other than character." *Huddleston*, 485 U.S. at 686. The Third Circuit Court of Appeals has held that "one proper purpose under Rule 404(b) is supplying helpful background information to the finder of fact." *Green*, 617 F.3d at 250. Accordingly, "allowing the jury to understand the circumstances surrounding the charged crime—completing the story—is a proper, non-propensity purpose under Rule 404(b)." *Id.* at 247 (citations omitted). Additionally, and relevant here, the Court of Appeals has held that motive is also a proper non-propensity purpose under Rule 404(b). *Id.*, at 250. Likewise, the Court of Appeals has observed that knowledge and intent are also proper, non-propensity purposes. *Repak*, 852 F.3d at 242 ("The plain text of Rule 404(b) allows for the admission of other-acts evidence to show knowledge and intent as the Government proffered here."). Notably, in *Repak*, the defendant's knowledge and intent were elements of the two charged offenses, and he put his mental state at issue in the case by contesting those elements at trial. *Id.; see United States v. Himelwright*, 42 F.3d 777, 782 (3d Cir. 1994) ("In order to admit evidence under the "intent" component of Rule 404(b), intent must be an element of the crime charged and the evidence offered must cast light upon the defendant's intent to commit the crime.").

Next, the second step requires a showing that the other-acts evidence must be relevant to the identified non-propensity purpose. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. More specifically, for proffered evidence to be relevant to the identified non-propensity purpose, it "must fit into 'a chain of inferences—a chain

that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference.'" *Repak*, 852 F.3d at 243 (quoting *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013)).  To that end, "a logical chain of inferences must be articulated so that we are 'assure[d] that the evidence is not susceptible to being used improperly by the jury.'" *Id.* (quoting *United States v. Caldwell*, 760 F.3d 267, 282 (3d Cir. 2014)).  Put another way, the other-acts evidence must be linked to a non-propensity purpose with "careful precision," *id.* at 244 (quoting *Caldwell*, 760 F.3d at 281), such that the "chain of inferences [does] not require the jury to make 'too great a leap in logic.'" *Id.* at 245 (quoting *United States v. Brown*, 765 F.3d 278, 293 (3d Cir. 2014)).

The third step requires that other-acts evidence must not give rise to a danger of unfair prejudice that substantially outweighs the probative value of the evidence under Federal Rule of Evidence 403.  *Repak*, 852 F.3d at 241, 246.  Pursuant to Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed.  R. Evid. 403.  Rule 403 "creates a presumption of admissibility." *Repak*, 852 F.3d at 246 (quoting *United States v. Claxton*, 766 F.3d 280, 302 (3d Cir. 2014)).  "Evidence cannot be excluded under Rule 403 merely because its unfairly prejudicial effect is greater than its probative value. Rather, evidence can be kept out only if its unfairly prejudicial effect 'substantially outweigh[s]' its probative value." *Id.* (quoting *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002)).  The Third Circuit Court of Appeals has instructed that a district court must "undertake some analysis," that is, "provide 'meaningful balancing,' when applying Rule 403 to determine the admissibility of Rule 404(b) evidence." *Id.* (quoting *Caldwell*, 760 F.3d at 283).  A Rule 403 evaluation is not meaningful "if it merely states a bare conclusion." *Id.* at 247.

Finally, at step four of the Rule 404(b) analysis, the other-acts evidence must be accompanied by a limiting instruction if one is requested.  *Repak*, 852 F.3d at 241, 248.  Such an

instruction must "advise[ ] the jury that the evidence is admissible for a limited purpose and may not be considered in another manner." *Id.* at 248 (quoting *Caldwell*, 760 F.3d at 277).

### III.   ANALYSIS

The Court now evaluates the Government's proffered other-acts evidence against the foregoing legal standards.   In doing so, the Court notes that the Government is proffering testimonial evidence in addition to more than sixty (60) separate exhibits that are the subject of this Motion. Defendant objects to the admissibility of each of these exhibits.

The Court also observes that its analysis must be undertaken mindful of the elements of the charged offenses.   As to the offense of transmitting in interstate commerce a communication containing a threat to injure the person of another, in violation of 18 U.S.C. § 875(c), the Third Circuit Court of Appeals has held that § 875(c) "contains both a subjective and objective component, and the Government must satisfy both in order to convict a defendant under the statute." *United States v. Elonis*, 841 F.3d 589, 596 (3d Cir. 2016).   Consequently, to establish a violation of § 875(c), as charged in each of Counts One through Five of the Indictment, the Government must prove beyond a reasonable doubt that Defendant "transmitted a communication for the purpose of issuing a threat or with knowledge that the communication would be viewed as a threat" (the subjective component) and that he "transmitted a communication that a reasonable person would view as a threat" (the objective component). *Id.*   As the Court of Appeals observed in *Elonis*, the objective component "shields individuals from culpability for communications that are not threatening to a reasonable person, distinguishing true threats from hyperbole, satire, or humor." *Id.* at 596-97.   Crucially, for purposes of the Court's present analysis, the objective component "requires the jury to consider the context and circumstances in which a communication was made to determine whether a reasonable person would consider the communication to be a

serious expression of an intent to inflict bodily injury on an individual." *Id.* at 597 (citing *Virginia v. Black*, 538 U.S. 343, 360 (2003)).

Next, to establish that Defendant influenced and/or retaliated against FBI agents by threat,[5] in violation of 18 U.S.C. §§ 115(a)(1)(B) and 115(b)(4), as charged in each of Counts Six and Seven of the Indictment, the Government must prove beyond a reasonable doubt that Defendant acted with the intent to impede, intimidate, or interfere with the FBI agents while engaged in the performance of their official duties or with the intent to retaliate against the FBI agents on account of the performance of their official duties.[6]

As to both the § 875(c) charges and the § 115(a)(1)(B) charges, the parties agree that the statements charged in the Indictment must be "true threats." (*See* Docket Nos. 113 at 6, 129 at 4). Under Supreme Court jurisprudence, " '[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359 (citing *Watts v. United States*, 394 U.S. 705, 708 (1969) ("political hyperbole" is not a true threat)).

### A. The Government's Proffered Other-Acts Evidence is Not Intrinsic to the Charged Offenses

After careful review of the Government's proffered other-acts evidence, the Court concludes that none of that evidence is intrinsic to the charged offenses. *Green*, 617 F.3d at 249.

---

[5]     To prove a threat under § 115(a)(1)(B), the Government must prove that an objectively reasonable person would have viewed the communication as a threat. *See United States v. Cruz*, 713 F. App'x 82, 87-88 (3d Cir. 2017) (holding that trial court's jury instruction defining the "threat" element of offense of threatening to assault and kill a federal agent to include an objective reasonable person standard, and failing to require subjective intent, did not constitute plain error).

[6]     The Government's Motion and Defendant's Response thereto focus primarily on the § 875(c) charges and, to a lesser extent, on the § 115(a)(1)(B) charges. The parties did not discuss the charge in Count Eight of the Indictment alleging that Defendant altered and deleted records in a federal investigation, in violation of 18 U.S.C. § 1519, which requires proof beyond a reasonable doubt that Defendant acted with the intent to impede, obstruct, or influence an investigation of a matter within the jurisdiction of an agency of the United States or in relation to or contemplation of any such matter or case. *United States v. Moyer*, 674 F.3d 192, 210 (3d Cir. 2012).

The proffered other-acts evidence was not "performed contemporaneously with the charged crime[s]," nor did it "facilitate the commission of the charged crime[s]," *id.*, and the Government does not argue to the contrary.  Instead, the Government argues that this evidence provides context for Defendant's charged threat communications and therefore goes directly to elements of the charged crimes, namely Defendant's subjective intent in making "true threats" and the objective component that Defendant transmitted communications that a reasonable person would view as a true threat. (*See* Docket No. 113 at 4). Although the Government argues that the proffered other-acts evidence is intrinsic because it "directly proves" the charged offenses, (*see id.*), the Court disagrees.  Rather, none of the proffered evidence falls within these two narrow categories of evidence deemed intrinsic by *Green*. Instead, all these exhibits relate to other acts (*i.e.*, "any other crime, wrong, or act" per Fed. R. Evid. 404(b)) and not of an act that is part of the charged offenses and so properly considered intrinsic to it. Accordingly, each proffered exhibit must be analyzed in accordance with Rule 404(b) and admitted into evidence at trial only if offered for permitted non-propensity purposes.  *See Repak*, 852 F.3d at 243; *Caldwell*, 760 F.3d at 276-78; *Brown*, 765 F.3d at 294.

    **B.  <u>Some of the Government's Proffered Other-Acts Evidence is Admissible Pursuant to Rule 404(b).</u>**

The Government alternatively contends that its other-acts evidence is nonetheless admissible extrinsic evidence proffered for specified non-propensity purposes pursuant to Rule 404(b).  *See Repak*, 852 F.3d at 241.

In undertaking this analysis, the Court is mindful of the Third Circuit's often repeated and "emphatic" admonition that Rule 404(b) must be applied with careful precision, that the Government must explain how the proffered evidence fits into a chain of inferences that connects

the evidence to a proper purpose[7] devoid of any link comprised of a forbidden propensity inference, and that this Court must also articulate, with precision, the logical chain of inferences establishing that the evidence is probative of the permissible non-propensity purpose. *Repak*, 852 F.3d at 243; *Caldwell*, 760 F.3d at 276-78; *Brown*, 765 F.3d at 294. The Court must also evaluate whether such relevant other-acts evidence gives rise to a danger of unfair prejudice that substantially outweighs the probative value of the evidence under Federal Rule of Evidence 403.

Finally, the Court notes that the proponent of the evidence, the Government here, bears the burden of both identifying a proper purpose and explaining how the proffered evidence is relevant to such purpose. *Caldwell*, 760 F.3d at 276. Controlling precedent is clear that the proffered evidence must be excluded if the proponent neglects or is unable to articulate this chain of inferences, and failure to exclude such evidence constitutes reversible error. *Id.* at 277. As described above, the Government seeks to proffer testimonial evidence of conversations with confidential human sources, along with more than sixty (60) exhibits consisting of photographic images, videos, social media posts, internet searches, and internet downloads. The Government's Supplement to its Motion categorizes this voluminous array of evidence into approximately seven (7) separate sets or categories and articulates one or more permitted uses for the admission of those exhibits within each such category. (Docket Nos. 113, 187). While the Government also articulates the requisite chain of propensity-free inferences for some exhibits, it does not do so for all its proffered exhibits. Accordingly, the Court articulates those inferential chains when readily apparent and discernable from the record. *Repak*, 852 F.3d at 245. Even so, the requisite precision-laden analysis is difficult to accomplish here given the significant volume of evidence being proffered pursuant to Rule 404(b), Defendant's objection to every such exhibit, and the

---

[7] The term "proper purpose" and "permitted use" are used interchangeably. *See* Fed. R. Evid. 404(b)(2) and *Caldwell*, 760 F.3d at 276.

Government's missing or cursory articulations of the chain of inferences in several instances despite its burden to supply those explanations.   Nonetheless, the Court now evaluates each proffered exhibit (or by category where intra-category exhibits are materially similar) through the four distinct steps as outlined in *Huddleston*, 485 U.S. at 691; *Caldwell*, 760 F.3d at 277-78.   Each exhibit or category of exhibits is addressed below *in seriatim*.

### 1.   Message Posted on Defendant's "Blitz Krieg" YouTube Account

The Government proffers evidence of a threatening message posted on Defendant's "Blitz Krieg" YouTube Account on January 22, 2019 (*i.e.*, Exhibits G-1 and G-2) to show context and background that explains why the FBI began investigating Defendant for making on-line threats. This evidentiary purpose is proper pursuant to Rule 404(b) because it is "probative of a material issue other than character."  *Huddleston*, 485 U.S. at 686; *Green*, 617 F.3d at 250.

Evidence of Defendant's other crimes, wrongs, or acts as reflected in Exhibits G-1 and G-2 explains the background and context of why FBI agents began investigating him and his threatening on-line communications, and thus may be admissible pursuant to Rule 404(b).[8]  *Green*, 617 F.3d at 250 (supplying helpful background information to the finder of fact is a proper purpose under Rule 404(b)); *United States v. O'Leary*, 739 F.2d 135, 136 (3d Cir. 1984) (identifying the need to "show the background of the charges [and] the parties' familiarity with each other" is a proper purpose); *United States v. Simmons*, 679 F.2d 1042, 1050 (3d Cir. 1982) (same).

---

[8]        Although Defendant's state of mind to be knowingly or intentionally threatening and violent rather than intending to express hyperbole, satire, or humor, would also be a proper non-propensity purpose under Rule 404(b), *see Repak*, 852 F.3d at 242, the Government does not proffer an explanation articulating a chain of inferences as to how these specific exhibits would tend to make Defendant's intent more probable in the mind of a juror without requiring the jury to make "too great a leap in logic" or infecting the inferential chain with a link implicating a propensity inference.  *Id*. at 244-45 (citing *Brown*, 765 F.3d at 293). Accordingly, at this *in limine* juncture, this evidence may not be proffered to show Defendant's violent or threatening intent without first explaining the necessary inferential steps that would decouple it from the impermissible propensity link.  *Id.* at 244 (citing *Caldwell*, 760 F.3d at 293-94).

This evidence also tends to show that the FBI agents who were subjected to Defendant's charged threat communications were "engaged in the performance of their official duties" during the course of their investigation when Defendant allegedly threatened them, as required to prove violations of 18 U.S.C. § 115 (a)(1)(B) (relating to Counts Six and Seven), and that the investigation was under the jurisdiction of "an agency of the United States" as required to prove a violation of 18 U.S.C. § 1519 (relating to Count Eight).  Indeed, this evidence is directly probative of the FBI agents' performance of official duties under the jurisdiction of an agency of the United States, in relation to Defendant, without necessitating any further inferential steps. *Repak*, 852 F.3d at 245 (citing *Brown*, 765 F.3d at 293).

The probative value of this evidence is significant. It provides the context and foundational basis for why the FBI agents began investigating Defendant and provides the initial predicate that led to the agents attempt to interview him, which then led to Defendant's subsequent interactions with the agents, including his charged conduct.  By contrast, any prejudice or confusion that evidence of this uncharged on-line threat would engender simply is not substantial enough to outweigh its significant probative value.  Indeed, there is little risk that the jury would conflate or otherwise confuse Defendant's YouTube "Blitz Krieg" posting that triggered the FBI's investigation with his later on-line postings for which he was indicted, and its admission risks engendering far less prejudice than the "heightened" prejudicial impact identified in *Caldwell*, 760 F.3d at 284, which was caused by the introduction of other-acts evidence in the form of a prior criminal conviction. *Repak*, 852 F.3d at 247-48.  Moreover, any such prejudice would be further mitigated by a limiting instruction cautioning against drawing a propensity inference.

Accordingly, Government Exhibits G-1 and G-2, along with related testimony, may be introduced into evidence for permitted uses pursuant to Rule 404(b) subject to an appropriate limiting instruction upon request.

**2. Photographs and Video from Defendant's iPhone 7 of a ROTC Cadet Denoting "[r]evenge for Baghdadi"**

The Government proffers a composite exhibit (G-27) containing two photographs and one video from Defendant's seized iPhone 7 depicting a female ROTC cadet that he followed on the campus of the University of Pittsburgh on October 30, 2019 and again on January 6, 2020, denoting that he had been following her for ten minutes and stating: "[r]evenge for Baghdadi". The Government proffers this evidence to provide context for the charges in this case, including Defendant's animosity toward law enforcement and the United States government, which the Government contends shows Defendant's intent and motive to threaten FBI agents. Context, intent, and motive are permitted non-propensity uses of other-act evidence pursuant to Rule 404(b).

While this evidence could be probative of Defendant's animosity towards representatives of the United States government, and therefore might be relevant to establish Defendant's intent and motive to threaten the FBI agents, the Government does not adequately describe the chain of inferences necessary to link this evidence to these permissible non-propensity uses. These images were taken on October 30, 2019 and January 6, 2020, respectively, which was well before Defendant interacted with the FBI agents who sought to interview him nine to eleven months later in September 2020. Therefore, any nexus between Defendant's acts of following an unidentified ROTC student and making a social media comment about it in October 2019 or January 2020, and Defendant's subsequent interactions with FBI agents in and after September 2020, is simply too attenuated to be probative of Defendant's motive in the form of animosity towards the FBI agents. Admissibility pursuant to Rule 404(b) is further thwarted at this juncture by the Government's

stated contention that it is offering this evidence to show that Defendant is willing to "take actions outside of his keyboard to intimidate" -- that is, seemingly for an impermissible propensity purpose.

Accordingly, Exhibit G-27 is not admissible pursuant to Rule 404(b) based upon the record currently before the Court.

### 3. Images and Videos of Defendant Posing in Tactical Attire, With Invented Weapons, Reciting a Pledge to the Islamic State, and Simulating Firefights

The Government proffers sixteen exhibits[9] containing various images and videos depicting Defendant posing in tactical attire and with invented weapons, making statements into the camera regarding law enforcement, reciting a pledge of allegiance to the Islamic State and its leader, and simulating shootings and firefights. The Government contends that these exhibits demonstrate relevant context in addition to Defendant's intent and motive. Context, intent, and motive are proper non-propensity purposes pursuant to Rule 404(b).

These exhibits cannot be admitted into evidence, however, unless the Government articulates the chain of inferences that tend to make Defendant's intent and motive towards terrorizing others more probable in the minds of the jurors without a propensity inference within its links. Here, the Government contends these exhibits depict Defendant simulating terrorists that he followed online by posing and dressing like them, replicating firefights, and pledging allegiance to a terrorist group. Yet, the Government does not supply the requisite inferential chain to link several of these proffered exhibits to Defendant's intent or motive with the careful precision required by *Repak, Caldwell*, and *Brown*.

---

[9]       G-30, G-34, G-35, G-36, G-48, G-49, G-50, G-51, G-52, G-53, G-54, G-55, G-56, G-59, G-60, G-61, G-62, G-63, G-65, G-66, G-95, G-100, and G-116.

Several of these exhibits are from long before the FBI began investigating Defendant for posting his Blitz Krieg YouTube message on January 22, 2019. They are:

- G-117 (video of Defendant speaking to camera addressing "the people of Europe" and their descendants, listing cities which will soon see the "troops of the Caliphate," reciting bay'ah, and simulating gunshots with his finger and a stick) (dated July 9, 2017);

- G-108 (image depicting Defendant holding severed animal heads) (dated August 27, 2017);

- G-118 (video and audio of Defendant celebrating murder of Sufis and ending with the statement "death to you all") (dated November 24, 2017);

- G-120 (video of Defendant pledging his allegiance to IS after talking with professor of a course on terrorism) (dated October 20, 2018); and

- G-110 and G-111 (images depicting Defendant wearing a mask and backpack on the front of his torso) (both dated November 21, 2018).

The Government contends that these exhibits demonstrate Defendant's generalized intent to cause terror as opposed to amusement.  (Docket No. 187 at 4).  While these exhibits *might* tend to make it more probable in the minds of the jurors that Defendant intended to cause terror, the Government has not articulated the chain of inferences necessary to link the intent the Government desires to discern from these prior other-acts to Defendant's charged threat communications.  At most, the Government superficially states that these exhibits reflect the Defendant's "long-developed and deeply rooted" intent to terrorize and further explains that these materials "shed light on his reasons for concern about law enforcement reviewing his devices."  However, the Government fails to explain how his generalized state of mind more than two years beforehand relates to Defendant's intent when communicating specific threats to the FBI agents more than two years later.  Finally, even if the Government had outlined the requisite inferential chain to establish relevant, permitted uses, these exhibits are too remote and too unspecified in relation to the charged communications and the FBI agents at issue for there to be any meaningful probative value, which

would be substantially outweighed by the danger of unfair prejudice and confusing the issues. Consequently, Exhibits G-108, G-110, G111, G-117, G-118, and G-120 are deemed inadmissible on the record currently before the Court.

Notwithstanding the foregoing, there are two additional exhibits that pre-date the January 22, 2019 Blitz Krieg YouTube post that are different in nature and probative worth. First, the Government proffers Exhibit G-99 and posits that it depicts Defendant's homemade video with sound of shooting[10] at a Pittsburgh Police Officer dated September 5, 2017. The Second exhibit, G-119, is a video depicting Defendant in a car in front of a police car with its lights on while saying "f*** the police" and singing about IS leader al-Baghdadi, dated February 13, 2018. The Government contends that these two exhibits show Defendant's animosity toward law enforcement, thus making it more likely that Defendant was motivated[11] to make true threats against the FBI agents. Here, Exhibit G-119 reflects a direct insight into Defendant's state of mind in relation to the charged threat communications because Defendant's expressions about law enforcement are specific and direct and thus do not require additional inferential links as would the more generalized images and gestures depicted in the other proffered exhibits from this time frame. Indeed, the inferential chain, such as it is, is devoid of any link consisting of a propensity inference. Moreover, while this exhibit depicting Defendant's animosity towards law enforcement may be prejudicial to him, such prejudice is not unfair nor is the probative value of Defendant's intent and motive substantially outweighed by the danger of any such prejudice, confusion of the

---

[10]    This description of G-99 comes from the Government's Supplement (Docket No. 187 at 3). However, upon review by the Court, G-99 appears to be a still image of a police officer and police vehicle taken from a distance and is materially different from the Government's description of that exhibit as being comprised of both video and audio. Consequently, the Court deems G-99 inadmissible on the current record, but without prejudice should the Government redirect the Court to a different exhibit that comports with its description referenced above for reconsideration at that juncture.

[11]    Motive is "[s]omething . . . that leads one to act." *Green*, 617 F.3d at 250 (*citing Black's Law Dictionary* at 1039 (8th ed. 2004)).

issues, etc., particularly when a limiting instruction can be offered to mitigate any concern that the jury would use this evidence to draw an improper propensity inference. Accordingly, Exhibits G-119 is admissible for the limited purposes of establishing Defendant's intent and motive, subject to an appropriate limiting instruction upon request.

Nearly all the remaining exhibits[12] are dated in proximity to, or after, the on-line threat Defendant posted on his Blitz Krieg YouTube account that triggered the FBI's investigation of him. Certain of these exhibits (*i.e.*, G-29, G-58, G-64) are photographic images of Defendant taken on January 29, 2020, which was within a week of the Blitz Krieg post. These images depict Defendant adorning tactical attire, masked, and in one instance (Exhibit G-29) pretending to aim a gun at the camera. Another exhibit, Exhibit G-121, is also dated near the time of Defendant's threatening Blitz Krieg post. It is a video depicting Defendant with a backpack and hanger simulating a gun while acting out a firefight. These exhibits provide background and context for why FBI agents began investigating Defendant. These exhibits are relevant for that purpose. *Green*, 617 F.3d at 250.

Like the evidence of Defendant's Blitz Krieg post, these exhibits are probative of the context and foundational basis for why the FBI agents considered the Blitz Krieg post to be worthy of investigative attention which, as stated above, provides the initial predicate that led to the agents' attempt to interview him, which then led to Defendant's subsequent interactions with the agents, including his charged conduct. By contrast, any prejudice or confusion these images would engender simply is not substantial enough to outweigh its probative value. Moreover, there is little risk that the jury would conflate or otherwise confuse these images of Defendant's conduct taken in temporal proximity to his YouTube "Blitz Krieg" posting for the evidentiary purpose of

---

[12]     *See* G-28, G-121, G-29, G-32, G33, G-58, G-64, and G-67.

providing background and context surrounding the FBI agents' basis for investigating him with his later threat communications for which he was indicted.  Indeed, the probative worth of these exhibits is simply not outweighed by unfair prejudice, confusion of the issues, etc. And, to the extent that there is any prejudice or confusion, however slight, it could be mitigated by a limiting instruction cautioning against drawing a propensity inference.

Accordingly, Government Exhibits G-29, G-58, G-64, and G-121, along with related testimony, may be introduced into evidence for permitted uses pursuant to Rule 404(b) subject to appropriate limiting instructions upon request.

The Government also seeks to proffer Exhibits G-28, G-32, G-33, and G-67.  These exhibits consist of images of Defendant wearing tactical attire, and two such exhibits also depict Defendant with a shooting target or at a gun store. These images were all taken after Defendant posted the threatening Blitz Krieg message and during the FBI's investigation of him. Moreover, the Government also intends to introduce other evidence of Defendant expressing concern that the FBI's review of these images would be concerning to the investigating FBI agents. These exhibits, when considered in conjunction with other evidence of his expressed concern that the FBI agents would consider this content to be problematic and possibly criminal, are probative of Defendant's knowledge and intent underlying his subsequently committed charged behavior. Moreover, Defendant's familiarity and experience shooting guns (*i.e.*, knowledge thereof) is relevant contextual and circumstantial evidence tending to make more probable the likelihood that a reasonable person would consider Defendant's charged communications to be serious expressions of an intent to inflict bodily injury when considering the context and circumstances in which these communications were made. *See Elonis*, 841 F.3d at 597. Importantly, these inferential chains can be made without reliance on a propensity link and any risk of such can be mitigated by a limiting

instruction.  Accordingly, these exhibits are relevant for these permitted purposes pursuant to Rule 404(b).

Once again, however, the analysis does not end with a 404(b) determination.  The Court must also evaluate whether such evidence, despite being relevant for such permitted uses, should nonetheless be excluded from evidence pursuant to Rule 403. Here, this evidence is meaningfully probative of Defendant's knowledge and intent, especially when considered in conjunction with Defendant's own statements made after these images were seized by the FBI but before committing his charged conduct. This case is expected to focus significantly on Defendant's state of mind underlying his charged communications and this evidence is directly related to that key issue.  By contrast, any prejudice or confusion potentially engendered by this evidence is simply not substantial enough to outweigh its probative value. And, again, to the extent that there is any prejudice or confusion, however slight, it could be mitigated by a limiting instruction.

Accordingly, Government Exhibits G-28, G-32, G-33, and G-67, along with related testimony, may be introduced into evidence for permitted uses pursuant to Rule 404(b) subject to appropriate limiting instructions upon request.

### 4.  <u>Defendant's Internet Search and Download History</u>

Next, the Government proffers twenty-three exhibits[13] pertaining to Defendant's internet search and download history. The subjects of these searches include notable terrorists, terrorist tactics such as using vehicles with large gas tanks and armored vehicles, images of ISIS fighters and other ISIS-related imagery including the precursor to a human beheading,[14] as well as certain

---

[13]    G-30, G-34, G-35, G-36, G-48, G-49, G-50, G-51, G-52, G-53, G-54, G-55, G-56, G-59, G-60, G-61, G-62, G-63, G-65, G-66, G-95, G-100, and G-116.

[14]    The Government contends that this image is one of several images and videos found on Defendant's seized devices that depict beheadings and other images of dead victims of terrorist attacks. The Government asserts that it does not intend to introduce these other images and videos at trial due to their violent content but intends only to

FBI agents and family members of one such agent. The Government contends that these exhibits demonstrate relevant context in addition to Defendant's knowledge, intent, and motive. The Government argues that these exhibits show that Defendant admired and followed famous terrorists, sought to emulate them, and that he expressly used references to terrorist attacks in his charged threat communications. The Government also argues that these images were found by FBI agents on his seized devices and through other evidence (notably, his conversations with confidential human sources) will show that Defendant was worried about the FBI having these images. Context, knowledge, intent, and motive are proper non-propensity purposes pursuant to Rule 404(b).

Of these twenty-three exhibits, twelve of them are dated after the commencement of the FBI's investigation, ranging from January 2020 through December 2020.  Six of these twelve exhibits (*i.e.*, G-34, G-35, G-36, G-59, G-60, and G-61) relate to the Tsarnaev brothers[15] who perpetrated the Boston Marathon bombing in April 2013, and one of them, G-60, is a composite purportedly made by Defendant depicting side-by-side images of himself next to Dzhokhar Tsarnaev. These images tend to make one of Defendant's possible motives (*i.e.*, emulating famous terrorists) and his intent (*i.e.*, instilling fear) for making the charged threat communications more probable than without such evidence.  The probative value of these exhibits is further strengthened when considered in conjunction with other anticipated testimony of Defendant's conversations with a confidential human source that occurred after Defendant was aware that the FBI was investigating him and shortly before he made the charged threat communications, during which

---

introduce a "fair and nonprejudicial sampling of all of the violent content located on his devices."  (Docket No. 187, at 6, n. 3).

[15]     The Government also proffers an additional five exhibits depicting images of the Tsarnaev brothers dated five years beforehand in 2015 (*i.e.*, G-48, G-49, G-50, G-51, and G-52).

Defendant discussed traveling to well-known terrorist sites, including Boston where he described laying down in the street where one of the Tsarnaev brothers was shot. Those conversations also include statements made by Defendant expressing concern that the FBI's review of these images would be concerning to the investigating FBI agents. These exhibits, when considered in conjunction with other evidence of his expressed concern that the FBI agents would consider this content to be problematic and possibly criminal, are probative of Defendant's knowledge and intent underlying his charged behavior as well as the context and circumstances within which a reasonable person would consider Defendant's charged threat communications to be serious expressions of an intent to inflict bodily injury. These inferential chains connect this other-acts evidence to context, motive, knowledge, and intent without reliance on any prohibited propensity inferences.

The Court must assess whether this evidence, though relevant and permitted pursuant to Rule 404(b), ought to be deemed inadmissible pursuant to Rule 403. Defendant's motive, knowledge, and intent are key issues contested in this case and these six exhibits, when considered in conjunction with other anticipated evidence, are significantly probative in that regard. This probative worth is not substantially outweighed by any unfair prejudice, confusion of issues, or other countervailing factors set forth in Rule 403. First, these uncharged other-acts are not of the same "prejudicial ilk" as the prior convictions introduced in *Caldwell*, 760 F.3d at 284. *See Repak*, 852 F.3d at 247-48. Moreover, any possible prejudice or confusion would be ameliorated by a limiting instruction should one be requested. *Id. at 247.*

Accordingly, Government Exhibits G-34, G-35, G-36, G-59, G-60, and G-61,[16] along with related testimony, may be introduced into evidence for permitted uses pursuant to Rule 404(b) subject to appropriate limiting instructions upon request.

Next, the Government proffers five exhibits reflecting internet searches of the Tsarnaev brothers (G-53), Omar Mateen[17] (G-54), ISIS (G-55), and guns (G-56) that were taken from Defendant's seized LG Smartphone, and the web history taken from his seized Samsung phone (G-95).   As with the other exhibits depicting the Tsarnaevs, the Government contends these internet search histories are probative of Defendant's intent and motive, as well as for overall background and context.   While Exhibits G-53, G-54, G-55, and G-56 may have some probative value for these permitted non-propensity purposes pursuant to Rule 404(b), they each reflect internet searches from 2016, which is more than two years prior to Defendant's Blitz Krieg post that triggered the FBI's investigation and approximately four years prior to Defendant's charged communications in this case. Accordingly, the probative value of this evidence is slight given the time that elapsed between these searches and those key events in this case. On balance, this slight probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and wasting time. Consequently, Exhibits G-53, G-54, G-55, and G-56 are deemed inadmissible on the record currently before the Court.

Unlike Exhibits G-53, G-54, G-55, and G-56 that reflect internet searches from 2016, Exhibit G-95 is an extraction of the Web history on Defendant's Samsung Phone reflecting internet searches during December 2020, including searches conducted on the same day that Defendant is

---

[16]   By contrast, those exhibits depicting the Tsarnaevs from 2015 are too remote from Defendant's charged threat communications and are also needlessly cumulative.  Consequently, these exhibits are deemed inadmissible pursuant to Rule 403 on the record currently before the Court.

[17]   Omar Mateen committed a mass shooting at the Pulse nightclub in Orlando Florida on June 12, 2016, and reportedly made a 9-1-1 call immediately thereafter in which he referenced the Tsarnaev brothers.

alleged to have made certain charged threat communications.  These searches include subjects such as the names of certain FBI agents who were investigating him along with a family member of one of those agents, a federal magistrate judge, as well as jihadists, SUVs with the largest fuel tanks, armored truck crashes and whether armored cars prevent one from dying in a crash.  These internet searches are probative of Defendant's state of mind near and at the time of the charged communications, particularly of Defendant's knowledge and intent. They also supply relevant contextual and circumstantial evidence tending to make more probable the likelihood that a reasonable person would consider Defendant's charged communications to be serious expressions of an intent to inflict bodily injury. *See Elonis*, 841 F.3d at 597. Importantly, these inferential chains can be made without relying upon a propensity link and any risk of such can be mitigated by a limiting instruction.  Accordingly, this exhibit is relevant for these permitted evidentiary uses pursuant to Rule 404(b).

The probative value of Exhibit G-95 to prove Defendant's knowledge and intent, as well as relevant background and context, is significant because Defendant's state of mind amid his charged threat communications is of utmost importance in this case and is heavily disputed here. These internet searches were made very close in time to the charged threat communications, with some occurring on the same day as one of the charged communications.  Importantly, several of these searches directly relate to two of the FBI agents who were targets of the charged threat communications, and other searches relate to a commonly understood method of mass homicide. Any prejudice engendered by the admission of this relevant evidence is not unfair and certainly would not substantially outweigh its probative value.  And, again, any such prejudice or confusion of the issues could be mitigated by an appropriate limiting instruction upon request.

Accordingly, Government Exhibit G-95, along with related testimony, may be introduced into evidence for permitted uses pursuant to Rule 404(b) subject to appropriate limiting instructions upon request.

Finally, the remaining six exhibits proffered by the Government include: G-62 (image depicting an ISIS fighter dated January 29, 2020), G-63 (image depicting an ISIS member with a flag dated January 29, 2020), G-65 (image depicting a screenshot pertaining to the Islamic State of Iraq dated February 20, 2020), G-66 (image depicting a screenshot including the words "Advice to the Mujahidin: Listen and Obey" dated March 2, 2020), G-100 (image depicting kneeling victim pre-beheading dated September 9, 2017), and G-116 (video and audio of ISIS Wiki dated June 16, 2017). Again, the Government asserts that these exhibits are probative of Defendant's motive, knowledge, and intent, as well as relevant background and context.

While these exhibits *might* tend to make it more probable in the minds of the jurors that Defendant intended to cause terror and not amusement (*see* Docket No. 187 at 6), the Government has not articulated the chain of inferences necessary to link the intent the Government desires to discern from Defendant's download and possession of these generalized ISIS-related images to Defendant's charged threat communications.  The Government contends that these materials explain Defendant's motive and intent "by using references to terrorist attacks that [Defendant] expressly uses in the charged threats." (*Id*.).  However, these exhibits are general depictions and not discernably related to the September 11th attack expressly referenced within the threat communication at Count One of the Indictment. The Government fails to explain how these generalized images relate to Defendant's motive, knowledge, or intent when making the specific charged threat communications.  Finally, even if the Government had outlined the requisite inferential chain, *sans* propensity link, to establish relevance here, which it has not, these exhibits

are nonetheless too unspecified[18] in relation to the charged threat communications and the FBI

agents at issue for there to be enough probative value to not be substantially outweighed by the

danger of unfair prejudice and confusing the issues.  Consequently, Exhibits G-62, G-63, G-65,

G-66, G-100, and G-116 are deemed inadmissible on the record currently before the Court.

### 5.   <u>Research into Weapons and Attempts to Build Explosives at Home</u>

Next, the Government proffers fifteen exhibits[19] pertaining to Defendant's research into

weapons and attempts to build explosives at home, along with another exhibit, G-131, which is a

report detailing Defendant's internet searches and Web history during December 2020 and early

January 2021.  The Government contends that these exhibits show Defendant's interest and

knowledge in potentially building improvised explosive devices and car bombs, that Defendant

knew the FBI had discovered these images on his seized devices[20] when he made the charged

threat communications, and that these exhibits tend to prove he intended to generate fear and thus

his charged communications were true threats. These exhibits supply relevant context in addition

to Defendant's knowledge, intent, and motive, which are proper non-propensity purposes pursuant

to Rule 404(b).

Evidence of Defendant's familiarity and experience shooting guns (*i.e.*, G-21, G-123, G-

124), making homemade mock improvised explosive devices ("IEDs") (*i.e.*, G-101, G-102, G-

---

[18]     Additionally, G-100 is dated September 9, 2017 and thus too remote from both the commencement of the
FBI's investigation and the charged threat communications themselves. Given this temporal remoteness as well as its
attenuated inferential link to permitted evidentiary uses, such evidence would be substantially outweighed by the
danger of unfair prejudice and confusing the issues given its disturbing content.

[19]     G-31, G-57, G-101, G-102, G-103, G-104, G-105, G-106, G-112, G-113, G-114A, G-114B, G-122, G-123,
and G-124.

[20]     As noted above, the Government also intends to introduce other evidence of Defendant expressing concern
that the FBI's review of his seized devices would be concerning to the investigating FBI agents. These exhibits, when
considered in conjunction with other evidence of his expressed concern that the FBI agents would consider this content
to be problematic and possibly criminal, are probative of Defendant's knowledge and intent underlying his
subsequently committed charged behavior.

103, G-104, G-105, and G-106), images depicting possession of elements such as shrapnel, ball bearings, and nails that would make such IEDs particularly harmful (*i.e.*, G-57, G-113), and internet searches for car bombs and vehicle borne IEDs (known as "VBIEDs") (*i.e.*, G-114A and G-114B) are relevant to proving that Defendant appeared to know how to use guns and make IEDs and VBIEDS. Moreover, even though the Government need not prove that Defendant intended to carry out the charged threats and retaliation, these exhibits also provide contextual and circumstantial evidence tending to make more probable the likelihood that a reasonable person would consider Defendant's charged threat communications to be serious expressions of an intent to inflict bodily injury. *See Elonis*, 841 F.3d at 597. Further, these inferential chains can be made without reliance on a propensity link and any danger of such can be mitigated by a limiting instruction. Accordingly, these exhibits are relevant for these permitted evidentiary uses pursuant to Rule 404(b).

Although several of these exhibits are from 2017, their probative worth is significant, particularly when considered in conjunction with Exhibit G-131, which is a report detailing internet searches and Web history on Defendant's iPad 2 that had been seized upon his arrest on January 6, 2021. This report reveals searches conducted in December 2020 and early January 2021, including on all four days on which Defendant's charged threat communications were made. Amidst searches for the FBI agents and their family members, other searches conducted on Defendant's Ipad at or near the same time he made the charged threat communications included: "large fuel tank SUV," "500 round drum," "Is it illegal to reverse engineer guns?" "Armour piercing incendiaries," "Fuel truck for sale," "9/11 victims pictures," Pittsburgh explosions," "Nashville explosion FBI," "US federal building Pittsburgh," "NYPD officer shot," "Metro red line shooting," as well as other FBI-related searches such as "FBI ID card template" and "FBI

Report template." Indeed, the timely searches and Web history contained in Exhibit G-131 itself supplies highly probative evidence of Defendant's motive, intent, knowledge, and plan, and the inferential chains for these purposes can be made without reliance on a propensity link and any risk of such can be mitigated by a limiting instruction. When these images and searches from 2017 to 2020 are considered in conjunction with these more contemporaneously conducted searches undertaken in December 2020 and early January 2021, Defendant's knowledge of guns, IEDs, and VBIEDs, and the nexus to his state of mind (notably, his knowledge and intent) at the time he made the charged threat communications becomes significantly more probative.[21]   Moreover, Defendant's familiarity, knowledge, and experience (regardless of whether perceived or actual) with guns, IEDs, and VBIEDs is relevant contextual and circumstantial evidence tending to make more probable the likelihood that a reasonable person would consider Defendant's charged threat communications to be serious expressions of an intent to inflict bodily injury. *See Elonis*, 841 F.3d at 597. Given the significant probative worth of these exhibits and their direct inferential linkage to Defendant's state of mind at the time he made the charged threat communications, their introduction into evidence would not be substantially outweighed by any danger of unfair prejudice, confusing the issues, etc., and any potential danger of such could be mitigated by an appropriate limiting instruction upon request.  Therefore, these exhibits will not be excluded from evidence pursuant to Rule 403.

---

[21]      However, one of these exhibits, G-112, is an image from November 13, 2017 depicting a handwritten drawing of a rocket warhead and gunpowder, and thus lacks the nexus to Defendant's December 2020 – January 2021 internet searches and Web history that link Defendant's knowledge of guns, IEDs, and VBIEDs with his internet searches for those topics contemporaneously with his charged threat communications. Consequently, Exhibit G-112, standing on its own and without any discernable linkage to the FBI's investigation, the FBI agents at issue, or Defendant's charged threat communications, and conducted nearly three years prior to those charged threat communications, lacks the same degree of probative worth as do these other exhibits. Accordingly, on the present record, the danger of unfair prejudice and confusion of issues substantially outweighs the minimal probative worth supplied by Exhibit G-112 so this exhibit shall be excluded from evidence at trial pursuant to Rule 403.

Accordingly, Government Exhibits G-31, G-57, G-101, G-102, G-103, G-104, G-105, G-106, G-113, G-114A, G-114B, G-122, G-123, G-124, and G-131, along with related testimony, may be introduced into evidence for permitted uses pursuant to Rule 404(b) subject to appropriate limiting instructions upon request.

### 6.  <u>Compilation of Violent Social Media Posts</u>

The Government proffers Exhibit G-69 which purports to be a short compilation of eleven social media posts reflecting Defendant's violent and hostile mentality.  The Government contends that this exhibit demonstrates Defendant's longstanding hostility toward police and government as well as his interest in violence and fear, thus providing proof of context and motive for Defendant's charged threat communications.  Defendant counters, (*see* Docket No. 201 at 3-4), that these prior statements do not specifically relate to the FBI and thus are reliant upon the proposition that Defendant "arguably threatened others with violence, [so] he is likewise [threatening] the FBI in the present charges. Such a purpose relies on the propensity inference that because [Defendant] made threatening or violent internet comments, one to three years before the alleged statements in this case, he must have intended to threaten the FBI agents investigating him in 2020." (*Id*. at 3). Such context and motive are proper purposes pursuant to Rule 404(b) if uninfected with an impermissible propensity inference.

Most of these proffered postings supply evidence of Defendant's generally violent character, and in a few instances the posts show specific hostility towards Europeans and non-Muslims. Defendant argues that the Government interjects an inference that he had a propensity to act in accordance with that violent and hostile character when making his charged threat communications.  As the proponent of this evidence, the Government is dutybound to articulate with "careful precision" a clear chain of inferences devoid of an impermissible propensity link but

has not satisfied its burden of doing so here. *See Repak*, 852 F.3d at 244. The Court, upon undertaking its own review of the record, is also unable to articulate such a chain of permissible inferences. For instance, despite contending that these postings illustrate Defendant's hostility towards police, there are no identifiable references to police or law enforcement in any of them.

Even if the requisite inferential chain without the impermissible propensity link could be articulated, these exhibits are nonetheless too temporally remote and too unspecified in relation to the charged communications and the FBI agents at issue. Therefore, introducing these postings at trial would pose a danger of unfair prejudice and confusing the issues that substantially outweighs any probative value these postings would supply. Consequently, the social media postings contained in Exhibit G-69 from the following dates are deemed inadmissible on the record currently before the Court pursuant to Rule 403: (i) August 12, 2017; (ii) August 17, 2017; (iii) September 8, 2017; (iv) September 15, 2017; (v) September 19, 2017; (vi) September 22, 2017; (vii) May 28, 2018; (viii) June 16, 2018; (ix) August 25, 2018; (x) October 7, 2018; and (xi) December 15, 2018.

However, one of the postings contained within this Exhibit is materially different than the others and based upon the record currently before the Court may be probative of one or more permitted evidentiary uses. The posting dated July 16, 2018 is a specific reference to the Tsarnaev brothers and may tend to make one of Defendant's motives (*i.e.*, emulating the Tsarnaev brothers) and his intent (*i.e.*, the power of instilling terror) for making the charged threat communications more probable than without such evidence. While this posting is dated six months prior to the Blitz Krieg YouTube post that commenced the FBI's investigation, it is a statement directly attributed to Defendant bearing upon his emulation of the Tsarnaevs and upon his intention for instilling terror. As such, it possesses more probative worth than simply possessing some of the older images

of the Tsarnaevs downloaded to Defendant's devices long ago. The probative value of this posting is further increased when considered in conjunction with other anticipated evidence pertaining to the Tsarnaev brothers and related references within Defendant's conversations with a confidential human source as discussed in greater detail above. These inferential chains connect this other-acts evidence to context, motive, and intent without reliance on any prohibited propensity inferences. Even so, and as discussed above in relation to other evidence of the Tsarnaev brothers deemed admissible pursuant to Rule 404(b), the meaningfully probative value of this evidence is not substantially outweighed by the danger of unfair prejudice, confusion of issues, etc. and such concern, if any, can be further mitigated by an appropriate limiting instruction upon request. Consequently, Defendant's social media post referencing the Tsarnaev brothers made on July 16, 2018 is admissible for these non-propensity purposes pursuant to Rule 404(b).

### 7. Audio Records, Transcripts, and Whats App Conversations Between Defendant and Confidential Human Source

The Government seeks to proffer Exhibits G-127 through G-130 comprised of audio recordings, transcripts of those recordings, and WhatsApp conversations between Defendant and a confidential human source. The Government proffers this evidence to provide general context for the charges in this case, as well as Defendant's motive for making the charged threat communications and for altering or deleting evidence. The Government also contends that these discussions show Defendant's knowledge and concern that the FBI was looking at the many images (discussed above) found on his seized devices when he made the charged threat communications, and that such evidence tends to make more probable the likelihood that a reasonable person would consider Defendant's charged threat communications to be serious expressions of an intent to inflict bodily injury when considering the context and circumstances in which the charged threat communication were made. *See Elonis*, 841 F.3d at 597. Context,

34

knowledge, intent, and motive are relevant and admissible non-propensity purposes pursuant to Rule 404(b).

These conversations occurred on and around the time Defendant made the charged threat communications. This testimony provides Defendant's own statements regarding the charged threat communications themselves, as well as his knowledge, intent, and motives for making these communications. The purposes for which the Government intends to proffer this evidence relates to Defendant's knowledge, intent, and motives for making the charged threat/retaliation communications and for altering or deleting online postings. The inferential chains for establishing these permitted evidentiary uses is devoid of any propensity link, so this evidence is relevant and thus admissible pursuant to Rule 404(b)(2) so long as its probative value is not substantially outweighed by a danger of unfair prejudice, confusion of issues, etc. as provided for by Rule 403. Here, these essentially contemporaneous conversations directly related to the charged threats themselves, as well as the specific FBI agents and Defendant's knowledge and concern about what the agents knew about him from his seized devices. Such evidence is highly probative in this case in which Defendant's state of mind is both important and disputed, and it presents little to no danger of unfair prejudice or confusion of issues and certainly not enough to substantially outweigh its probative value.  Nonetheless, any such prejudice or confusion may be ameliorated by an appropriate limiting instruction upon request.

Accordingly, Exhibits G-127 through G-130 may be admitted for permitted purposes pursuant to Rule 404(b).

## IV.   <u>**CONCLUSION**</u>

For the reasons set forth herein, the Government's Motion *In Limine* Regarding Admissibility of Intrinsic Evidence, or in the Alternative, 404(b) Evidence (Docket No. 113) is granted in part and denied in part.

An appropriate Order follows.

<u>*s/ W. Scott Hardy*</u>
W. Scott Hardy
United States District Judge


November 29, 2021


cc/ecf:  All counsel of record