IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,　　　）
　　　　　　　　　　　　　　　）
　　　v.　　　　　　　　　　　 ）
　　　　　　　　　　　　　　　）　　Criminal No. 21-110
KHALED MIAH,　　　　　　　　 ）
　　　　　　　　　　　　　　　）
　　　Defendant.　　　　　　　 ）

**MEMORANDUM ORDER**

Defendant Khaled Miah is charged in an eight-count Indictment with the following: five counts of making interstate threats to injure FBI agents, in violation of 18 U.S.C. § 875(c); two counts of influencing and/or retaliating against FBI agents by threat, in violation of 18 U.S.C. § 115(a)(1)(B); and one count of altering and deleting records in a federal investigation, in violation of 18 U.S.C. § 1519.  (Docket No. 33).  Jury selection and trial are scheduled to commence on December 7, 2021.  (Docket No. 109).  Presently before the Court is Defendant's Motion to Reconsider Admissibility of Government Exhibit G-69 (Docket No. 231), which is opposed by the Government. (Docket No. 239).  Defendant's Motion for Reconsideration will be granted, in part, in that the Court will reconsider the admissibility of the challenged post contained in Government Exhibit G-69, but the post will be admitted at trial in this case for the reasons explained herein.

On November 29, 2021, the Court entered a Memorandum Opinion and Order granting in part and denying in part the Government's Motion in Limine Regarding Admissibility of Intrinsic Evidence, or in the Alternative, 404(b) Evidence.  (Docket Nos. 222, 223).  Relevant here, the Government proffered Exhibit G-69, which purports to be a short compilation of social media postings reflecting Defendant's violent and hostile mentality.  The Court determined that the social media posts contained in Exhibit G-69 from the following dates are inadmissible on the current record pursuant to Rule 403: (i) August 12, 2017; (ii) August 17, 2017; (iii) September 8, 2017;

1

(iv) September 15, 2017; (v) September 19, 2017; (vi) September 22, 2017; (vii) May 28, 2018; (viii) June 16, 2018; (ix) August 25, 2018; (x) October 7, 2018; and (xi) December 15, 2018. (Docket No. 222 at 33).  However, the Court found that Defendant's social media post contained in Government Exhibit G-69 referencing the Tsarnaev brothers made on July 16, 2018 is admissible for certain non-propensity purposes pursuant to Rule 404(b).  (*Id.* at 34).  In so ruling, the Court explained as follows:

> The posting dated July 16, 2018 is a specific reference to the Tsarnaev brothers and may tend to make one of Defendant's motives (i.e., emulating the Tsarnaev brothers) and his intent (i.e., the power of instilling terror) for making the charged threat communications more probable than without such evidence. While this posting is dated six months prior to the Blitz Krieg YouTube post that commenced the FBI's investigation, it is a statement directly attributed to Defendant bearing upon his emulation of the Tsarnaevs and upon his intention for instilling terror. As such, it possesses more probative worth than simply possessing some of the older images of the Tsarnaevs downloaded to Defendant's devices long ago.  The probative value of this posting is further increased when considered in conjunction with other anticipated evidence pertaining to the Tsarnaev brothers and related references within Defendant's conversations with a confidential human source as discussed in greater detail above.  These inferential chains connect this other-acts evidence to context, motive, and intent without reliance on any prohibited propensity inferences.  Even so, and as discussed above in relation to other evidence of the Tsarnaev brothers deemed admissible pursuant to Rule 404(b), the meaningfully probative value of this evidence is not substantially outweighed by the danger of unfair prejudice, confusion of issues, etc. and such concern, if any, can be further mitigated by an appropriate limiting instruction upon request.

(*Id.* at 33-34).

On December 1, 2021, Defendant filed the Motion to Reconsider the admissibility of the July 16, 2018 post contained in Government Exhibit G-69 because the defense learned after the Court issued the Memorandum Opinion that the Exhibit omits a crucial portion of the language contained in that post.  (Docket No. 231 at 1).  The entire post, including the underlined portion

which was absent from the iteration of Exhibit G-69 which had been provided to and analyzed by

the Court, states as follows:

> Muslims today have no power.  They are dominated everywhere in the world.  In the lands of Islam Muslims are dominated by the secular regimes that the west put into power decades ago.  In the lands of the west they are harassed and threatened by the population and the leaders of those nations.  The entire world knows that they are weak because they fail to produce a response.  Never under estimate the power of a response.  Lest I remind of the 2 brothers in Boston or the 2 brothers in Paris that shut down the entire city and country and made them drop to their knees inside their homes with locked doors as they felt the harsh gust of terror t [sic] enter their hearts.  That is where power lies today.  Not through protests, not through boycotts, not through rants, but TERROR.

(*Id.* at 3; Docket Nos. 231-1; 231-2).   Defendant submits that the underlined portion of the

Government's Exhibit indicates that the post is not about the Tsarnaev brothers or his emulation

of them, but rather Defendant's view that Muslims in the "lands of Islam" did not respond to what

he believed where threats by "the west" and "secular regimes" in those "lands."  (Docket No. 231

at 3).  As such,  Defendant maintains that labeling the post as "a specific reference to the Tsarnaev

brothers" or as "Defendant's social media post referencing the Tsarnaev brothers" is no longer

appropriate.  (*Id.*).  According to Defendant, viewing the full post changes the Rule 404(b) and

403 analysis,[1] thus Defendant requests that the Court reconsider its ruling on the admissibility of

the July 16, 2018 post contained in Government Exhibit G-69.  (*Id.* at 6).

The Court initially notes that a motion for reconsideration may be filed in a criminal case.

*See United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003).  "A motion for reconsideration is

not to be used as a means to reargue matters already argued and disposed of or as an attempt to

---

[1]      Defendant contends that the full post undercuts the argument that it shows motive or intent to threaten to injure the FBI agents, and any probative value of the post is substantially outweighed by the prejudice to him and the risk of misleading and confusing the jury, which cannot be mitigated by a limiting instruction alone.  (Docket No. 231 at 4-5).

relitigate a point of disagreement between the Court and the litigant." *Donegan v. Livingston*, 877

F. Supp. 2d 212, 226 (M.D. Pa. 2012) (citation omitted).  Therefore, the Court may grant a motion

for reconsideration only if the moving party shows: (1) an intervening change in the controlling

law; (2) the availability of new evidence which was not available when the court issued its order;

or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice.  *United*

*States v. Banks*, Crim. No. 03-245, 2008 WL 5429620, at *1 (W.D. Pa. Dec. 31, 2008) (citing

*Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).  In sum,

"motions for reconsideration should be granted sparingly and may not be used to rehash arguments

which have already been briefed by the parties and decided by the Court."  *PBI Performance*

*Prods., Inc. v. NorFab Corp.*, 514 F. Supp. 2d 732, 743–44 (E.D. Pa. 2007) (citation omitted).

As a basis for reconsideration here, Defendant points to the availability of new evidence

which was not available when the Court issued its order.  To that end, Defendant correctly notes

that the Court did not have available to it all of the language contained in the July 16, 2018 post

when it issued the Memorandum Opinion and Order on November 29, 2021.  Accordingly, the

Court finds that reconsideration is warranted, but nonetheless concludes that the post in question

is admissible at trial for the following reasons.

First, the complete social media post still contains the references to the Tsarnaevs as an

example of the power of terror, so the inferential chain that was articulated in the Court's

Memorandum Opinion remains valid and the newly revealed text does not insert a disqualifying

propensity link. As such, this evidence still permits the jury to consider an inferential chain that

may tend to prove context, motive, and intent without being infected by a non-propensity link.

Again, the newly revealed text does not nullify the probative value of Defendant's statement here,

particularly when considered in conjunction with other anticipated evidence pertaining to the

Tsarnaevs and related references within Defendant's conversations with a confidential human source.

Defendant argues that the Government desires to proffer this evidence for a character or propensity purpose. However, in its Response, the Government incorporates this additional text into the inferential chain that it contends connects Defendant's perception of the state of Muslims "in the lands of the west" to the Tsarnaevs, about whom Defendant further expresses a belief that they solved this perceived problem through the power of terror. This inferential chain leads directly to Defendant's motive and intent. The Government further contends that this evidence permissibly shows Defendant's state of mind that the proper response to perceived harassment and threats is to follow the Tsarnaevs' example (*i.e.*, motive) by instilling terror (*i.e.*, intent). Accordingly, as set forth in the Court's Memorandum Opinion and again now, this post (both with and without the newly revealed portion) tends to establish Defendant's motive and intent for making the charged threat communications more probable than without such evidence and does so without reliance upon an impermissible purpose.

Finally, Defendant contends that this post, when considered in its totality, is too remote and too unspecified in relation to the charged communications and the FBI agents at issue for there to be any meaningful probative value. Again, as set forth above, the newly revealed text does not nullify its probative value of Defendant's motive and intent, which is particularly strong here where Defendant directly contests those issue in this case. To the extent the Government does not proffer this post in its totality, Defendant may introduce it pursuant to Fed. R. Evid. 106, and regardless of which party proffers the complete text, Defendant may use it to challenge its evidentiary weight or credibility pursuant to Fed. R. Evid. 104 (e). Accordingly, such evidence does not unfairly prejudice Defendant nor confuse the issues or mislead the jury. Indeed, this

additional text does not diminish the probative value of the originally proffered text to the point where its value would be substantially outweighed by a danger of unfair prejudice, confusion of the issues, or misleading the jury, to render it inadmissible pursuant to Fed. R. Evid. 403.  And, any such concerns about prejudice or confusion can be further mitigated by an appropriate limiting instruction upon request.

Based on the foregoing, the Court enters the following Order:

AND NOW, this 4th day of December, 2021, IT IS HEREBY ORDERED that Defendant's Motion to Reconsider Admissibility of Government Exhibit G-69 (Docket No. 231) is GRANTED IN PART as to Defendant's request to reconsider the admissibility of the July 16, 2018 post contained in Exhibit G-69;

IT IS FURTHER ORDERED that the Motion is DENIED as to Defendant's request to deem the July 16, 2018 post inadmissible at trial; and,

For reasons stated herein, the Court reaffirms its ruling as to the admissibility of the July 16, 2018 post contained in Government Exhibit G-69, and therefore IT IS FURTHER ORDERED that said post is admissible at trial in this case.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf:  All counsel of record

6