**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 21-110 |
| KHALED MIAH, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>TENTATIVE FINDINGS AND RULINGS</u>**

On March 16, 2021, Defendant Khaled Miah was charged in an eight-count Indictment with the following: five counts of making interstate threats to injure FBI agents, in violation of 18 U.S.C. § 875(c), for conduct occurring on or about December 27, 2020, December 28, 2020, December 29, 2020, December 30, 2020 and December 31, 2020 (Counts One through Five, respectively); two counts of influencing and/or retaliating against FBI agents by threat, in violation of 18 U.S.C. §§ 115(a)(1)(B) and 115(b)(4), for conduct occurring on or about December 30, 2020 and December 31, 2020 (Counts Six and Seven, respectively); and one count of altering and deleting records in a federal investigation, in violation of 18 U.S.C. § 1519, for conduct occurring from on or about October 5, 2020 to and including January 1, 2021 (Count Eight).  (Docket No. 33).  Following a jury trial, on December 17, 2021, Defendant was found guilty of the charges in Counts One, Two, Three, Four, Five, Six and Eight of the Indictment in this case.  (Docket Nos. 276, 280).

The U.S. Probation Office prepared a Presentence Investigation Report ("PIR") dated February 28, 2022.  (Docket No. 287).  Pursuant to the Local Criminal Rules and in accordance

with the Court's Presentence Order (Docket No. 282), counsel for the Government and for Defendant each had an opportunity to submit objections to the PIR.  On March 7, 2022, the Government filed its Position with Respect to Sentencing Factors, indicating that it has no objections to the PIR.  (Docket No. 289).  On that same date, Defendant filed his Position with Respect to Sentencing Factors, asserting numerous objections to the PIR which will be discussed below.  (Docket No. 291).  The Government then responded to Defendant's Objections, and Defendant replied thereto.  (Docket Nos. 296, 300).

On April 13, 2022, the Probation Office prepared an Addendum, wherein it addressed Defendant's objections to the computation of the advisory guideline range, indicating that the PIR remains unchanged in that regard.  (Docket No. 309 at 1).  The Addendum amended ¶¶ 3, 24, 25, 48 and 50 to correct typographical errors or supply additional clarifying information, and also provided summaries of two psychological evaluation reports of Defendant, which were prepared during the pendency of this case, but inadvertently omitted from the PIR.  (*Id.* at 2-4).

The Court subsequently ordered the Government to supplement its Response to Defendant's Objections to the PIR to provide the specific trial transcript page references it previously indicated it would be willing to supply after the transcripts were finalized, and that supplement was filed on July 22, 2022.  (Docket Nos. 311, 312).  On August 1, 2022, Defendant lodged an objection to consideration of Special Agent ("SA") Hassanpoor's trial testimony regarding Defendant's alleged solicitation of a straw purchase of a firearm as evidence to support application of the enhancement under Guideline § 2A6.1(b)(1).  (Docket No. 313).  On August 19, 2022, the Court entered an Amended Presentence Order relative to the remaining presentence deadlines in this case.  (Docket No. 314).  Accordingly, Defendant's Objections to the PIR are

now ripe for disposition in advance of the sentencing hearing scheduled to occur on October 18, 2022.

### I.    Standard for Objections to PIR

It is Defendant's burden to make "a timely and substantial objection" to the facts set forth in the PIR.  *United States v. Morales-Aponte*, 229 F. App'x 69, 72 (3d Cir. 2007); *see also United States v. Cyr*, 337 F.3d 96, 100 (1st Cir. 2003) ("Generally, a PSR bears sufficient indicia of reliability to permit the district court to rely on it at sentencing.  The defendant is free to challenge any assertions in the PSR with countervailing evidence or proffers, in which case the district court is obliged to resolve any genuine and material dispute on the merits. But if the defendant's objections to the PSR are merely rhetorical and unsupported by countervailing proof, the district court is entitled to rely on the facts in the PSR.") (citations and internal quotation marks omitted). Thus, a defendant must both raise an objection to the PIR and support said objection with proper legal authority and evidentiary support.

The resolution of a factual dispute is governed by the preponderance of the evidence standard.  *See United States v. Fisher*, 502 F.3d 293, 304-05 (3d Cir. 2007); *see also* U.S.S.G § 6A1.3, Comm. Note ("[U]se of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case.").  Further, "[i]n resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."  U.S.S.G. § 6A1.3(a).  Finally, any facts that are not disputed by the parties may be adopted by the Court as

findings of fact.  *See* Fed. R. Crim. P. 32(i)(3)(A) ("At sentencing, the court may accept any undisputed portion of the presentence report as a finding of fact.").

A.  *Defendant's Objections to Factual Background and Offense Conduct*

Defendant objects to the PIR's "limited and incomplete factual background and offense conduct relevant to [his] sentencing guidelines calculation." (Docket No. 291 at 1).  This objection is overruled for reasons that follow.

Before addressing Defendant's specific objections, the Court initially notes that the PIR provides a ***summary*** of the offense conduct, as it would be entirely impossible for the Probation Office to repeat every detail of the trial testimony and evidence.  The Court presided over the trial in this case and therefore is well aware of the factual background of the matter.

Turning to Defendant's specific objections to the factual background and offense conduct, he first contends that ¶ 1 of the PIR incorrectly states that he was charged with influencing a federal officer by threats from in and around October 5, 2020, to in and around January 1, 2021, in violation of 18 U.S.C. § 115(a)(1)(B).  (Docket No. 291 at 1).  To be clear, ¶ 1 of the PIR states that the Government filed a criminal complaint charging Defendant with that offense on the listed dates, as well as other offenses.  (Docket No. 287, ¶ 1).  That statement is accurate, as the ***criminal complaint*** against Defendant filed on January 5, 2021 charges him accordingly.  (Docket No. 2).  As the PIR reports, the grand jury subsequently returned an ***Indictment*** charging Defendant with violation of  § 115(a)(1)(B) on or about December 30, 2020 and December 31, 2020.  (Docket Nos. 33 at 9; 287, ¶ 4).  The Court is cognizant of the date difference for the § 115(a)(1)(B) offense as between the criminal complaint and the Indictment, both of which are correctly reported in the

PIR.  Furthermore, the PIR otherwise correctly summarizes the charging documents, including the dates of the offense conduct.

Defendant next contends that ¶ 9 of the PIR vaguely describes the online tip the FBI received from Mosul Medic regarding Defendant's YouTube comments in January 2019, and thus "inaccurately represents them as being more serious/more harmful/something like that than they are." (Docket No. 291 at 2).  Defendant believes that the PIR should include the actual comments, which he cites, to provide "an accurate picture of [his] statements and their tone." (*Id.*).  The Court notes that the PIR summarizes the comments as "threatening bodily harm" to another and "alluding to a potential violent attack in the United States."  (Docket No. 287, ¶ 9).  Defendant's quoted comments contained in his Objection include the statement, "I wanna cut your balls off Mosul Medic," (Docket No. 291 at 2), which does threaten bodily harm.  Further, Defendant's statement, "hey Medic you'll be needed in America not Mosul.  We are all here Tick Tock" and "you'll find out very soon, soon, soon," (*see id.*), does appear to allude to a potential attack.  In the Court's estimation, the PIR presents an accurate ***summary*** of these comments, but it will consider Defendant's actual comments as set forth in his Objection.

Defendant also objects to ¶¶ 12 and 14 of the PIR, which describe Twitter posts he made regarding SA Nicholas Edquist and his wife.  (Docket No. 291 at 2).  According to Defendant, the descriptions give "a false impression that they were more severe than the reality.  The tone and language of these messages is critical to show that they were mocking, ridiculing, non-serious trolling-type language frequently used behind the anonymity of the internet." (*Id.*).  Despite this argument, Defendant does not present any countervailing evidence to challenge the ***summary*** of his Twitter posts contained in ¶¶ 12 and 14.  Furthermore, as the Government points out in its

response, though Defendant "*may* have posted other Tweets not referenced in the PSR which *could*

be construed by some as less serious or attempts to mock the Special Agent and his wife and/or

others, the jury did not buy that argument at trial. . . . [Defendant] showed the jury pages upon

pages of [his] allegedly 'mocking' posts, yet it still found [him] *guilty on all of the* threat counts."

(Docket No. 296 at 5) (emphasis in original).

Finally, Defendant objects to ¶ 17 of the PIR describing Government exhibits consisting

of reports from a review of Defendant's seized smartphone and second iPad.  (Docket No. 291 at

3).  According to Defendant, the agents who were the subject of the threat counts cherry-picked

certain searches related to guns and explosives, excluded others and presented them out of order,

yet Defendant did not seek out or purchase any such items.  (*Id.*).  Despite Defendant's position,

the PIR accurately states that the exhibits related to the contents of Defendant's smartphone and

second iPad, including searches that he "conducted in December 2020 and early January 2021 for

the agents and their family members by name, as well as topics relating to explosives, guns,

terrorists, violence, and incendiaries, among other things.  The review of the devices also revealed

that [Defendant] had saved images of the FBI agents and the agents' family members and pets on

his devices." [1]  (Docket No. 287, ¶ 17).  In the Court's estimation, the PIR fairly **summarizes** the

---

[1]      At trial, the jury was given a limiting instruction explaining the purpose for which the exhibits were admitted. By example, the Court gave the following limiting instruction prior to admission of G-131, which was a report concerning Defendant's seized devices:

> Ladies and gentlemen, you will hear testimony and see an exhibit that is a report of the defendant's online searches and web history during December 2020 and January of 2021 from the defendant's iPad II that was seized during his arrest on January 6th, 2021.  This evidence of other acts is admitted for only limited purposes.  You may consider this evidence for the purpose of deciding the defendant's state of mind and, particularly, the defendant's knowledge, intent, and motive to make true threats to injure FBI agents as charged in Counts 1 through 5 of the indictment and/or the defendant's knowledge, intent or motive to threaten to assault FBI agents as charged in Counts 6 and 7 of the indictment.  You may also consider this evidence as to whether the defendant was planning to commit the acts charged in the indictment.  Furthermore, you may also consider this evidence as to whether it may be more probable that a reasonable person would consider the

referenced exhibits; however, the Court presided over the trial and is aware that Defendant did not purchase firearms or explosives.

In summary, the Court overrules Defendant's specific objections to ¶¶ 1, 9, 12, 14 and 17 of the PIR.  Given that Defendant did not otherwise lodge a specific objection to other paragraphs of the "Charges and Convictions" and  "Offense Conduct" sections of the PIR, *see Morales-Aponte*, 229 F. App'x at 72 (explaining that a defendant has the burden to make "a timely and substantial objection" to the facts contained in the PIR), the Court adopts ¶¶ 1-24 in ruling on Defendant's other Objections to the PIR and in calculating his advisory guidelines range.

*B.  Defendant's Objection to Applicability of Guideline § 2A6.1(b)(1)*

Defendant objects to ¶ 31 of the PIR which applies a 6-level increase under Guideline § 2A6.1(b)(1) for conduct evidencing an intent to carry out the threats.  (Docket No. 287, ¶ 31). Defendant contends that the PIR does not explain how his conduct in looking up the agents, posting their public information, or driving his vehicle in the vicinity of SA Edquist's residence or the FBI Pittsburgh Field Office shows his intent to carry out his threats, and he further maintains that he did not commit any overt act sufficient to warrant the enhancement.  (Docket No. 291 at 4-7). Defendant's objection to application of § 2A6.1(b)(1) is overruled.

---

defendant's charged threat communications to be serious expressions of intent to inflict bodily injury.  You should not consider this evidence for any other purpose. Of course, it is for you to determine whether you believe this evidence and, if you do believe it, whether you accept it for the purposes offered. You may give it such weight as you feel it deserves, but only for the limited purposes that I've described to you. The defendant is not on trial for committing these other acts. You may not consider evidence -- the evidence of these other acts as a substitute for proof that the defendant committed the crimes charged. You may not consider this evidence as proof that the defendant had a bad character or a propensity to commit crimes. Specifically, you may not use this evidence to conclude that because the defendant may have committed the other acts, he must also have committed the acts charged in the indictment. Once again, do not return a guilty verdict unless the government proves the crimes charged in the indictment beyond a reasonable doubt.

(Docket No. 305 at 15-16).

Pursuant to Guideline § 2A6.1(b)(1), a 6-level increase applies "[i]f the offense involved any conduct evidencing an intent to carry out such threat."  The applicability of  this enhancement "does not depend on the defendant's actual intent, which could exist regardless of whether any actions were taken toward carrying it out; rather it depends on whether or not the defendant engaged in conduct from which the court permissibly infers such an intent."  *United States v. Berndt*, 127 F.3d 251, 259 (2d Cir. 1997).  In determining whether this enhancement applies, the commentary to § 2A6.1(b)(1) explains that "the court shall consider both conduct that occurred prior to the offense and conduct that occurred during the offense; however, conduct that occurred prior to the offense must be substantially and directly connected to the offense, under the facts of the case taken as a whole."  U.S.S.G. § 2A6.1(b)(1), Application Note 1.  Additionally, the Third Circuit Court of Appeals requires the defendant to have engaged in an overt act to warrant application of the enhancement.  *United States v. Brodie*, 824 F. App'x 117, 121 (3d Cir. 2020) (citing *United States v. Green*, 25 F.3d 206, 211 (3d Cir. 1994) (concluding a defendant's request that his police officer friend run a license plate check of his victim constituted an overt act)).

Defendant's argument that the enhancement is inapplicable focuses on what he did not do – *i.e.*, he did not approach the FBI Pittsburgh Field Office or SA Edquist's residence, he did not do anything inappropriate at those locations, and he did not buy explosives or firearms.  (Docket No. 291 at 5).  What Defendant did not do, however, is not necessarily dispositive.  *See e.g., United States v. Nissen*, 492 F. Supp. 3d 1254, 1277 (D.N.M. 2020) ("Although buying weapons around the time the defendant makes a threat is strong evidence of intent, . . . that a defendant did not acquire new weapons around the time he or she made threats does not render § 2A6.1(b)(1) inapplicable. . . .").  Rather, the Court must examine whether Defendant "engaged in conduct from

8

which [it] permissibly infers such an intent" to carry out the threats of conviction. *See Berndt*, 127 F.3d at 259.   In this Court's estimation, evidence admitted at trial establishes that Defendant engaged in conduct prior to and around the time of the threat offenses of conviction which demonstrates his intent to carry out those threats.

In reaching this conclusion, the Court first takes specific note of the threats of conviction, all of which were made on Twitter:

- December 27, 2020 - "Currently eating pasta and watching the second plane hit the south tower.  Nick, Dave, Mike and the whole bureau, the deed will be done at a time which is most opportunistic for me, chosen by myself."

- December 28, 2020 - "The zero hour is approaching"

- December 29, 2020 - "38° 53' 42.7" N, 77° 1' 33" W"

- December 30, 2020 - "Rasheed, Dave, Nick, Mike … how's your investigation going? Things are looking "bright" in 2021.  Did you find the Saudi passports?"

  "2001-2021 is 20 years.  An entire generation, yet men like me still exist and pop up into existence.  Next time you come in cowboy with the crew, the hardwood will collapse beneath your feet."

- December 31, 2020  - "Remember boys, the more eyes on me, the less eyes on the others.  Regardless, yellow tapes will flow"

(Docket No. 33 at 8).  Defendant's threats are directed to FBI agents or references the FBI, such as by mentioning "the whole bureau" and listing the coordinates of the FBI building in Washington, DC.  As Defendant acknowledges, the FBI agents testified at trial that they interpreted these threats as threats to conduct some type of terrorist attack against them based on Defendant's references to 9/11 and reference to the coordinates of the FBI headquarters in Washington, DC. (Docket No. 291 at 4).  Accordingly, the Court must assess Defendant's conduct prior to, and

around the time of December 27 to December 31, 2020, to determine whether his conduct evidenced an intent to carry out the threats.

Defendant's conduct which began after the FBI unsuccessfully attempted to interview him in late September 2020 is the relevant starting point of the analysis. At that time and into October 2020, Defendant began researching SA Edquist (and his family). (*See* Docket Nos. 287, ¶¶ 10-11; 302 at 111-115, 207-211; 303 at 4-7). Not only did Defendant research SA Edquist online, evidence admitted at trial shows that he traveled to the vicinity of SA Edquist's residence on several occasions following the FBI's attempt to interview him in late September 2020, he traveled to the vicinity of the FBI Pittsburgh Field Office late at night or during non-business hours on multiple occasions between November 2020 and early January 2021, and he visited a shooting range on one of the days he made a threatening post. (*See* Docket No. 287, ¶¶ 16, 24). Further, during December 2020, Defendant continued to perform online research of the agents (and their families and pets) listed in the threats, with a particular focus on SA Edquist, and he researched weapons, explosives and violence. (*See e.g.*, Docket Nos. 287, ¶ 17; 303 at 8-10; 305 at 18-20, 22-32).

Viewing Defendant's conduct just described under the facts of this case as a whole, the Court finds that he engaged in a series of overt acts beginning in late September 2020 after the FBI attempted to interview him through December 2020, which were directed at the FBI agents and connected to the threats he leveled between December 27 and December 31, 2020. To repeat, these overt acts included Defendant researching the agents, travelling to the vicinity of one agent's residence, travelling to the vicinity of the agents' place of employment at the FBI Pittsburgh Field Office at various times of the day and night, researching weapons, explosives and violence, and

going to a shooting range on a day he made a threatening post.  Defendant's overt acts were substantially and directly connected to the convicted threats listed above, which reference the agents, mention the whole bureau and the location of the FBI headquarters in Washington, DC, allude to a prior horrific terrorist attack, state that a "deed will be done" at a time Defendant chooses, and promise that the time is approaching ("The zero hour is approaching") when the agents themselves will be harmed ("Next time you come in cowboy with the crew, the hardwood will collapse beneath your feet." "Remember boys, the more eyes on me, the less eyes on the others.  Regardless, yellow tapes will flow").  For these reasons, the Court concludes that the evidence admitted at trial establishes that the 6-level increase under Guideline § 2A6.1(b)(1) is warranted here.

### C.  Defendant's Objection to Applicability of Guideline § 2A6.1(b)(4)(B)

Defendant objects to ¶ 33 of the PIR which applies a 4-level increase under Guideline § 2A6.1(b)(4)(B) for substantial expenditure of funds to respond to the offenses, arguing that the Government spent the majority of the total amount of $334,960.88 prior to the offenses of conviction. (Docket No. 291 at 7-9).  More specifically, Defendant contends that § 2A6.1(b)(4)(B) is inapplicable because it cannot be based on his prior, uncharged conduct which would not be grouped with the charged offenses of conviction, and the Government's accounting is insufficient to apply the enhancement. (*See generally* Docket No. 300).  Based on the record presently before the Court, Defendant's objection is tentatively sustained.

Pursuant to  Guideline § 2A6.1(b)(4)(B), a 4-level increase applies if the offense resulted in "a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the

offense."   At issue here, then, is whether Defendant's offenses of conviction resulted in a substantial expenditure of funds by the FBI to respond to them.

As detailed in the PIR, the Government advised that the FBI spent approximately $55,693.04 in surveillance costs investigating Defendant for the time period of the charged counts between December 27, 2020 through January 1, 2021.  (Docket No. 287, ¶ 18).  The FBI spent approximately $334,960.88 in surveillance costs for its entire investigation of Defendant from September 2020 to January 2021.  (*Id.*).   As stated, Defendant argues that the FBI spent the majority of that total expenditure prior to the offenses of conviction, which should not be considered in determining whether it was substantial.  (Docket No. 291 at 7-9).  On the other hand, the Government maintains that the prior costs should be included as part of the "offense" as relevant conduct under Guideline § 1B1.3 because Defendant's continuing conduct from September 2020 to January 2021 "targeted the same victims and involved a common scheme or plan and would likely group with the charged offenses."  (Docket No. 296 at 12-13).

In the Court's estimation, the Government has not established the applicability of the 4-level increase under Guideline § 2A6.1(b)(4)(B) by a preponderance of the evidence for two reasons: (1) the Government has not established (or convincingly argued) that Defendant's conduct from September 2020 until the charged threat offenses in late December 2020 would be grouped with the charged offenses; and (2) the Government's accounting of expenses does not contain facts which allow the Court  to reasonably assess the FBI's expenditure of funds required to respond to Defendant's offenses and whether those funds are substantial.

Relative to the first matter, as other courts have observed, there is little caselaw specifically addressing § 2A6.1(b)(4)(B).  *See Nissen*, 492 F.Supp.3d at 1280.   One appellate court which has

addressed this provision held that the district court erred by applying the enhancement based on consideration of the government's expenditures in response to other threatening mailings for which the defendant was not convicted. *See United States v. Keyser*, 704 F.3d 631, 644 (9th Cir. 2012). In so ruling, the Ninth Circuit explained that such consideration was contrary to the direction contained in the Guidelines for grouping of offenses because the other mailings involved different victims and different acts and would not have been grouped with the threatening mailings of conviction had they resulted in convictions. *Id.*

In view of this persuasive authority, the Court is not convinced that Defendant's conduct prior to the offenses of conviction would be grouped with them had they been charged and resulted in conviction.  At least some of Defendant's prior conduct related to possible threats directed toward SA Edquist's wife, who would be considered a different victim than the FBI agents, and thus it is unlikely any such charges involving her would be grouped pursuant to Guideline §§ 3D1.2(a) and (b).  The Government has not persuasively argued to the contrary.  *See* Docket No. 296 at 13 (stating that Defendant's conduct from September 2020 to January 2021 "would likely group with the charged offenses").

Next, the Court finds that the Government's accounting is insufficient for the Court to conclude that the 4-level increase under Guideline § 2A6.1(b)(4)(B) is warranted.  In this regard, the Court finds persuasive *United States v. Bourquin*, 966 F.3d 428, 433 (6th Cir. 2020), wherein the Sixth Circuit Court of Appeals held that, to demonstrate the enhancement's applicability, "the government must introduce a full accounting of expenditures or some accounting of expenditures coupled with facts allowing the court to reasonably assess the expenditure of funds required to respond to an offense and whether those funds are substantial."

Here, the Court concludes that the Government's sealed exhibit in support of application of the enhancement, (*see* Docket No. 297), does not satisfy this standard for several reasons. First, the Court is unable to reasonably assess the expenditure of funds required to respond to the offenses. The sealed exhibit consists of a chart[2] on a plain sheet of paper and does not specify who prepared it, or describe the preparer's basis of knowledge relative to the matters contained on the chart. (*See id.* at 2). A section entitled "Khaled Miah Matter" lists various categories of expenses with an "amount/cost" next to each one, but it does not supply any dates for each category to indicate when the claimed expenses were incurred, nor do the various categories contain any factual detail or background support for the items of expense. The chart lists a grand total of $334,960.88 for the "Khaled Miah Matter," but given the chart's lack of dates and detail, the Court is unable to discern when the various expenses were incurred or what specific offense or offenses they relate to. It is additionally problematic that the chart specifies a surveillance cost of $82,137.60 for "Other Counterterrorism Matters," but no explanation is provided about these other matters, other than various categories of expenses with an "amount/cost" next to each one. However, even if the Court accepts the accuracy of the cost of "Other Counterterrorism Matters," the Court notes that the FBI's expenditure of $55,693.04 for the time period of the offenses of conviction in the present case is significantly less than what the FBI spends on other counterterrorism surveillance matters.

In sum, based on the present record, the Court is unable to conclude that the Government has established by a preponderance of the evidence that a 4-level increase is warranted under

---

[2]     In addition to the chart, the sealed exhibit contains a graph entitled "SSG Costs and Expenses," which also is on a plain sheet of paper with no indication of who prepared it. (*See* Docket No. 297 at 3).

Guideline § 2A6.1(b)(4)(B), and the Court will not apply that enhancement in calculating Defendant's advisory guideline range herein.  To the extent the Government intends to pursue application of the enhancement, it shall advise the Court by close of business on September 20, 2022, so a determination can be made whether a hearing on this particular matter is necessary prior to the sentencing hearing in this case.

### D. Defendant's Objection to Applicability of Guideline § 3C1.1

Defendant objects to ¶ 36 of the PIR, which applies a 2-level increase under Guideline § 3C1.1 for obstruction of justice, because he contends that Count Eight should not be grouped with the other counts, and the 2-level increase would not apply standing alone.  (Docket Nos. 287, ¶ 36; 291 at 10-11).  Defendant's objection to the applicability of Guideline § 3C1.1 is overruled.

Guideline § 3C1.1 provides as follows:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.  Certain commentary to this section instructing how the enhancement is to be applied is dispositive here.

Initially, Application Note 7 explains when the enhancement is inapplicable.  To that end, "[i]f the defendant is convicted for an offense covered by . . . § 2J1.2 (Obstruction of Justice) . . . this adjustment is not to be applied to the offense level for that offense except if a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself (*e.g.*, if the defendant threatened a witness during the course of the prosecution for

the obstruction offense)."  U.S.S.G. § 3C1.1, Application Note 7.  Defendant's conviction at Count

Eight for violation of 18 U.S.C. § 1519 is covered by Guideline § 2J1.2.  Accordingly, the 2-level

increase under § 3C1.1 would not apply to the offense level for the § 1519 offense at Count Eight,

alone, unless a significant further obstruction occurred during the investigation, prosecution, or

sentencing of that offense.  (*See also* Guideline § 2J1.2, Application Note 2(A)) ("For offenses

covered under [§ 2J1.2], § 3C1.1 (Obstructing or Impeding the Administration of Justice) does not

apply, unless the defendant obstructed the investigation, prosecution, or sentencing of the

obstruction of justice count.").  As set forth in the PIR, "[a]part from the Count 8 specified conduct,

the probation officer has no additional information indicating the defendant further impeded or

obstructed justice."[3]  (Docket No. 287, ¶ 26).

Although the 2-level increase under Guideline § 3C1.1 does not apply pursuant to

Application Note 7, it does apply in accordance with Application Note 8, which provides as

follows:

> If the defendant is convicted both of an obstruction offense *(e.g.*, 18 U.S.C.
> § 3146 (Penalty for failure to appear); 18 U.S.C. § 1621 (Perjury generally))
> and an underlying offense (the offense with respect to which the obstructive
> conduct occurred), the count for the obstruction offense will be grouped
> with the count for the underlying offense under subsection (c) of § 3D1.2
> (Groups of Closely Related Counts). The offense level for that group of
> closely related counts will be the offense level for the underlying offense
> increased by the 2-level adjustment specified by this section, or the offense
> level for the obstruction offense, whichever is greater.

U.S.S.G. § 3C1.1, Application Note 8.

---

[3]     The Court notes that the Government did not lodge an objection to this paragraph.  (*See* Docket No. 289) (indicating that the Government has no objections or requests for modification to the PIR).

Here, Defendant was convicted both of an obstruction offense – that is, violation of 18 U.S.C. § 1519 at Count Eight, and "an underlying offense (the offense with respect to which the obstructive conduct occurred)" – that is, deleting the threatening communications charged in Counts One and Two of the Indictment.[4] Thus, Count Eight is to be grouped with the other counts in accordance with Guideline § 3D1.2(c).  (*See also* U.S.S.G. § 2J1.2, Application Note 3) ("In the event that the defendant is convicted of an offense sentenced under this section as well as for the underlying offense (*i.e.*, the offense that is the object of the obstruction), *see* the Commentary to Chapter Three, Part C (Obstruction and Related Adjustments), and to § 3D1.2(c) (Groups of Closely Related Counts)).  Application Note 8 then instructs that the offense level for the group of closely related counts is the offense level for the underlying offense increased by the 2-level increase specified in Guideline § 3C1.1, or the offense level for the obstruction offense, whichever is greater.  U.S.S.G. § 3C1.1, Application Note 8.  As explained in the PIR, the offense level for the underlying offense increased by the 2-level adjustment under § 3C1.1 produces the greater offense level and therefore is utilized in calculating Defendant's offense level.  (Docket No. 287, ¶ 29).  For these reasons, Count Eight is correctly grouped with the other counts,[5] and the 2-level increase under § 3C1.1 is properly applied in accordance with Application Note 8 to that section.  *See United States v. Paredes*, 520 F. App'x 129, 132 (3d Cir. 2013) (finding no error in the district

---

[4]     As SA Hassanpoor testified at trial, Defendant posted on Twitter the threat charged in Count One of the Indictment on December 27, 2020, and then it was "deleted subsequently within minutes," and he posted the threat charged in Count Two on December 28, 2020, which was deleted the next day.  (Docket No. 304 at 55, 65, 142).  SA Hassanpoor further testified that the deleted tweets were preserved only because he took screenshots of them.  (*Id.* at 54-55).

[5]     Defendant cites no legal authority for his argument that Count Eight "cannot be properly grouped with the threat offenses because it covers a wider range of conduct and time than the threat convictions," (Docket No. 291 at 11), and the Court rejects this argument.

court's grouping of drug counts with failure to appear count and adding the 2-level obstruction enhancement because the defendant's obstructive conduct resulting in his failure to appear charge was associated with his drug charges).

E. *Defendant's Objection to PIR's Omission of Mental Health Facts That Would Warrant a Downward Departure*

Defendant objects because the PIR does not include information from either Dr. Xenakis' or Dr. Otto's psychiatric evaluations, and further objects to ¶ 85 of the PIR, which states that the probation officer has not identified any factors that would warrant a departure from the applicable advisory guideline range.  (Docket No. 291 at 11-16).  This objection is overruled.

First, Defendant's objection that the PIR does not include information from either Dr. Xenakis' or Dr. Otto's psychiatric evaluations is moot.  As explained in the Addendum to the PIR, the Probation Office inadvertently neglected to include summaries of Dr. Xenakis' and Dr. Otto's respective reports.  (Docket No. 309 at 2).  The Addendum corrected that omission by including those summaries for incorporation into the Mental and Emotional Health section of the PIR.  (*Id.* at 2-4).

Next, despite the statement in ¶ 85 of the PIR that the Probation Office has not identified any factors that would warrant a departure from the advisory guidelines range, it is common practice in this District that a defendant still may move for a departure for reasons specified in § 5K of the Guidelines and/or for a variance from the advisory guideline range in consideration of 18 U.S.C. § 3553(a) factors.  Although the Court appreciates Defendant identifying Guideline § 5K2.13 as an anticipated ground pursuant to which he may argue for a departure from the advisory

guideline range, he may make that argument when he files his sentencing memorandum if he wishes to do so.

### F.  Defendant's Objection to Victim Impact

The Victim Impact section of the PIR identifies SA Nick Edquist, SA David Foster, SA Ahmad ("Rashid") Hassanpoor, and SA Edquist's wife as victims of Defendant's offenses. (Docket No. 287, ¶ 25).  Defendant objects to the PIR's statement that SA Edquist's wife is a victim in this case.  (Docket No. 291 at 16).  Defendant's objection is premised on the fact that the charges in the Indictment relate to his Twitter posts that referred to, and were directed to, FBI agents, not SA Edquist's wife.  (*Id.*).  Defendant cites no authority for the proposition that the charged Twitter posts must reference SA Edquist's wife in order for her to be a victim.  However, Defendant cites Black's Law Dictionary's definition of "victim" as "[a] person harmed by a crime, tort, or other wrong."  (*Id.*, n. 1).  Defendant also cites the definition of "crime victim" contained in the Crime Victims' Rights Act ("CVRA"),[6] as "a person directly and proximately harmed as a result of the commission of a Federal offense. . . ."  18 U.S.C. § 3771(e)(2)(A).  (*Id.*).

Under either definition cited by Defendant, SA Edquist's wife qualifies as a "victim."  As the Government points out, although SA Edquist's wife was not referenced by name in the convicted threats, she was one of Defendant's initial targets and subjected to his repeated harassment.  (Docket No. 296 at 15).  Trial testimony revealed how Defendant's threats directed at SA Edquist also were directed at her and impacted them such that they had to make adjustments

---

[6]     The CVRA guarantees victims of federal crimes an array of substantive and participatory rights.  *See In re Rendón Galvis*, 564 F.3d 170, 174 (2d Cir. 2009).  To that end, the statute entitles a "crime victim" to ten rights that apply at various stages of a criminal prosecution.  *See* 18 U.S.C. §§ 3771(a)(1)-(10).

in their daily lives in response to Defendant's conduct.[7]  (*Id.*).  The fact that Defendant's conduct personally impacted SA Edquist's wife to the point that she had to adjust her daily life indicates that she was harmed by Defendant's crime (as a victim is defined in Black's Law Dictionary) and she was directly and proximately harmed as a result of Defendant's commission of federal offenses (as a victim is defined in the CVRA).[8]  Consequently, SA Edquist's wife is properly listed as a victim in the Victim Impact section of the PIR.[9]

### G.  *Defendant's Objection to Consideration of Agent Hassanpoor's Trial Testimony*

Defendant objects to consideration of SA Hassanpoor's trial testimony regarding Defendant's alleged solicitation of a straw purchase of a firearm to support application of the enhancement under Guideline § 2A6.1(b)(1) for conduct evidencing an intent to carry out a threat.

---

[7]     By way of example, SA Edquist testified that, as a result of Defendant's conduct, his wife changed the routes she took to work, she was more aware of what was going on around her, and she believed that she was not as safe as she previously had thought.  (*See* Docket No. 303 at 15-16) (SA Edquist testifying that his wife "usually walked from where we lived to work at the hospital she worked at, and she told me explicitly that she changed up different routes that she took.  She was much more aware of what was going on around her, not knowing if the defendant was going to take any action against her.  It definitely put it in her head, though, that she wasn't as safe necessarily as she may have expected."); *see also* Docket No. 302 at 140 (SA Edquist testifying that his wife's employer was notified about Defendant's posts about her and that he had made reference to her place of employment).

[8]     Even assuming that SA Edquist's wife is not a "victim" as defined in Black's Law Dictionary or a "crime victim" as defined in the CVRA, Defendant has not identified any authority that would limit the Government's presentation of witnesses at sentencing only to "victims" or "crime victims" under the definitions that he cites.  *See United States v. Miles*, Crim Nos. 1:17-CR-241, 1:08-CR-49, 2020 WL 4206145, at *3 (M.D. Pa. July 22, 2020) (observing that "applicable statutes and case law reflect an inclusive approach to information permitted at sentencing") (citing 18 U.S.C. § 3661) ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); *United States v. Salutric*, 775 F.3d 948, 951-52 (7th Cir. 2015) (finding no error by sentencing court in considering impact statements from non-named victims of uncharged, additional wrongdoing)).  *See also United States v. Smith*, 967 F.3d 198, 215-16 (2d Cir. 2020) (district court did not err in permitting individual to speak at sentencing even where she did not qualify as "victim" of defendant's offense); U.S.S.G. § 1B1.4 ("In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law.").

[9]     The Court notes that inclusion of SA Edquist's wife as a victim in the Victim Impact section of the PIR has no bearing on the calculation of Defendant's advisory guideline range.

(Docket No. 313).  According to Defendant, Agent Hassanpoor's testimony on this matter should not be considered because it is hearsay which is now being offered for the truth of the matter asserted – that is, to demonstrate Defendant's conduct evidencing an intent to carry out the threats of conviction.[10]  (*Id.* at 2).  Defendant's objection is overruled.

First, as evident from the discussion above, the Court did not rely on Agent Hassanpoor's straw purchase testimony in applying Guideline § 2A6.1(b)(1).  Regardless, the Court is not necessarily precluded from considering hearsay evidence in connection with sentencing.  *See United States v. Korus*, 795 F. App'x 863, 866 (3d Cir. 2019) ("Hearsay is fully admissible at a sentencing hearing, so long as it has sufficient indicia of reliability.") (quoting *United States v. Brigman*, 350 F.3d 310, 315 (3d Cir. 2003)); *accord* U.S.S.G. § 6A1.3(a) ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."); § 6A1.3, Comm. Note (instructing that "[r]eliable hearsay evidence may be considered" at sentencing).

---

[10]     As to this issue, relying on *Crawford v. Washington*, 541 U.S. 36 (2004), Defendant also contends that the use of Agent Hassanpoor's statements would violate the Sixth Amendment's Confrontation Clause.  (Docket No. 313 at 2).  To the contrary, "the law is settled that the Confrontation Clause does not apply in the sentencing context." *United States v. Green*,  718 F. App'x 141, 142 (3d Cir. 2018) (citing *United States v. Robinson*, 482 F.3d 244, 246 (3d Cir. 2007) ("Both the Supreme Court and this Court of Appeals have determined that the Confrontation Clause does not apply in the sentencing context and does not prevent the introduction of hearsay testimony at a sentencing hearing.")).  To that end, the Third Circuit Court of Appeals has explained that *Crawford* did not change the state of the law: "[i]n *Crawford*, the Supreme Court held that in a *criminal trial* the Confrontation Clause prohibits consideration of out-of-court testimonial statements, unless the witness is unavailable and the defendant has had a previous opportunity to conduct cross-examination. *See* 541 U.S. at 68, 124 S.Ct. 1354. *Crawford*, however, never applies its rule to sentencing; nowhere does the decision refer to sentencing hearings." *Robinson*, 482 F.3d at 246 (emphasis in original).

In summary, the Court tentatively sustains Defendant's objection to ¶ 33 of the PIR and overrules all of Defendant's other objections.  Given same, the Court will not apply the 4-level enhancement under Guideline § 2A6.1(b)(4)(B) in its tentative calculation of the advisory guideline range.  Consequently, as shown in detail below, the advisory guideline range is 78 to 97 months' imprisonment based on a total offense level of  28 and a criminal history category of I.

## II.    Guidelines Calculations

The Court makes the following guidelines calculations in accordance with the United States Sentencing Guidelines.  The Court notes that after the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are merely advisory upon this Court.  *See also Gall v. United States*, 552 U.S. 38 (2007); *United States v. Tomko*, 562 F.3d 558 (3d Cir. 2009).  The Court tentatively finds the following:[11]

A.    In accordance with Guideline § 3D1.1(a), when a defendant has been convicted of more than one count, the Court shall group the counts resulting in conviction into distinct groups of closely related counts by applying the rules in § 3D1.2.  Pursuant to Guideline § 3D1.2(b), Counts One, Two, Three, Four, Five and Six of the Indictment are grouped ("Group One") because those counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.  Additionally, and as

---

[11]    Pursuant to U.S. Sentencing Guideline § 1B1.11(a), because there is no *ex post facto* issue here, the Court applies the 2021 Sentencing Guidelines Manual.  *See* U.S. Sentencing Guideline § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.").

previously discussed, Count Eight of the Indictment is grouped with Group One in accordance with Guideline § 3D1.2(c) because one of the counts (Count Eight) embodies conduct that is treated as an adjustment to the guideline applicable to another of the counts.   To that end, if the defendant is convicted both of an obstruction offense (here, 18 U.S.C. § 1519 at Count Eight) and an underlying offense, that is, the offense with respect to which the obstructive conduct occurred (here, deleting the threatening communication charged in Counts One and Two), the count for the obstruction offense is to be grouped with the count for the underlying offense under Guideline § 3D1.2(c).   *See* Guideline § 3C1.1, Application Note 8; *see also* Guideline § 2J1.2, Application Note 3 (If the defendant "is convicted of an offense sentenced under [Guideline § 2J1.2] as well as for the underlying offense (*i.e.*, the offense that is the object of the obstruction), *see* the Commentary to Chapter Three, Part C (Obstruction and Related Adjustments), and to § 3D1.2(c) (Groups of Closely Related Counts).").   The offense level for the group of closely related counts is the offense level for the underlying offense increased by the 2-level increase specified in Guideline § 3C1.1, or the offense level for the obstruction offense, whichever is greater.   *See* Guideline § 3C1.1, Application Note 8.   As explained in the PIR, the offense level for the underlying offense (within Group One) produces the greater offense level and thus is utilized in calculating Defendant's offense level.   (Docket No. 287, ¶ 29).

B.   The base offense level for Group One for violations of 18 U.S.C. §§ 115(a)(1)(B) and 875(c) is established by Guideline § 2A6.1(a)(1), which provides for a base offense level of 12.

C.   As explained above, pursuant to Guideline § 2A6.1(b)(1), 6 levels are added because the offenses involved conduct evidencing Defendant's intent to carry out his threats. *See supra* at 7-11.

D.   Pursuant to Guideline § 2A6.1(b)(2)(A), a 2-level increase applies because the offenses of conviction involved more than two threats.

E.   In accordance with Guideline § 3A1.2(b), 6 levels are added because §§ 3A1.2(a)(1) and (a)(2) apply and the applicable Chapter Two guideline is from Chapter Two, Part A.

F.   There is no role-related adjustment that applies.

G.   Pursuant to Guideline § 3C1.1, a 2-level increase applies for obstruction of justice for reasons previously explained. *See supra* at 15-17.

H.   Based on the above, Defendant's adjusted offense level becomes 28.

I.   As set forth in the PIR, an adjustment for acceptance of responsibility is not warranted in this case.

J.   Therefore, Defendant's total offense level becomes 28.

K.   Defendant has zero criminal history points. Pursuant to the Sentencing Table at U.S. Sentencing Guidelines, Chapter 5, Part A, a criminal history score of zero results in a criminal history category of I.

*III.    Potential Sentence*

Based on the above guidelines calculations, Defendant is subject to the following imposition of potential sentence:

A.    *Statutory Provision for Custody*:  Pursuant to 18 U.S.C. § 875(c), Defendant is subject to a term of not more than 5 years' imprisonment at each of Counts One, Two, Three, Four and Five of the Indictment.  At Count Six, Defendant is subject to a term of not more than 6 years' imprisonment pursuant to 18 U.S.C. §§ 115(a)(1)(B) and 115(b)(4).  In accordance with 18 U.S.C. § 1519, Defendant is subject to a term of not more than 20 years' imprisonment at Count Eight.  The offenses at each of Counts One through Six are Class D felonies pursuant to 18 U.S.C. § 3559(a)(4), and the offense at Count Eight is a Class C felony pursuant to 18 U.S.C. § 3559(a)(3).

*Guideline Provision for Custody*:  Pursuant to the U.S. Sentencing Guidelines, Chapter 5, Part A, based on a total offense level of 28 and a criminal history category of I, the advisory guideline range for imprisonment is 78 months to 97 months, which falls within Zone D of the Sentencing Table.

B.    *Statutory Provision for Supervised Release*:  Pursuant to 18 U.S.C. § 3583(b)(2), Defendant is subject to a term of not more than 3 years' supervised release at each of Counts One through Six and Count Eight.  Multiple terms of supervised release run concurrently pursuant to 18 U.S.C. § 3624(e).

*Guideline Provision for Supervised Release*:  Pursuant to Guideline § 5D1.2(a)(2), the authorized term of supervised release at each of Counts One though Six and

Count Eight is at least 1 year but not more than 3 years.  Again, multiple terms of supervised release run concurrently.

C.    *Statutory Provision for Probation*:  Pursuant to 18 U.S.C. §§ 3561(a) and (c)(1), Defendant is eligible for not less than 1 year nor more than 5 years' probation at each of Counts One through Six and Count Eight.  In accordance with 18 U.S.C. § 3564(b), multiple terms of probation run concurrently.

*Guideline Provision for Probation*:  Pursuant  to Application Note 2 to Guideline § 5B1.1 and Guideline § 5C1.1(f), Defendant is ineligible for probation because the applicable guideline range is in Zone D of the Sentencing Table.

D.    *Statutory Provision for Fine*:  Pursuant to 18 U.S.C. § 3571(b)(3), Defendant is subject to a fine of not more than $250,000 at each of Counts One through Six and Count Eight.

*Guideline Provision for Fine*:  Pursuant to Guideline § 5E1.2(c)(3), the advisory fine range is from $25,000 to $250,000.

E.    *Mandatory Special Assessment*:  Pursuant to 18 U.S.C. § 3013(a)(2)(A), Defendant is subject to a mandatory special assessment of $100 at each count of conviction, for a total special assessment of $700.

F.    *Restitution*:  Pursuant to 18 U.S.C. § 3663A and U.S.S.G. 5E1.1(a)(1), restitution is mandatory in this case.  As set forth in the PIR, the Probation Office has not received any Victim Impact Statements requesting restitution.

*IV.*     *Conclusion*

The Court will receive evidence, including testimony, and hear argument regarding these tentative findings and rulings, as well as any other motions and responses thereto, at the time and place of sentencing in this matter presently scheduled on **<u>October 18, 2022 at 10:00 a.m.</u>** Pursuant to the Court's modified Amended Presentence Order (Docket No. 316), any sentencing memoranda shall be filed by **<u>September 29, 2022</u>**, and any responses to same shall be filed by **<u>October 6, 2022</u>**.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date:          September 19, 2022

cc/ecf:        All counsel of record
               U.S. Probation Office