IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 21-110 |
| | ) | Judge W. Scott Hardy |
| KHALED MIAH | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

AND NOW comes the United States of America, by its attorneys, Cindy K. Chung, United States Attorney for the Western District of Pennsylvania, and Jessica Lieber Smolar and Nicole Ann Stockey, Assistant United States Attorneys for said District, and Dmitriy Slavin, Trial Attorney, National Security Division, and respectfully submits its Sentencing Memorandum. For the reasons discussed below, the United States recommends that the Court impose a sentence at the high end of the applicable advisory guideline range of 78 to 97 months' imprisonment calculated by the Court in its Tentative Findings and Rulings (ECF No. 317).

### I. Procedural Background and Summary of Offense Conduct

Defendant, Khaled Miah, was convicted by a jury in this case after a nine-day jury trial, which included 10 witnesses and approximately 150 exhibits. The jury found Miah guilty of five counts of making threatening interstate communications against FBI agents in violation of 18 U.S.C. § 875(c) (Counts One through Five of the Indictment), one count of threatening to assault FBI agents in violation of 18 U.S.C. § 115(a)(1)(B) (Count Six), and one count of obstruction of justice by deleting Twitter accounts and postings in violation of 18 U.S.C. § 1519 (Count Eight) (ECF Nos. 278, 279, 280).

1

The evidence and testimony at trial established the following facts. In or around January 2019, the FBI received an online tip that a YouTube user with the display name "Blitz Kreig" had posted comments threatening bodily harm to another YouTube user and alluding to a potential violent attack in the United States.[1] According to business records provided to the FBI by Google, the parent company of YouTube, in or around February 2019, YouTube account "Blitz Kreig" was associated with the Google e-mail address blitskreig2018@gmail.com. (Trial Exs. G-1 and G-2). From in or around November 2018 to January 2019, including on or about the same day that "Blitz Kreig" posted the aforementioned comments on YouTube, *blitskreig2018@gmail.com* connected to several IP addresses that resolve to the University of Pittsburgh ("Pitt"), located in Pittsburgh, Pennsylvania. According to records Pitt provided to the FBI in or around April 2019, all of the IP address connections in question were linked to the username "khm21" and the corresponding e-mail address khm21@pitt.edu, a Pitt student account belonging to Miah. (Stipulation of the Parties Re: University of Pittsburgh Testimony) (PSIR ¶9).

The FBI investigated Miah's online footprint, *i.e*., other accounts that he controlled on Facebook and Twitter. During this investigation, the FBI found posts and tweets from Miah supporting ISIS and a violent ideology. Given the nature of these posts, FBI Special Agent Nicholas Edquist and Task Force Officer Michael Matta attempted to interview Miah on September 28, 2020 and September 29, 2020 to discuss his online activities. Miah was entirely uncooperative with the FBI agents on both occasions. Instead, he deleted tweets and an entire

---

1 At the request of Miah, in his Objections, the Court has agreed to consider the specific language in the comments made by Defendant to Mosul Medic such as " I wanna cut your balls off Mosul Medic" and "hey, Medic you'll be needed in America not Mosul. We are all here Tick Tock" and "you'll find out very soon, soon, soon. (ECF No. 291 at 2). The Court noted that these additional comments, in the Court's estimation, appear to allude to a potential attack. (ECF No. 317 at 5).

Twitter account that he knew was being investigated. (Trial Exs. G-16, G-7, G-11, G-17) (PSIR ¶10).

Miah also searched the internet for personal information and pictures of Special Agent Edquist and his family and, after he found wedding photographs of Special Agent Edquist and his wife online, he sent them over the internet to his friend on September 30, 2020, stating: "That's him…his wife, his closer friends. It's all public information now along with his credentials, shield number, license plate number, make and model of his personal car and his agency issued cruiser. Also his location of residence is also public. " (Trial Ex. G-41)(PSIR ¶11).

Miah then changed one of his Twitter accounts, which he knew the FBI was monitoring, called @Lugenpresse_ to @Laurapresse (after the Special Agent's wife name) and posted Special Agent Edquist's wife's photograph and biographical information, including her place of work, educational background, age, hair color, religion, and original hometown in the United States, as well as crude and sexual comments about her and Special Agent Edquist. (Trial Ex. G-12) (PSIR ¶12).

On or about October 9, 2020, a federal search warrant authorized the search of Miah's residence and seizure of his electronic devices, as well as the placement of a GPS tracking device on his vehicle. An examination of Miah's seized electronic devices and online accounts by the FBI revealed Miah's interest in weapons, his fascination with violence, terrorists, and his pronounced animosity toward law enforcement. (*See e.g.* Trial Exs. G- 99, 119, 122, 101-106, 113, 114A and 114B, 57, 31) (PSIR ¶13).

In or around November 2020, Miah created and controlled two new Twitter accounts after the seizure of his electronic devices a month prior. Miah used both Twitter accounts to tweet

3

messages over the Internet about the Pittsburgh FBI agents by name. By this time, Miah had started targeting other FBI agents, in addition to Special Agent Edquist. The tweets demonstrated Miah's knowledge of their personal lives, prior professions, and the cities and neighborhoods where they lived. Other tweets discussed Special Agent Edquist's wife, siblings, hometown, and education. (PSIR ¶14).

In December of 2020, Miah created yet another new Twitter account that he named, "Federal Intelligence Service" or @ServiceFederal. From this new Twitter account, Miah began posting tweets referring to the September 11, 2001 terrorist attacks right after naming specific FBI personnel and telling them that he would choose the time when "the deed will be done." (Trial Ex. G-88). Miah deleted those posts the next day. He followed up with additional tweets stating that "the zero hour is approaching," (Trial Ex. G-89), listing the coordinates of FBI Headquarters in Washington, D.C. (Trial Ex. G-90), and again naming specific FBI personnel while referring to the September 11 attacks and threatening that "next time you come in cowboy with the crew, the hardwood will collapse beneath your feet." (Trial Ex. G-92). Finally, Miah stated that with FBI focusing on him, others may be ignored and that "[r]egardless, yellow tapes will flow." (Ex. G-93). *See* threats set forth in Counts One-Five. (PSIR ¶15).

According to the GPS tracker placed on his vehicle on October 9, 2021, Miah's vehicle was located in the vicinity (i.e., within blocks) of Special Agent Edquist's residence on several occasions subsequent to the FBI's September 2020 attempted interviews of Miah. (Trial Ex. G-19 and Defense Ex. T). Miah's vehicle was also located in the immediate vicinity of the FBI Pittsburgh Field Office on multiple occasions between November 1, 2020 and January 6, 2021.

Many of these trips to the field office were late at night or during non-business hours. (Trial Ex. G-125) (PSIR ¶ 16).

On January 5, 2021, the government filed its Criminal Complaint in this case and arrested Miah. (ECF No. 2). At the time of his arrest, law enforcement seized a Samsung smartphone and an iPad (second iPad purchased after Miah's other iPad was seized on October 9, 2020) pursuant to a search warrant. These devices were reviewed by the FBI.

Testimony and exhibits at trial revealed the contents of those devices, which included searches that Miah conducted in December 2020 and early January 2021 for the agents and their family members by name, as well as topics relating to explosives, guns, terrorists, violence, and incendiaries among other things. The review of these devices also revealed that Miah had saved images of the FBI agents and their families and pets on his devices. (Trial Exs. G-131, G-132-G142). In some instances, Miah altered these images (i.e., putting a redline through their faces). (PSIR ¶17).

A federal grand jury indicted Miah on March 16, 2021. In that Indictment, Miah was charged with five counts of making threatening interstate communications in violation of 18 U.S.C. § 875(c), two counts of threatening to assault FBI agents in violation of 18 U.S.C. § 115(a)(1)(B) and one count of obstruction of justice by deleting Twitter accounts and postings in violation of 18 U.S.C. § 1519. As stated previously, a jury trial commenced on December 7, 2021 and on December 17, 2021, the jury found Miah guilty of Counts 1 through 6 and Count 8. The jury found Miah not guilty with respect to Count 7.

The U.S. Probation Office prepared a Presentence Investigation report ("PSIR") dated February 28, 2022 and an Addendum dated April 3, 2022. After the parties filed their respective

objections and corresponding responses to the PSIR, this Court issued its Tentative Findings and Rulings regarding sentencing determining that the appropriate advisory guideline range in this case is 78 to 97 months imprisonment (ECF No. 317).2   Sentencing is currently scheduled for October 18, 2022, at 10:00 am.

## II.    Argument

### A.    The Sentencing Guidelines

Although the Supreme Court rendered the federal Sentencing Guidelines advisory in *United States v. Booker*, 543 U.S. 220 (2005), a sentencing court is still required to "consult [the] Guidelines and take them into account when sentencing." *Id.* at 264.  The Supreme Court has directed that district courts "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38 (2007).  The sentencing court, however, "may not presume that the Guidelines range is reasonable." *Nelson v. United States*, 550 U.S. 350, 352 (2009).  The "Guidelines should be the starting point and the initial benchmark," but the sentencing court must also "consider all of the § 3553(a) factors" in determining the appropriate sentence.  *Gall*, 552 U.S. at 49-50.  Ultimately, the sentence imposed must meet a standard of reasonableness.  *Booker*, 543 U.S. at 260-61.

In a comprehensive Memorandum Opinion, this Court considered all of the parties' objections and pleadings relative to the PSIR and determined that the appropriate advisory Guidelines imprisonment range in this case is 78-97 months (ECF No. 317).   In view of the whole record in this case, and as more fully articulated below, this Guidelines calculation adequately

---

2  On page 15 of the Court's Tentative Findings, the Court requests that the Government advise the Court if it intends to pursue application of the enhancement found in Guideline § 2A6.1(b)(4)(B).   The Government does not intend to pursue this enhancement at the sentencing hearing in this case.

accounts for the Miah's serious conduct, and the government requests that the Court impose a sentence at the high end of the recommended range.

B. <u>Analysis of the § 3553(a) Factors</u>

Based on a review of the applicable statutory sentencing factors codified in 18 U.S.C. § 3553(a), the United States believes a sentence at the high end of the advisory Guidelines range of 78 to 97 months' incarceration is warranted in this case and there is no basis to impose a variance or departure in favor of a lesser sentence. To that end, the government will highlight what it believes are the most relevant statutory factors.

1. <u>The Nature, Circumstances, and Seriousness of the Offense, and the History and Characteristics of the Defendant</u>

The nature and circumstances of this offense are extremely serious. The evidence at trial revealed that Miah was approached by agents with FBI Pittsburgh in September 2020 to discuss his menacing online threats and the social media accounts. In response, Miah fixated on the FBI agents investigating him, and intentionally scoured the internet for personal details and pictures of the agents, their families, and even their pets. He then weaponized his social media accounts to target them online daily for months. Miah altered one of his public Twitter accounts to reflect personal details concerning one of the investigating FBI agents, Special Agent Edquist, and his wife. Miah endeavored to interfere with and influence FBI's work and investigation by altering and deleting the social media accounts that he knew that the FBI was investigating. An examination of Miah's electronic devices seized by the FBI in October 2020 revealed his interest in weapons, his fascination with violence, terrorists, and his pronounced animosity toward law enforcement.

In or around November 2020, Miah created and controlled two new Twitter accounts after the seizure of his electronic devices a month prior. Miah used both Twitter accounts to tweet messages over the Internet about the Pittsburgh FBI agents by name. The tweets demonstrated Miah's knowledge of these agents' personal lives, prior professions, and the cities and neighborhoods where they lived. Other tweets discussed Special Agent Edquist's wife, siblings, hometown, and education.

In December of 2020, Miah created yet another new Twitter account that he named, "Federal Intelligence Service" or @ServiceFederal. From this new Twitter account, Miah began posting tweets invoking the September 11, 2001 terrorist attacks right after naming specific FBI personnel and telling them that he will choose the time when "the deed will be done." (Trial Ex. G-88). Specifically, on December 27, 2020, he posted the following threat:



(COUNT ONE)

He deleted those posts the next day. He followed up with additional tweets stating that "the zero hour is approaching," (Trial Ex. G-89) listing the coordinates of FBI Headquarters in Washington, D.C. (Trial Ex. G-90), and again naming specific FBI personnel while referring to the September 11th attacks and threatening that "next time you come in cowboy with the crew, the hardwood will collapse beneath your feet." (Trial Ex. G-92).



(COUNTS TWO AND THREE)

At 12:44 a.m. on December 30, 2020, he stated:



Then at approximately 5:43 a.m. that same day:



(COUNT FOUR, SIX)

Finally, Miah stated that with FBI focusing on him, others may be ignored and that "[r]egardless, yellow tape will flow (Ex. G-93). *See* threats set forth in Counts One-Five. (PSIR 15).



(COUNT FIVE)

Miah did not limit his grievance with the FBI agents solely to online threatening conduct, but also engaged in a series of overt acts targeting the agents. He traveled to the vicinity of Special Agent Edquist's residence on several occasions subsequent to September 2020 and to the immediate vicinity of the FBI Pittsburgh Field Office, where the agents worked, on multiple occasions between November 1, 2020 and January 6, 2021. Many of these trips to the field office were late at night or during non-business hours. At the same time that he was threatening the agents in December 2020, his seized electronic devices revealed that he was also researching them and their families, as well as explosives, weapons, and violence. The trial evidence further revealed that Miah traveled to a shooting range on the very same day that he made a threatening post.

All of these issues, taken together, make Miah a very clear and present danger to the community. There is nothing in Miah's personal history that justifies, mitigates, or excuses his conduct, and the Court should reject any arguments to the contrary.

Indeed, during Miah's jury trial, Dr. Randy Otto, a qualified expert in clinical and forensic psychology, explicitly testified that he had interviewed Miah, administered psychological testing for him, and reviewed his historical mental health records, as well as mental health records subsequent to his arrest. *See* ECF 306, Trial Trans., December 16, 2021, at pp. 30-38. Dr. Otto testified that Miah "was ***not*** experiencing symptoms of mental disorder, including things like impaired thinking that would compromise his ability to understand the meaning of what he was saying and posting and how it would be received by others." *Id.* at p. 38. Dr. Otto further testified that Miah's social media posts "did not reflect thinking impaired by mental disorder" and that Miah's thinking was "logical" based upon his psychological analysis of Miah. *Id.* at p. 40; 42. Dr. Otto opined that Miah appreciated the "seriousness and gravity" of the situation he found himself in with the FBI. *Id.* at 44.

During trial, Miah presented evidence in the form of medical records that he was receiving mental health treatment and medication and that it was rehabilitating him. Hopefully that is true. But the FBI gave him chance after chance to stop his behavior. Each time he escalated instead. He showed with his actions that he will not be easily dissuaded.

Accordingly, a sentence at the high end of the applicable Guidelines range in this case is entirely appropriate in light of the nature, circumstances, and seriousness of Miah's crimes. *See* 18 U.S.C § 3553(a)(1) & (2)(A). Underlying the seriousness of Miah's conduct, the Court should

13

consider that part of Miah's proposed defense was that he was joking and not serious. Despite presenting this defense, the jury found Miah guilty on 7 of 8 counts.

### 2. The Need for the Sentence to Promote Respect for the Law and to Afford Adequate Deterrence

Miah's conduct demonstrates sustained disrespect for the law and his sentence should reflect his behavior. He directly targeted and threatened the federal law enforcement officers responsible for an investigation into his online conduct and ideology. Other evidence found on Miah's electronic devices revealed his contempt for law enforcement and his fascination with weapons, explosives, and violence. Notably, at no point has Miah expressed a scintilla of acceptance of responsibility or remorse for his conduct. There is absolutely no reason to believe that he will conform his behavior when he is released from prison or that he will not seek revenge for his prosecution, just as he did for the investigation.

Moreover, cases of violent threats against federal law enforcement are ever increasing and a serious sentence in this matter at the high end of the guideline range will only help deter such dangerous behavior. Last month, Ricky Shiffer, Jr., wearing a technical vest and armed with an AR-style rifle and a nail gun, attempted to forcibly enter the FBI's Cincinnati Field Office. When uniformed officers responded to Shiffer's attempt to break a glass barrier, he fled the scene. A pursuit ensued, and after a prolonged standoff, law enforcement attempted to arrest Shiffer, resulting in his death. That same month, DHS and FBI issued an Intelligence Bulletin indicating that violent threats against federal officials and facilities had increased. The Intelligence Bulletin reported, "Since 8 August 2022, the FBI and DHS have identified multiple articulated threats and calls for the targeted killing of judicial, law enforcement and government officials…The FBI and DHS have also observed the persona identifying information of possible targets of violence, such

as home addresses and identification of family members, disseminated online as additional targets." https://www.cbsnews.com/news/mar-a-lago-search-fbi-threat-law-enforcement/.

This is the very type of dangerous conduct that this verdict and this sentence can and should deter. Individuals contemplating engaging in such criminal conduct should understand the potential consequences they may face. As such, a period of incarceration at the high end of the applicable Guidelines range will not only promote respect for the law, but it will also send a necessary and important message of general deterrence—beyond the deterrent effect on Miah himself. *See* 18 U.S.C. § 3553(a)(2)(A) & (a)(2)(B).

### 3. **Victim Impact**

The FBI victims in this case are "official victims" for purposes of the Sentencing Guidelines (USSG §3A1.2(a)(1) and (2)), but they are also human beings with personal lives and families. FBI Special Agents Edquist, David Foster, Ahmad ("Rashid") Hassanpoor and federal Task Force Officer Mike Matta, acting in the performance of their official duties to investigate criminal conduct and protect the public, were targeted and threatened by Miah because they were doing their jobs. Special Agents Edquist, Foster and Hassanpoor testified at trial and described how Miah's threats directly impacted them personally and professionally. Because of Miah's conduct, they became more vigilant in their surroundings and daily activities and showed pictures of Miah to their families to keep them safe. Special Agent Edquist missed professional obligations with the FBI in fear of what Miah may do to his wife while he was away. (PSIR ¶ 21). Special Agent Hassanpoor, who had worked in Afghanistan prior to joining the FBI testified, "unlike my work in Afghanistan where there were platoons of soldiers protecting us …here I didn't have that in my home, and I became more aware of my surroundings….and when I was going for

shopping or anything like that in Pittsburgh, I was more alerted and more alarmed and that was – the concern was always with me and I was more alarmed on a daily basis to do my job." (PSIR ¶ 23).

Even more egregious was Miah's online targeting of Special Agent Edquist's wife, who is a civilian. In its Tentative Findings and Rulings, this Court agreed that Laura Edquist is a victim of Miah for the purposes of sentencing. (ECF No. 317 at 19-20). The Court stated that "[t]rial testimony revealed how Miah's threats directed at Special Agent Edquist also were directed at her [Laura] and impacted them [the Edquists] such that they had to make adjustments to their daily lives in response to Miah's conduct." (*Id.*) Laura Edquist will submit a Victim Impact Statement to the Probation Office prior to the sentencing hearing in this case.

The victim impact in this case is real, lasting, and impermissible. Just as the district court judge in *United States v. Mabie*, 663 F.3d 322, 335 (8th Cir. 2011) observed in a threats case:

> [W]hile no physical harm is traceable to the offenses, the emotional harm is very substantial in this case. I had an opportunity to see the various victims testifying in this case, and their lives have been changed by—by these threats. They made a real impact on me in terms of the emotional toll, the clarity with which the various victims recalled all of the incidents and how it impacted them.

Miah's persistent threats, retaliation against the victims, and obstruction in this case warrant a severe sentence to punish Miah and to send a message to him and other like-minded individuals that criminal threats against law enforcement will result in severe consequences.

### III. Conclusion

In consideration of all of the above, the United States respectfully submits that a term of imprisonment at the high end of the applicable Guidelines range is the appropriate sentence in this case.

Respectfully submitted,

CINDY K. CHUNG
United States Attorney

/s/ *Jessica Lieber Smolar*
JESSICA LIEBER SMOLAR
Assistant U.S. Attorney
PA ID No. 65406

*s/ Nicole Ann Stockey*
NICOLE ANN STOCKEY
Assistant United States Attorney
PA ID No. 306955

*s/ Dmitriy Slavin*
Dmitriy Slavin
Trial Attorney
National Security Division
Counterterrorism Section
DC 1017559